Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

(Co-counsel listed on signature page)

*Attorneys for Plaintiff*

**Filed**

APR 1 1 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

E-filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**HRL**

**CV12-01831**

| | |
|---|---|
| CHAD BRAZIL, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION AND REPRESENTATIVE ACTION** |
| v. | **COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| DOLE FOOD COMPANY, INC., DOLE PACKAGED FOODS, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendants Dole Food Company, Inc. and Dole Packaged Foods, LLC (collectively, "Dole" or "Defendants") as to his own acts upon personal knowledge, and as to all other matters upon information and belief. In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a nationwide class of consumers who, within the last four years, purchased Defendants' fruit products labeled "All Natural Fruit" despite containing artificial or unnatural ingredients, flavorings, coloring, and/or chemical preservatives (collectively, such fruit products are referred to herein as "Misbranded Food Products").

*Class Action Complaint*

**INTRODUCTION**

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that flout those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.      Dole is a multinational corporation with approximately 200 brands of food, mainly fruits and vegetables, that are sold in California, the United States and throughout the world. According to its 2010 Annual Report: (i) Dole is the world's leading producer, marketer and distributor of fruit and vegetables and one of the world's largest producers of bananas and pineapples; (ii) Dole is an industry leader in packaged fruit products, packaged salads and fresh-packed vegetables, and (iii) Dole maintains number one market share positions in North American bananas, North American iceberg lettuce, celery, cauliflower, and packaged fruit products.

3.      For the fiscal year ended January 1, 2011, Dole generated revenues of approximately $6.9 billion.  Dole products are marketed and distributed in more than 90 countries.

4.      As part of its overall marketing strategy, Dole has recognized the desire of many of its consumers to eat a healthier diet.  Dole recognizes that health claims drive sales, and, consequently, actively promotes the health benefits of its products.

5.      For example, in its 2010 Annual Report, Dole states:

- "the market for fresh produce has increased faster than the rate of population growth, supported by ongoing trends including greater consumer demand for *healthy*, fresh and convenient foods"

- "*Health*-conscious consumers are driving much of the growth…"

- • "The North American packaged foods industry is expected to show stable growth, over the next several years led by products that offer consumers *healthy* choices for their daily needs."
- • "The introduction of FRUIT BOWLS in 100% juice demonstrates that Dole is uniquely positioned to capitalize on the growing trend toward *healthier* eating."
- • "In the United States, we expect category growth in both our packaged salads and frozen fruit businesses in line with the trends toward *healthy* eating."

6.   Defendants' website, www.dole.com, is also largely dedicated to promoting good nutrition, healthy eating, weight loss, fitness, etc. Dole's first page states "Dole just made it easier to learn how to eat the right foods and live a better, healthy life!"

7.   Defendants actively promote the purported health benefits of their Misbranded Food Products, notwithstanding the fact that such promotion violates California and federal law.

8.   For example, the principal display panel of Dole's Sugar-Free Mixed Fruit in Cherry Gel label states, in part, that the fruit is "All Natural Fruit," despite the fact that that the product is artificially flavored and contains, among others, the following artificial and unnatural ingredients: sucralose, cochineal extract (color), caramel color, and ascorbic acid. The principal display panel of Dole's Sugar-Free Mixed Fruit in Cherry Gel label is as follows:



9.    The back of the Dole Sugar-Free Mixed Fruit in Cherry Gel lists the ingredients: "maltitol, carrageenan, cochineal extract (color), locust bean gum, natural and artificial flavors, fumaric acid, maltodextrin, sodium citrate, potassium citrate, ascorbic acid (to promote color retention, caramel color, sucralose, and malic acid."

10.    If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

11.    Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").  California Health & Safety Code § 109875, *et seq.*  Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

12.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

1   that anyone was actually misled.

2      13.   In promoting the health benefits of their Misbranded Food Products, Defendants

3   claim to understand the importance of communicating responsibly about their products.

4   Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their

5   Misbranded Food Products in violation of federal and California laws that govern the types of

6   representations that can be made on food labels.

7      14.   In making their unlawful "All Natural" claims on their Misbranded Food Products,

8   Defendants have violated nutrient content labeling regulations mandated by federal and California

9   law, which forbid the use of such labeling if the product contains artificial ingredients, flavorings,

10  coloring, and/or chemical preservatives.

11     15.   Defendants have made, and continue to make, unlawful nutrient content claims on

12  food labels of their Misbranded Food Products that are prohibited by federal and California law

13  and which render these products misbranded.   Under federal and California law, Defendants'

14  Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.

15  Defendants' false and misleading labeling practices stem from their global marketing strategy.

16  Thus, the violations and misrepresentations are similar across product labels and product lines.

17     16.   Defendants' violations of law include the illegal advertising, marketing,

18  distribution, delivery and sale of Defendants' Misbranded Food Products to consumers in

19  California and throughout the United States.

20                              **PARTIES**

21     17.   Plaintiff Chad Brazil is a resident of Santa Cruz, California who purchased Dole

22  Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the

23  "Class Period").

24     18.   Defendant Dole Food Company, Inc. is a Delaware corporation with its principal

25  place of business in Westlake Village, California.

26     19.   Defendant Dole Packaged Foods, LLC is a California limited liability corporation

27  with its principal place of business in Westlake Village, California.  Defendant Dole Packaged

28  Foods, LLC is a subsidiary of Defendant Dole Food Company, Inc.

20. Collectively, Defendants are leading producers of retail food products, including the Misbranded Food Products. Defendants sell their food products to consumers through grocery and other retail stores throughout the United States.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

22. The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

23. The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

24. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25. The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to do business in California, have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets in California the United States through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26. Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendants, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

**A.    Identical California And Federal Laws Regulate Food Labeling**

27.    Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

28.    Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

29.    In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

1

**B.**  **FDA Enforcement History**

2      30.    In recent years the FDA has become increasingly concerned that food

3  manufacturers were disregarding food labeling regulations. To address this concern, the FDA

4  elected to take steps to inform the food industry of its concerns and to place the industry on notice

5  that food labeling compliance was an area of enforcement priority.

6      31.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point*

7  *Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP

8  Guidance"). The 2009 FOP Guidance advised the food industry:

9
> FDA's research has found that with FOP labeling, people are less likely to check
10
> the Nutrition Facts label on the information panel of foods (usually, the back or
> side of the package). It is thus essential that both the criteria and symbols used in
11
> front-of-package and shelf-labeling systems be nutritionally sound, well-designed
> to help consumers make informed and healthy food choices, and not be false or
12
> misleading. The agency is currently analyzing FOP labels that appear to be
> misleading. The agency is also looking for symbols that either expressly or by
13
> implication are nutrient content claims. We are assessing the criteria established by
14
> food manufacturers for such symbols and comparing them to our regulatory
> criteria.
15

16
> It is important to note that nutrition-related FOP and shelf labeling, while currently
> voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic
17
> Act that prohibit false or misleading claims and restrict nutrient content claims to
> those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in
18
> a manner that is false or misleading misbrands the products it accompanies.
19
> Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that
> does not comply with the regulatory criteria for the claim as defined in Title 21
20
> Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is
> misbranded. We will consider enforcement actions against clear violations of these
21
> established labeling requirements. . .

22
> ... Accurate food labeling information can assist consumers in making healthy
> nutritional choices. FDA intends to monitor and evaluate the various FOP labeling
23
> systems and their effect on consumers' food choices and perceptions. FDA
24
> recommends that manufacturers and distributors of food products that include FOP
> labeling ensure that the label statements are consistent with FDA laws and
25
> regulations. FDA will proceed with enforcement action against products that bear
> FOP labeling that are explicit or implied nutrient content claims and that are not
26
> consistent with current nutrient content claim requirements. FDA will also proceed
> with enforcement action where such FOP labeling or labeling systems are used in a
27
> manner that is false or misleading.

28

1    32.    The 2009 FOP Guidance recommended that "manufacturers and distributors of

2  food products that include FOP labeling ensure that the label statements are consistent with FDA

3  law and regulations" and specifically advised the food industry that it would "proceed with

4  enforcement action where such FOP labeling or labeling systems are used in a manner that is

5  false or misleading."

6    33.    Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the

7  unlawful and misleading food labeling claims from their Misbranded Food Products.

8    34.    On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA

9  Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's

10 concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter

11 stated:

12   In the early 1990s, the Food and Drug Administration (FDA) and the food industry
13   worked together to create a uniform national system of nutrition labeling, which
     includes the now-iconic Nutrition Facts panel on most food packages. Our citizens
14   appreciate that effort, and many use this nutrition information to make food
     choices. Today, ready access to reliable information about the calorie and nutrient
15   content of food is even more important, given the prevalence of obesity and diet-
     related diseases in the United States. This need is highlighted by the
16   announcement recently by the First Lady of a coordinated national campaign to
17   reduce the incidence of obesity among our citizens, particularly our children.

18   With that in mind, I have made improving the scientific accuracy and usefulness of
     food labeling one of my priorities as Commissioner of Food and Drugs. The latest
19   focus in this area, of course, is on information provided on the principal display
20   panel of food packages and commonly referred to as "front-of-pack" labeling. The
     use of front-of-pack nutrition symbols and other claims has grown tremendously in
21   recent years, and it is clear to me as a working mother that such information can be
     helpful to busy shoppers who are often pressed for time in making their food
22   selections. ...

23   As we move forward in those areas, I must note, however, that there is one area in
24   which more progress is needed. As you will recall, we recently expressed concern,
     in a "Dear Industry" letter, about the number and variety of label claims that may
25   not help consumers distinguish healthy food choices from less healthy ones and,
     indeed, may be false or misleading.
26
27   At that time, we urged food manufacturers to examine their product labels in the
     context of the provisions of the Federal Food, Drug, and Cosmetic Act that
28   prohibit false or misleading claims and restrict nutrient content claims to those
     defined in FDA regulations. As a result, some manufacturers have revised their

labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

35.    Notwithstanding the Open Letter, Defendants continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

36.    In addition to its guidance to industry, the FDA has sent warning letters to industry, including many of Defendants' peer food manufacturers for the same types of unlawful nutrient content claims described above.

37.    In these letters the FDA indicated that, as a result of the same type of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

38. The warning letters were hardly isolated as the FDA has issued other warning letters to other companies for the same type of food labeling claims at issue in this case.

39. The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on its Misbranded Food Products in response to these warning letters.

40. Defendant also continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims. Defendants ignored this guidance as well and continued to utilize unlawful claims on the labels of their Misbranded Food Products. As such, the Defendants' Misbranded Food Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

41. Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

42. Plaintiff did not know, and had no reason to know, that the Defendants' Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims.

**C.     Defendants Make Unlawful "All Natural Fruit" Claims**

43. In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

44. The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

45. The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic…has been included in, or has been added to,

1    a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6,

2    1993.

3         46.    Any coloring or preservative can preclude the use of the term "natural" even if the

4    coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between

5    natural and artificial flavors in 21 C.F.R. § 101.22.

6         47.    Defendants' "All Natural Fruit" labeling practices violate the 2009 FOP Guidance

7    Sec. 587.100, which states: "[t]he use of the words 'food color added,' 'natural color,' or similar

8    words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is

9    a naturally occurring constituent in the food.  Since all added colors result in an artificially

10   colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

11        48.    Likewise, California Health & Safety Code § 110740 prohibits the use of artificial

12   flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately

13   disclosed on the labeling.

14        49.    The FDA has sent out numerous warning letters concerning this issue.  Defendants

15   are aware of these FDA warning letters.

16        50.    Defendants have unlawfully labeled a number of their food products as being "All

17   Natural Fruit" when they actually contain artificial ingredients and flavorings, artificial coloring

18   and chemical preservatives.  These products include the following:

19             Canned Fruit 15.25 oz - Mandarin Oranges
20             Canned Fruit 15.25 oz - Tropical Fruit
               Fruit in plastic 24.5 oz Jars - Mandarin Oranges
21             Fruit in plastic 24.5 oz Jars - Mixed Fruit
               Fruit in plastic 24.5 oz Jars - Pineapple Chunks
22             Fruit in plastic 24.5 oz Jars - Sliced Peaches
               Fruit in plastic 24.5 oz Jars - Tropical Fruit
23
               Packaged Fruit - Mandarins in Orange Gel
24             Packaged Fruit - Mixed Fruit in Black Cherry Gel
               Packaged Fruit - Mixed Fruit in Cherry Gel (Sugar
25             Free)
               Packaged Fruit - Peaches in Strawberry Gel
26             Packaged Fruit - Pineapple in Strawberry Gel (Sugar
27             Free)
               Real Fruit Bites with yogurt - apple chunks
28

Real Fruit Bites with yogurt - mango chunks

51.    A reasonable consumer would expect that when Defendants label their products as "All Natural Fruit," the product's ingredients are "natural" as defined by the federal government and its agencies.  A reasonable consumer would also expect that when Defendants label their products as "All Natural Fruit,"  the product ingredients are "natural" under the common use of that word.  A reasonable consumer would understand that "All Natural Fruit" products do not contain synthetic, artificial, or excessively processed ingredients.

52.    Consumers are thus misled into purchasing Defendants' products with synthetic unnatural ingredients that are not "All Natural Fruit" as falsely represented on their labeling. Defendants' products in this respect are misbranded under federal and California law.

**D.     Defendants Have Violated California Law**

53.    Defendants have violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

54.    Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

55.    Defendants have violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

56.    Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways, as follows:

a.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.     Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for

1    nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted

2    thereto; and

3                    c.      Defendants' Misbranded Food Products are misbranded under California

4    Health & Safety Code § 110705 because words, statements and other information required by the

5    Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

6          57.     Defendants have violated California Health & Safety Code § 110760 which makes

7    it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is

8    misbranded.

9          58.     Defendants' Misbranded Food Products are misbranded under California Health &

10   Safety Code § 110755 because they purport to be or are represented for special dietary uses, and

11   their labels fail to bear such information concerning their vitamin, mineral, and other dietary

12   properties as the Secretary determines to be, and by regulations prescribes as, necessary in order

13   fully to inform purchasers as to its value for such uses.

14         59.     Defendants have violated California Health & Safety Code § 110765 which makes

15   it unlawful for any person to misbrand any food.

16         60.     Defendants have violated California Health & Safety Code § 110770 which makes

17   it unlawful for any person to receive in commerce any food that is misbranded or to deliver or

18   proffer for deliver any such food.

19         61.     Defendants have violated the standard set by 21 C.F.R. § 101.13(h), which has

20   been incorporated by reference in the Sherman Law, by failing to include on their product labels

21   the nutritional information required by law.

22         **E.      Plaintiff Purchased Defendants' Misbranded Food Products**

23         62.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy

24   diet.

25         63.     During the Class Period, Plaintiff purchased Defendants' Misbranded Food

26   Products, including Dole Mixed Fruit in Cherry Gel (Sugar Free),

27

28





1  Tropical Fruit in Light Syrup & Passion Fruit Juice



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



64.    Plaintiff read the labels on Defendants' Misbranded Food Products, including the "All Natural Fruit" label claims, before purchasing them.

65.    Plaintiff relied on Defendants' package labeling including the "All Natural Fruit" label claims, and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling.

66.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had he known the truth about them.

67.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' "All Natural Fruit" label claims were unlawful and unauthorized as set forth herein, and would not have bought the products had he known the truth about them.

68.    As a result of Defendants unlawful "All Natural Fruit" label claims, Plaintiff and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

69.    Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

70.    A reasonable person would also attach importance to whether Defendants' products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' Misbranded Food Products had he known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

All persons in the United States who, within the last four years, purchased

Defendants' fruit products labeled "All Natural Fruit" despite containing artificial or unnatural ingredients, flavorings, coloring, and/or chemical preservatives (the "Class").

72. The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

73. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

74. <u>Numerosity</u>: Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

75. <u>Common Questions Predominate</u>: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, just for example:

    a.    Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

    b.    Whether the food products at issue were misbranded as a matter of law;

    c.    Whether Defendants made unlawful and misleading "All Natural" claims with respect to their food products sold to consumers;

    d.    Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

    e.    Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    f.    Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

    g.    Whether Defendants were unjustly enriched by their deceptive

1

practices.

2

76.   Typicality:   Plaintiff's claims are typical of the claims of the Class because

3

Plaintiff bought Defendants' Misbranded Food Products during the Class Period.  Defendants'

4

unlawful, unfair and/or fraudulent actions concern the same business practices described herein

5

irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar

6

injuries arising out of Defendants' conduct in violation of California law.  The injuries of each

7

member of the Class were caused directly by Defendants' wrongful conduct.  In addition, the

8

factual underpinning of Defendants' misconduct is common to all Class members and represents

9

a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims

10

arise from the same practices and course of conduct that give rise to the claims of the Class

11

members and are based on the same legal theories.

12

77.   Adequacy:   Plaintiff will fairly and adequately protect the interests of the Class.

13

Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to

14

the interests of the Class members.  Plaintiff has retained highly competent and experienced class

15

action attorneys to represent his interests and those of the members of the Class.  Plaintiff and

16

Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate

17

this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class

18

members and will diligently discharge those duties by vigorously seeking the maximum possible

19

recovery for the Class.

20

78.   Superiority:   There is no plain, speedy or adequate remedy other than by

21

maintenance of this class action.  The prosecution of individual remedies by members of the

22

Class will tend to establish inconsistent standards of conduct for Defendants and result in the

23

impairment of Class members' rights and the disposition of their interests through actions to

24

which they were not parties.  Class action treatment will permit a large number of similarly

25

situated persons to prosecute their common claims in a single forum simultaneously, efficiently

26

and without the unnecessary duplication of effort and expense that numerous individual actions

27

would engender.  Further, as the damages suffered by individual members of the Class may be

28

relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.   Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

79.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

80.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

81.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

82.   Plaintiff incorporates by reference each allegation set forth above.

83.   Defendants' conduct constitutes unlawful business acts and practices.

84.   Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

85.   Defendants are corporations and, therefore, each is a "person" within the meaning of the Sherman Law.

86.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

87.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

88.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

89.     Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold, or held legally and which were legally worthless.

90.     As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

91.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

92.     As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***

**<u>Unfair Business Acts and Practices</u>**

93.     Plaintiff incorporates by reference each allegation set forth above.

94.     Defendants' conduct as set forth herein constitutes unfair business acts and practices.

95.     Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

96.     Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct.

97.     Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

98.     Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless.

99.     Plaintiff and the Class who purchased Defendants' Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

100.    The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

101.    As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Fraudulent Business Acts and Practices**

102.    Plaintiff incorporates by reference each allegation set forth above.

103. Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

104. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

105. Defendants' misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived. Defendants have engaged in fraudulent business acts and practices.

106. Defendants' fraud and deception caused Plaintiff and the Class to purchase Defendants Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

107. Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless.

108. As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Misleading and Deceptive Advertising</u>

109. Plaintiff incorporates by reference each allegation set forth above.

110. Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

111. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

112. Defendants engaged in a scheme of offering Defendants Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendants Misbranded Food Products. Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

113. In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

114. Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendants Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

115. As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless.

116. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and

judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

117.    Plaintiff incorporates by reference each allegation set forth above.

118.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

119.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

120.    Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.   These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products.  Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

121.    In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

122.    Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of

Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

123.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are legally worthless.

124.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

125.   Plaintiff incorporates by reference each allegation set forth above.

126.   This cause of action is brought pursuant to the CLRA.  This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

127.   At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

128.   Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

129. Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

130. Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

131. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

132. Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

133. By engaging in the conduct set forth herein, Defendants violated and continue to violate Sections 1770(a)(5) of the CLRA, (because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

134. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

135. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

136. By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

137. Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

1    Defendants are not restrained from engaging in these practices in the future, Plaintiff and the

2    Class will continue to suffer harm.

3                           **SEVENTH CAUSE OF ACTION**

4          **Restitution Based on Unjust Enrichment/Quasi-Contract**

5          138.    Plaintiff incorporates by reference each allegation set forth above.

6          139.    As a result of Defendants' fraudulent and misleading labeling, advertising,

7    marketing and sales of Defendants' Misbranded Food Products Defendants were enriched at the

8    expense of Plaintiff and the Class.

9          140.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not

10   capable of being sold or held legally and which were legally worthless.  It would be against

11   equity and good conscience to permit Defendants to retain the ill-gotten benefits they received

12   from Plaintiff and the Class, in light of the fact that the products were not what Defendants

13   purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the

14   benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the

15   products at issue.

16         141.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class

17   have suffered damages in an amount to be proven at trial.

18                           **EIGHTH CAUSE OF ACTION**

19          **Beverly-Song Act (Cal. Civ. Code § 1790, _et seq._)**

20         142.    Plaintiff incorporates by reference each allegation set forth above.

21         143.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code §

22   1791(b).

23         144.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code §

24   1791(j) & (l).

25         145.    Defendants' food products are "consumables" as defined by Cal. Civ. Code §

26   1791(d).

27         146.    Defendants' "All Natural" claims constitute "express warranties" as defined by

28   Cal. Civ. Code § 1791.2.

1     147.    Defendants, through their package labels, create express warranties by making the

2    affirmation of fact and promising that their Misbranded Food Products comply with food labeling

3    regulations under federal and California law.

4     148.    Despite Defendants' express warranties regarding their food products, they do not

5    comply with food labeling regulations under federal and California law.

6     149.    Defendants breached their express warranties regarding their Misbranded Food

7    Products in violation of Cal. Civ. Code § 1790, *et seq.*

8     150.    Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food

9    Products that were not capable of being sold or held legally and which were legally worthless.

10     151.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class

11    have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

12     152.    Defendants' breaches of warranty were willful, warranting the recovery of civil

13    penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
### Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

16     153.    Plaintiff incorporates by reference each allegation set forth above.

17     154.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. §

18    2301(3).

19     155.    Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) &

20    (5).

21     156.    Defendants' food products are "consumer products" as defined by 15 U.S.C. §

22    2301(1).

23     157.    Defendants' "All Natural" claims constitute "express warranties."

24     158.    Defendants, through their package labels, create express warranties by making the

25    affirmation of fact and promising that their Misbranded Food Products comply with food labeling

26    regulations under federal and California law.

27     159.    Despite Defendants' express warranties regarding their food products, they do not

28    comply with food labeling regulations under federal and California law.

160.   Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

161.   Defendants sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

162.   As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of his claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.   For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.   For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend his Complaint to seek such relief;

C.   For an order requiring Defendants to immediately cease and desist from selling their Misbranded Food Products listed in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.   For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.   For an order awarding attorneys' fees and costs;

F.   For an order awarding punitive damages;

G.   For an order awarding pre-and post-judgment interest; and

///

///

///

///

1    H.    For an order providing such further relief as this Court deems proper.

2

3    Dated:  April 11, 2012                    Respectfully submitted,

4

5    *Ben F. Pierce Gore*
     Ben F. Pierce Gore (SBN 128515)

6    PRATT & ASSOCIATES
     1901 S. Bascom Avenue, Suite 350

7    Campbell, CA  95008
     Telephone:  (408) 429-6506

8    Fax:  (408) 369-0752
     pgore@prattattorneys.com

9
     Jay Nelkin
10   Carol Nelkin
     Stuart M. Nelkin
11   NELKIN & NELKIN, P.C.
     5417 Chaucer Drive
12   P.O. Box 25303
     Houston, Texas 77005
13   Telephone:  (713) 526-4500
     Facsimile:  (713) 526-8915
14   jnelkin@nelkinpc.com
     cnelkin@nelkinp.com
15   snelkin@nelkinpc.com

16   Don Barrett
     David McMullan, Jr.
17   Brian Herrington
     Katherine B. Riley
18   BARRETT LAW GROUP, P.A.
     P.O. Box 927
19   404 Court Square North
     Lexington, MS 39095
20   Telephone: (662) 834-2488
     Toll Free: (877) 816-4443
21   Fax: (662) 834-2628
     dbarrett@barrettlawgroup.com
22   donbarrettpa@yahoo.com
     bherrington@barrettlawgroup.com
23   kbriley@barrettlawgroup.com
     kbriphone@yahoo.com
24   dmcmullan@barrettlawgroup.com

25   Charles Barrett
     CHARLES BARRETT, P.C.
26   6518 Hwy. 100, Suite 210
     Nashville, TN 37205
27   Telephone: (615) 515-3393
     Fax: (615) 515-3395
28   charles@cfbfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard Barrett
LAW OFFICES OF RICHARD R. BARRETT, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: (662) 380-5018
Fax: (866) 430-5459
rrb@rrblawfirm.net

J. Price Coleman
COLEMAN LAW FIRM
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

Dewitt M. Lovelace
Alex Peet
LOVELACE LAW FIRM, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

David Shelton
ATTORNEY AT LAW
1223 Jackson Avenue East, Suite 202
Oxford, MS 38655
Telephone: (662) 281-1212
Fax: (662-281-1312
david@davidsheltonpllc.com

Keith M. Fleischman
Frank Karam
Ananda N. Chaudhuri
FLEISCHMAN LAW FIRM
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: 212-880-9571
keith@fleischmanlawfirm.com
frank@fkaramlaw.com
achaudhuri@fleischmanlawfirm.com

*Attorneys for Plaintiff*

- 33 -
*Class Action Complaint*