1

2   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
3   1901 S. Bascom Avenue, Suite 350
    Campbell, CA  95008
4   Telephone:  (408) 429-6506
    Fax:  (408) 369-0752
5   pgore@prattattorneys.com

6   (Co-counsel listed on signature page)

7   *Attorneys for Plaintiff*

8

9                  IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12

13   CHAD BRAZIL, individually and on          Case No. CV12-01831 LHK
     behalf of all others similarly situated,
14                                             **AMENDED CLASS ACTION AND**
                  Plaintiff,                   **REPRESENTATIVE ACTION**
15
     v.                                        **COMPLAINT FOR DAMAGES,**
16                                             **EQUITABLE AND INJUNCTIVE RELIEF**
     DOLE FOOD COMPANY, INC.,
17   DOLE PACKAGED FOODS, LLC,                 **JURY TRIAL DEMANDED**

18
                  Defendants.
19

20

21          Plaintiff, Chad Brazil, ("Plaintiff") through his undersigned attorneys, brings this lawsuit

22   against Defendants Dole Food Company, Inc. and Dole Packaged Foods, LLC (collectively,

23   "Dole" or "Defendants") as to his own acts upon personal knowledge, and as to all other matters

24   upon information and belief.  In order to remedy the harm arising from Defendants' illegal

25   conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a nationwide

26   class of consumers who, within the last four years, purchased Defendants' food products

27   (1) labeled or advertised as "All Natural" despite containing artificial or unnatural ingredients,

28   flavorings, coloring, and/or chemical preservatives; (2) labeled or advertised as fresh despite

1  being thermal processed, frozen, or preserved; (3) labeled or advertised as sugar free despite

2  containing sugar and/or having more than 40 calories per serving size; (4) labeled or advertised as

3  low calorie despite having more than 40 calories per serving size; (5) labeled or advertised with a

4  nutrient content or antioxidant claim for a nutrient lacking a Daily Value  or lacking the minimum

5  Daily Value specified for the type of claim made; or (6) labeled or advertised with an

6  unauthorized health claim (collectively, such food products are referred to herein as "Misbranded

7  Food Products").

## INTRODUCTION

8

9       1.     Every day millions of Americans purchase and consume packaged foods. To

10  protect these consumers, identical California and federal laws require truthful, accurate

11  information on the labels of packaged foods. This case is about companies that flout those laws

12  and sell misbranded food to unsuspecting consumers. The law, however, is clear: misbranded

13  food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is

14  worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their

15  purchase price.

16      2.     Dole is a multinational corporation with approximately 200 brands of food, mainly

17  fruits and vegetables that are sold in California, the United States and throughout the world.

18  According to its 2010 Annual Report: (i) Dole is the world's leading producer, marketer and

19  distributor of fruit and vegetables and one of the world's largest producers of bananas and

20  pineapples; (ii) Dole is an industry leader in packaged fruit products, packaged salads and fresh-

21  packed vegetables, and (iii) Dole maintains number one market share positions in North

22  American bananas, iceberg lettuce, celery, cauliflower, and packaged fruit products.

23      3.     For the fiscal year ended January 1, 2011, Dole generated revenues of

24  approximately $6.9 billion.  Dole products are marketed and distributed in more than 90

25  countries.

26      4.     As part of its overall marketing strategy, Dole has recognized the desire of many

27  of its consumers to eat a healthier diet.  Dole recognizes that health claims drive sales and,

28  consequently, actively promotes the health benefits of its products.

5.      In its 2010 Annual Report, Dole states:

- "the market for fresh produce has increased faster than the rate of population growth, supported by ongoing trends including greater consumer demand for *healthy*, fresh and convenient foods"

- "*Health*-conscious consumers are driving much of the growth…"

- "The North American packaged foods industry is expected to show stable growth, over the next several years led by products that offer consumers *healthy* choices for their daily needs."

- "The introduction of FRUIT BOWLS in 100% juice demonstrates that Dole is uniquely positioned to capitalize on the growing trend toward *healthier* eating."

- "In the United States, we expect category growth in both our packaged salads and frozen fruit businesses in line with the trends toward *healthy* eating."

6.      Defendants' website, www.dole.com, is also largely dedicated to nutrition, healthy eating, weight loss, and fitness.  The first page of Dole's website states "Dole just made it easier to learn how to eat the right foods and live a better, healthy life!"

7.      Defendants actively promote the purported health benefits of their Misbranded Food Products, notwithstanding the fact that such promotion violates California and federal law.

8.      For example, the principal display panel of Dole's Mixed Fruit in 100% Fruit Juice's label states, in part, that the product is "All Natural Fruit & Juice," despite the fact that the product contains an unnatural chemical preservative. If a manufacturer, like Dole, is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of California and federal laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-

increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

9.     Under California law, which is identical to federal law, a number of the Defendants' food labeling practices are unlawful because they are deceptive and misleading to consumers: These include:

A.     Representing food products to be "all natural," or "natural" when they contain significant quantities of chemical preservatives, synthetic chemicals, added artificial color and other artificial ingredients;

B.     Failing to disclose the presence of chemical preservatives and artificial added colors in the ingredient lists of food products as required by law;

C.     Making unlawful nutrient content claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made;

D.     Making unlawful antioxidant claims on the labels of food products that fail to meet the minimum nutritional requirements legally required for the antioxidant claims being made;

E.     Representing foods to be fresh or to have a fresh taste when those products have undergone manufacturing processes and contain undisclosed chemical preservatives that preclude any representations about freshness as a matter of law;

F.     Making unlawful and unapproved health claims about their products that are prohibited by law; and

G.     Making unlawful claims that suggest to consumers that their products can prevent the risk or treat the effects of certain diseases like cancer or heart disease\.

10.     These practices are not only illegal but they mislead consumers and deprive them of the information they require to make informed purchasing decisions. Thus, for example, a mother who reads labels because she wants to purchase all natural or fresh foods and does not wish to feed her child highly processed foods containing unnatural chemicals would be mislead by Dole's practices and labeling.

11.     Similarly, California and federal laws have placed numerous requirements on food companies that are designed to ensure that the claims that companies make about their products to

1    consumers are truthful, accurate and backed by acceptable forms of scientific proof. When

2    companies such as Defendants make unlawful nutrient content, antioxidant, or health claims that

3    are prohibited by regulation, consumers such as Plaintiff are misled.

4            12.     Identical California and federal laws regulate the content of labels on packaged

5    food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

6    the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").

7    California Health & Safety Code § 109875, *et seq*. Under both the Sherman Law and FDCA

8    section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if

9    it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

10           13.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

11   term "misleading" is a term of art. Misbranding reaches not only false claims, but also those

12   claims that might be technically true, but still misleading. If any one representation in the

13   labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling

14   cure a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking

15   and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

16   *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

17   that anyone was actually misled.

18           14.     In promoting the health benefits of their Misbranded Food Products, Defendants

19   claim to understand the importance of communicating responsibly about their products.

20   Nevertheless, Defendants have made, and continue to make, false and deceptive claims on their

21   Misbranded Food Products in violation of California and federal laws that govern the types of

22   representations that can be made on food labels.

23           15.     For example, in making their unlawful "All Natural" claims on their Misbranded

24   Food Products which contain artificial ingredients, flavorings, coloring, and/or chemical

25   preservatives, Defendants have violated labeling regulations mandated by California and federal

26   law, which forbid the use of such misleading labeling.

27           16.     Similarly, Defendants have made, and continue to make, unlawful nutrient content

28   and antioxidant claims on food labels of their Misbranded Food Products that are prohibited by

California and federal law and which render these products misbranded.  Under federal and California law, Defendants' Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.  Defendants' false and misleading labeling practices stem from their global marketing strategy.  Thus, the violations and misrepresentations are similar across product labels and product lines.

17.    Defendants' violations of law include the illegal advertising, marketing, distribution, delivery and sale of Defendants' Misbranded Food Products to consumers in California and throughout the United States.

**PARTIES**

91.    Plaintiff Chad Brazil is a resident of Santa Cruz, California who purchased Dole Misbranded Food Products during the four (4) years prior to the filing of this Civil Action (the "Class Period").

92.    Defendant Dole Food Company, Inc. is a Delaware corporation with its principal place of business in Westlake Village, California.

93.    Defendant Dole Packaged Foods, LLC is a California limited liability corporation with its principal place of business in Westlake Village, California.  Defendant Dole Packaged Foods, LLC is a subsidiary of Defendant Dole Food Company, Inc.

94.    Collectively, Defendants are leading producers of retail food products, including the Misbranded Food Products.  Defendants sell their food products to consumers through grocery and other retail stores throughout the United States.

95.    California law applies to all claims set forth in this Amended Complaint because Plaintiff lives in California and purchased Dole products there.  Also, the Defendants maintain their principal places of business in California.  All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California.  The formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from California.

96.    Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

1

**JURISDICTION AND VENUE**

2        24.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

3   because this is a class action in which:  (1) there are over 100 members in the proposed class;

4   (2) members of the proposed class have a different citizenship from Defendants;  and (3) the

5   claims of the proposed class members exceed $5,000,000 in the aggregate.

6        25.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

7   U.S.C. § 1331, because it arises under the laws of the United States.

8        26.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

9   U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

10  United States Constitution.

11       27.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

12  28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

13  between citizens of different states.

14       28.     The Court has personal jurisdiction over Defendants because a substantial portion

15  of the wrongdoing alleged in this Amended Complaint occurred in California, Defendants are

16  authorized to do business in California, have sufficient minimum contacts with California, and

17  otherwise intentionally avail themselves of the markets in California through the promotion,

18  marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court

19  permissible under traditional notions of fair play and substantial justice.

20       29.     Because a substantial part of the events or omissions giving rise to these claims

21  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

22  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

23                        **FACTUAL ALLEGATIONS**

24  **A.     Identical California And Federal Laws Regulate Food Labeling**

25       30.     Food manufacturers are required to comply with identical state and federal laws

26  and regulations that govern the labeling of food products.  First and foremost among these is the

27  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

28

31.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

32.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

**B.     FDA Enforcement History**

33.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

34.     In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point Of Purchase Food Labeling* ("2009 FOP Guidance") to address its concerns about front of package labels. The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

35.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

36.     Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Misbranded Food Products.

37.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels,

they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

38.     Notwithstanding the Open Letter, Defendants have continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

39.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of unlawful nutrient content claims described above.

40.     In these letters dealing with unlawful nutrient content claims, the FDA indicated that, as a result of the same type of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim." Similarly, letters for unlawful "all natural" claims similar to those at issue here, indicated that the products at issue were "misbranded under section 403(a)(1) of the Act" because their labels were "false and misleading."

41.     These warning letters were hardly isolated as the FDA has issued other warning letters to other companies for the same type of food labeling claims at issue in this case.

42.     The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on its Misbranded Food Products in response to the warning letters sent to other companies.

43.     Defendant also continued to ignore the FDA's Guidance for Industry, A Food Labeling Guide which details the FDA's guidance on how to make food labeling claims. Defendants continued to utilize unlawful claims on the labels of their Misbranded Food Products. As such, the Defendants' Misbranded Food Products continue to run afoul of FDA guidance as well as identical federal and California law.

44.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

45.     Plaintiff did not know, and had no reason to know, that the Defendants' Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that the Defendants' Misbranded Food Products were misbranded because their labeling was false and misleading.

**C.    Defendants' Products Are Misbranded**

**1.    <u>Defendants Make Unlawful "All Natural" Claims</u>**

46.     In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

47.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

48.     The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food."  *See* 58 FR 2302, 2407, January 6, 1993.

49.     Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

50.     Defendants' "All Natural" labeling practices violate FDA Compliance Policy Guide Sec. 587.100, which states:  "[t]he use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

51.     Likewise, California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling.

52.     The FDA has sent out numerous warning letters concerning this issue.  Defendants are aware of these FDA warning letters.

53.      Defendants have nonetheless unlawfully labeled a number of their food products as being "All Natural" " or "all Natural Fruit" when they actually contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

54.     For example, the principal display panel of Dole's Mixed Fruit in 100% Fruit Juice's label states, in part, that the product is "All Natural Fruit & Juice," despite the fact that that the product contains an unnatural chemical preservative, Ascorbic Acid. Similarly, the principal display panel of Dole's Wildly Nutritious Signature Blends Mixed Fruit's label states, in part, that the product is "All Natural Fruit," despite the fact that that the product is chemically preserved and contains Ascorbic Acid, Citric Acid, Malic Acid and added flavoring as ingredients. Another example would be Dole's Fruit Smoothie Shakers whose Strawberry Banana

variety bears an "All Natural" label claim despite containing the unnatural and synthetic chemicals Ascorbic Acid and Xanthan Gum as ingredients. Other examples include Dole Blueberries which claim to be all natural fruit yet have added flavoring that is inconsistent with reasonable consumer expectations that all natural fruit be just that and will not have added flavoring as an added ingredient. Similarly, the label of Dole's canned Tropical Fruit states it is "All Natural Fruit" despite the fact that the product contains Citric Acid, Ascorbic Acid, added flavors, Vitamin A Palmitate and the artificial coloring agent Beta Carotene. This type of "All Natural" mislabeling is a common Dole practice across many products and product lines.

55.     A reasonable consumer would expect that when Defendants label their products as "All Natural," the product's ingredients are "natural" as defined by the federal government and its agencies.  A reasonable consumer would also expect that when Defendants label their products as "All Natural" or "all Natural Fruit" the product ingredients are "natural" under the common use of that word.   A reasonable consumer would understand that "All Natural" products do not contain synthetic, artificial, or excessively processed ingredients.

56.     Consumers are thus misled into purchasing Defendants' products with synthetic unnatural ingredients that are not "All Natural" as falsely represented on their labeling. Defendants' products in this respect are misbranded under federal and California law.

**2.    Defendants' Unlawful Schemes Mislead Consumers That Their Canned, Thermally Treated, Pasteurized, Frozen And Chemically Preserved Food Products Are "Fresh"**

57.     Due to the enormous growth in popularity of fresh fruits, vegetables, and produce, Dole has engaged in a series of unlawful schemes to deceive consumers into erroneously believing that Dole's canned, thermally treated, pasteurized, frozen and chemically preserved fruits and vegetables are "fresh." These schemes and the unlawful practices Dole has undertaken in furtherance of these schemes are detailed below.

58.     In violation of California law, Dole has misled consumers into erroneously believing Dole's fruit products are fresh when they are not. Dole  did this to  increase its profit margins by charging premium prices for products that would not have commanded those prices had their true nature been revealed and not concealed by Dole. In furtherance of this plan, Dole

violated a number of identical California and federal laws and regulations.

59.     As detailed below, in order to fool its customers, Dole undertook a series of illegal acts and unlawful labeling practices to further its sales of and profits from its Misbranded Food Products. Dole has promoted the Dole Misbranded Food Products with materially false and misleading statements and practices.

60.     These false and misleading statements and practices included 1) labeling its Misbranded Food Products as "fresh" or claiming they had a "fresh taste;"  2) taking thermally treated, pasteurized, and chemically preserved canned fruit products and packing them in glass and plastic containers in a manner similar to fresh cut fruit; 3) failing to correctly identify or label such canned fruit products as canned or pasteurized as required by law; and 4) failing to disclose that certain ingredients were preservatives.

61.     According to the FDA's Compliance Policy Guide, CPG Sec. 562.450 Identity of Foods - Use of Terms Such as Fresh, Frozen, Dried, Canned, Etc.:

> The Federal Food, Drug, and Cosmetic Act requires that food labels bear the common or usual name of the food. The Fair Packaging and Labeling Act requires that a statement of identity appear prominently on the principal display panel. To avoid misrepresentation and provide information needed to assure proper storage, food labels should include in the name or statement of identity appropriate descriptive terms such as pasteurized, canned, frozen, or dried.

> Fresh: The term fresh should not be applied to foods which have been subjected to any form of heat or chemical processing. …

> Canned: A food is considered "canned," if it has been hermetically sealed and so processed by heat as to prevent spoilage. Foods which are in metal containers of the types normally used for canning, and are stored and displayed under conditions which do not suggest or imply that the article is other than a canned food need not be labeled "canned." If packed in glass or plastic bottles or jars and stored or displayed under refrigeration which might cause consumers to believe it is fresh, the label designation should include the word "canned," or "pasteurized," as the case may be.

In discussing a previous situation similar to the present one, the Compliance Policy Guide further states that:

> Certain packers of grapefruit juice have asked us to sanction use of the designation "grapefruit juice" without modifying terms, irrespective of whether the juice was pasteurized, canned, or otherwise processed. Investigation indicated that "canned"

grapefruit juice, packed in glass, was being refrigerated and displayed under conditions which implied it was fresh. We advised the packers that to avoid deception, the name should include the word "canned" when the product was so packed, stored, and displayed (particularly if displayed under refrigeration) as to imply or suggest that it was fresh juice.

62.     It is beyond dispute that Dole's Misbranded Food Products, such as Dole's Mixed Fruit in 100% Juice purchased by the Plaintiff, are "canned" fruit. These products are hermetically sealed and either chemically preserved or so processed by heat as to prevent spoilage or both. It is also clear that Dole has undertaken the exact practices the FDA has taken issue with. For example, the label of Dole's Mixed Fruit in 100% Juice fails to identify the product as a canned item or to reveal that the product is pasteurized or chemically preserved. The product itself is packed in a clear plastic cup and its label states it has "the fresh taste of Dole all natural fruit."

63.     Dole is using misleading packaging for its Misbranded Fruit Products lines, including its Mixed Fruit in 100% Juice product, which is packaged in plastic containers identical to the containers used by other producers for cut fresh produce, rather than in packaging typically used for canned or processed foods.

64.     Dole packages its Misbranded Fruit Product lines in such containers in order to (i) take advantage of retailers' and consumers' common understanding that fresh fruit and produce are packaged in this manner; and (ii) mislead the public into believing that its processed fruit products are, in fact, fresh.

65.     The false and misleading packaging and labeling causes consumers like the Plaintiff to believe the Dole Misbranded Fruit Products are "fresh" fruit, contain the same essential nutrients as fresh fruit, and have the same nutritional value as fresh fruit.

66.     The ingredients statement of Dole's Mixed Fruit in 100% Juice also fails to disclose that certain chemicals are used as preservatives in the product.  Dole intentionally describes the function of Ascorbic Acid in the product as being used "to promote color retention" because it believes that consumers would react negatively to the truthful description of Ascorbic Acid as being a preservative. Dole also fails to describe how other preservatives in the product

such as citric acid function in the product.

67.    The false claims made by Dole through its marketing, labels, and packaging constitute false advertising.

68.    The Dole Misbranded Fruit Products have been produced, packaged, labeled and marketed to consumers and retailers in a false and misleading way that portrays the products as either "fresh" or the equivalent of fresh-cut fruit products.

69.    The claims made by Dole about these products are literally false, false by necessary implication, and/or misleading because Dole's processed products do not contain the same essential nutrients as fresh fruits, nor are the Dole Misbranded Fruit Products nutritionally equivalent to fresh fruit.

70.    Dole has engaged in identical unlawful practices with respect to a number of its Misbranded Food Products. Dole's false labeling and other practices misled the Plaintiff and members of the Class into falsely believing that the Misbranded Food Products were fresh and equivalent to fresh fruit when they were not.

71.    Dole's false and/or misleading claims and packaging deceived consumers like the Plaintiff.  Plaintiff and members of the Class were misled by the absence of any disclosure that the products were canned, or pasteurized or preserved, by the deceptive packaging of the products, by the ingredient descriptions, and by the representations of "fresh taste." In relying on Dole's marketing and labeling and its false statements, Plaintiff was acting reasonably under the circumstances.

72.    Given the thermal processing and the chemical preservation of Dole's Misbranded Food Products, any representations of freshness or fresh taste are deceptive and misleading.

73.    A reasonable consumer would expect that when Defendants make a representation on their products' labels that such products have a fresh taste or make representations to a product's freshness that such representations are not contrary to regulatory requirements for making such claims. A reasonable consumer would also expect that when a manufacturer represents that its fruit or vegetable products are fresh, that those fruit or vegetable products are

fresh and have not been  chemically preserved or subjected to processes inconsistent with a freshness claim.

74.     Plaintiff saw and relied on the Defendants' label representation of freshness and its other representations of freshness and fresh taste and based his purchasing decisions in part on the belief that such products were fresh, would have a fresh taste and had not been subjected to chemical preservation or processes inconsistent with a freshness claim.

75.     Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products contained chemical preservatives and had undergone processes inconsistent with a freshness claim because the Defendants made false representations of freshness on their labels and on the labeling of their products. Moreover, as discussed below, the Defendants falsely represented that their products were free of artificial ingredients and preservatives and failed to disclose those chemical preservatives and artificial ingredients as required by California and federal law.

76.     Consumers are thus misled into purchasing Defendants' products with false and misleading labeling statements and ingredient descriptions, which violate California law and the regulations related to clams related to freshness contained in 21 C.F.R. §§ 101.95 which has been adopted as law by California.

77.     Had Plaintiff been aware that the Misbranded Food Products he purchased contained chemical preservatives and artificial ingredients and thus were not truly fresh as falsely represented, he would not have purchased the products. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

80.     Because of their false labels and other representations about freshness, Defendants' Misbranded Food Products are in this respect misbranded under identical California and federal law.  Misbranded products cannot be legally sold and thus are legally worthless. Plaintiff and members of the Class who purchased these products were misled into paying an unwarranted premium for these products. Dole's representations of freshness are misleading and in violation of 21 C.F.R. § 101.95.

81.     California law regulates the use of the word "fresh" in connection with food. Pursuant to 21 C.F.R. § 101.95 which has been adopted by the State of California:

the word "fresh," when used on the label or in labeling of a food in a manner that suggests or implies that the food is unprocessed, means that the food is in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation. The restrictions on the use of the term "fresh" "pertain to any use of the subject terms …. in a brand name and use as a sensory modifier" such as "fresh taste."

82.     Similarly, according to the FDA's Compliance Policy Guide,  CPG Sec. 562.450 Identity of Foods - Use of Terms Such as Fresh, Frozen, Dried, Canned, Etc.,  "[t]he term fresh should not be applied to foods which have been subjected to any form of heat or chemical processing."

83.     The  Defendants  violate  these  provisions  by  falsely  representing  that  its Misbranded  Food  Products  are  fresh  or  have  a  fresh  taste  when  they  have  been  thermally processed, frozen, preserved and  contain chemical preservatives.

84.     For example, Dole's Mixed Fruit in 100% Juice products that misrepresents that it is fresh and has a "fresh taste" The label of this product expressly states that it is has "the fresh taste of sun ripened Dole all natural fruit" despite the fact that is canned fruit that has been chemically  preserved  and  has  undergone  processing  inconsistent  with  the  freshness  claim. Similarly, the labels of Dole Tropical Fruit in Light Syrup and Passion Fruit Juice, Dole Wildly Nutritious  Signature  Blends  Mixed  Fruit,  Dole  Wildly  Nutritious  Signature  Blends  Mixed Berries, Dole Blueberries and Mixed Fruit in Cherry Gel purchased by Plaintiff all bear the same "fresh taste of sun ripened Dole all natural fruit" claim despite being chemically preserved and/or having  undergone  processing  inconsistent  with  such  a  freshness  claim.  Such  a  false  and misleading claim has been utilized repeatedly by Dole across products and product lines.

85.     Such deceptive and false label claims and statements are found on Dole's other food products.

86.     Given the processing and the chemical preservation of Dole' Misbranded Food Products, any representations of freshness or fresh taste are deceptive and misleading.

87.     A reasonable consumer would expect that when the Defendants make a representation on their products' labels that such products have a fresh taste or make representations as to their products freshness that such representations are not contrary to regulatory requirements for making such claims.  A reasonable consumer would also expect that when a manufacturer represents that its fruit or vegetable products are  fresh that those fruit or vegetable products are fresh and have  not been  chemically preserved or subjected to processes inconsistent with a freshness claim.

88.     Plaintiff saw and relied on the Defendants' label representation of freshness and Defendants' other representations of freshness and fresh taste and based his purchasing decisions in part on the belief that such products were fresh, would have a fresh taste and had not been subjected to chemical preservation or processes inconsistent with a freshness claim.

89.     Plaintiff did not know, and had no reason to know, that Defendants' food products contained chemical preservatives and had undergone processes inconsistent with a freshness claim because the Defendants made false representations of freshness on the labels and labeling of their products. Moreover, as discussed below, Defendants falsely represented that their products were free of artificial ingredients and preservatives and failed to disclose those chemical preservatives and artificial ingredients as required by California and federal law.

90.     Consumers such as the Plaintiff have been  misled into purchasing Defendants' products by Defendants'  false and misleading labeling statements and ingredient descriptions which violate California law and the regulations related to claims of freshness contained in 21 C.F.R. §§ 101.95 which has been adopted as law by California.

91.     Had Plaintiff been aware that the Misbranded Food Products he purchased contained chemical preservatives and artificial ingredients and thus were not truly fresh as falsely represented he would not have purchased the products. Plaintiff had other alternatives that lacked such chemical preservatives and artificial ingredients and Plaintiff also had cheaper alternatives.

92.     Because of their false label representations about freshness, Defendants' Misbranded Food Products are misbranded under identical federal and California law. Misbranded products cannot be legally sold and are thus legally worthless. Plaintiff and members

of the Class who purchased these products paid an unwarranted premium for these products. Because Dole's representations of freshness are misleading and are in violation of 21 C.F.R. § 101.95, which has been adopted by California, consumers like the Plaintiff are misled into purchasing and paying a premium for Defendants' products that are not fresh as falsely represented on their labeling.

**3.    Defendants Violate California Law By Failing To Disclose On Their Misbranded Food Products' Labels The Presence Of Preservatives In Those Products As Required By California Law**

93.    Despite the fact that their Misbranded Food Products contained artificial additives and chemical preservatives and other artificial ingredients, the Defendants falsely represent- on the labels of their Misbranded Food Products that they are  free of artificial ingredients and preservatives.

94.    These representations are demonstrably false and misled consumers such as the Plaintiff who relied on Defendants' statements.

95.    Under California law "food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact (California Health & Safety Code § 110740). California's law is identical to federal law on this point.

96.    Pursuant to 21 C.F.R. § 101.22 which has been adopted by California, "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. §  101.22 defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

97.     Defendants' Misbranded Food Products are misbranded because they contain artificial chemical flavors and chemical preservatives but fail to disclose that those ingredients are functioning in that fashion.

98.     For example, while a number of Defendants' products, such as the fruit products purchased by the Plaintiff, contain citric acid which is used in those products as an acidulant which is a type of chemical preservative designed to retard spoilage in canned vegetables, their labels fail to disclose the fact that the citric acid is being used as a preservative in those products by including a parenthetical such as (preservative) or (to retard spoilage) after the term citric acid in the ingredient statement. Similarly, the Dole Mixed Fruit in Cherry Gel contains a number of artificial flavoring agents such as potassium citrate but fails to disclose their function in the food.

99.     Dole has made a conscious decision not to disclose such information because it believes that if it did so consumers would react negatively to its products. Therefore, it has chosen either to not disclose the uses for which these preservatives and artificial ingredients are being included in its products or it has chosen to obscure the fact by using terms such as "to promote color retention" instead of clearly stating these additives are preservatives,  artificial coloring or flavoring as is required by law.

100.    A reasonable consumer would expect that when Defendants list their products' ingredients, they would make all disclosures required by law such as the disclosure of chemical preservatives and coloring mandated by identical California and federal law.

101.    Plaintiff saw the Defendants' label representations. Plaintiff based his purchasing decisions in part on the belief that these products did not contain chemical preservatives or artificial ingredients.

102.    Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products contained undisclosed chemical preservatives and other artificial ingredients because the Defendants failed to adequately disclose the function of those chemical preservatives and artificial ingredients as required by California and federal law.

103.    Consumers such as the Plaintiff are thus misled into purchasing Defendants' products with false and misleading labeling statements and ingredient descriptions, which do not

1  describe the basic nature of the ingredients, as required by California Health & Safety Code §

2  110740 and 21 C.F.R. §§ 101.22 which has been adopted as law by California..

3  104.  Had Plaintiff been aware that the Misbranded Food Products he purchased

4  contained chemical preservatives and artificial ingredients he would not have purchased the

5  products. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had

6  cheaper alternatives.

7  105.  Because of their false label representations and omissions about chemical

8  preservatives and artificial ingredients Defendants' Misbranded Food Products are in this respect

9  misbranded under identical federal and California law, including California Health & Safety Code

10  § 110740.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and

11  members of the Class who purchased these products paid an unwarranted premium for these

12  products.

13  **4.  California and Federal Law Regulate Nutrient Content Claims**

14  106.  Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a

15  nutrient in a food is a "nutrient content claim" that must be made in accordance with the

16  regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A).  California expressly

17  adopted the requirements of 21 U.S.C. § 343(r) in Section 110670 of the Sherman Law.

18  107.  Nutrient content claims are claims about specific nutrients contained in a product.

19  They are typically made on food packaging in a font large enough to be read by the average

20  consumer.  Because consumers rely upon these claims when making purchasing decisions, the

21  regulations govern what claims can be made in order to prevent misleading claims.

22  108.  Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

23  nutrient content claims on labels of food products that are intended for sale for human

24  consumption. 21 C.F.R. § 101.13.

25  109.  21 C.F.R. § 101.13 provides the general requirements for nutrient content claims,

26  which California has expressly adopted.  California Health & Safety Code § 110100.

27

28

110.   An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories").   21 C.F.R. § 101.13(b)(1).

111.   An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").   21 C.F.R. § 101.13(b)(2)(i-ii).

112.   These regulations authorize use of a limited number of defined nutrient content claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on food labels, these regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot be used on a label. Only those claims, or their synonyms, that are specifically defined in the regulations may be used. All other claims are prohibited. 21 CFR 101.13(b).

113.   Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food. It is thus clear which types of claims are prohibited and which types are permitted. Manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct. 58 FR 2302. In addition, 21 USC 343(r)(2), whose requirements have been adopted by California, prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

114.   Similarly, the regulations specify absolute and comparative levels at which foods qualify to make these claims for particular nutrients (*e.g.*, .low fat, . . . more vitamin C) and list synonyms that may be used in lieu of the defined terms. Certain implied nutrient content claims (*e.g.*, "healthy") also are defined. The daily values (DVs) for nutrients that the FDA has established for nutrition labeling purposes have application for nutrient content claims, as well. Claims are defined under current regulations for use with nutrients having established DVs;

1    moreover, relative claims are defined in terms of a difference in the percent DV of a nutrient

2    provided by one food as compared to another. *See. e.g.* 21 C.F.R. §§ 101.13 and 101.54.

3                    **a.        Defendants Make Unlawful Nutrient Content Claims**

4                    115.    In order to appeal to consumer preferences, Defendants have repeatedly made false

5    and unlawful nutrient content claims about antioxidants and other nutrients that either fail to

6    utilize one of the limited defined terms or use one the defined terms improperly. These nutrient

7    content claims are unlawful because they fail to comply with the nutrient content claim provisions

8    in violation of 21 C.F.R. §§ 101.13 and 101.54, which are incorporated in California's Sherman

9    Law. To the extent that the terms used by Defendants to describe nutrients and antioxidants are

10   deemed to be a synonym for a defined term like "contain" the claim would still be unlawful

11   because either the terms are being used improperly or the nutrients and antioxidants at issue do

12   not have established daily values and thus cannot serve as the basis for a term that has a minimum

13   daily value threshold as the defined terms at issue here do.

14                   116.    Defendants' claims concerning unnamed antioxidants, other antioxidants and

15   nutrients are false because Defendants' use of a defined term is in effect a claim that the products

16   have met the minimum nutritional requirements for the use of the defined term when they have

17   not.

18                   117.    For example, nutrient content claims that Dole makes on the labels of its frozen

19   blueberries and on the Dole website are false and unlawful.  Contrary to the Defendants' claims,

20   the blueberries are not "an excellent source" of Vitamin C or Manganese because at only 6% of

21   the DV for Vitamin C and 10% of the DV for Manganese, the blueberries fall far short of the 20%

22   DV threshold required by law for an "excellent source" claim. Similarly, Dole's claim that

23   blueberries are a "good source" of Vitamin C is false and unlawful as the berries fall short of the

24   10% DV threshold to make a "good source" claim. Dole's claim on the label of its frozen

25   blueberries that they are "rich in" nutrients is equally false and unlawful as the berries fail to meet

26   the 20% DV threshold for more than one nutrient that would be required to make the claim

27   truthful and lawful.

28

118.    Dole's misuse of defined terms is not limited to its blueberry nutrient content claims. Dole's blueberry related claims are simply one example of Dole's widespread practice of misusing defined nutrient content claims to overstate the nutrient content of its food products. For example, Dole falsely and unlawfully claims that its Wildly Nutritious Signature Blends Mixed Fruit "provides" potassium despite containing only 200 mgs of potassium which is far less than the 350 mgs of potassium required to use the term "provides" as part of a nutrient content claim. Dole also claims that its Wildly Nutritious Signature Blends Mixed Berries Antioxidant Blend" provides" "an ORAC value of 6,000 which is double the industry standard for effective antioxidant ability" even though there is no DV for the unnamed antioxidants. Similarly, Dole's claim that peaches "contain" carotenoids and phenolics is unlawful because neither of these nutrients have a DV and thus they cannot satisfy the 10% DV required for a "contains" nutrient content claim. Numerous other false and unlawful Dole nutrient content claims abound such as Dole's claims that other fruit that it sells such as raisins are "rich in" nutrients when they are not.

119.    Dole also falsely and unlawfully uses undefined terms such as "packed with, "found in" and "source of."  By using undefined terms such as "packed with, "found in" and "source of," Defendants are, in effect, falsely asserting that their products meet at least the lowest minimum threshold for any nutrient content claim which would have been 10% of the daily value of the nutrient at issue.  Such a threshold represents the lowest level that a nutrient can be present in a food before it becomes deceptive and misleading to highlight its presence in a nutrient content claim. Thus, for example, it is deceptive and misleading for Dole to claim that its frozen blueberries are "packed with antioxidants." It is similarly deceptive and misleading for Dole to claim that blueberries are a "source" or "top source" of resveratrol, polyphenols, quercetin, or the phytochemical C3G or that such nutrients are "found" in blueberries. Dole also cannot lawfully claim as it has done that pears or papayas are a "source" or "top source" of epicatechin or beta-cryptoxanthin or that such nutrients are "found" in pears or papayas. None of these nutrients has a DV and thus it is unlawful to make nutrient content claims about them.

120.    FDA enforcement actions targeting identical or similar claims to those made by Dole have made clear the unlawfulness of such claims.  For example, on March 24, 2011, the

FDA sent Jonathan Sprouts, Inc. a warning letter where it specifically targeted a "source" type claim like the one used by Dole. In that letter the FDA stated:

> Your Organic Clover Sprouts product label bears the claim "Phytoestrogen Source [.]" Your webpage entitled "Sprouts, The Miracle Food! - Rich in Vitamins, Minerals and Phytochemicals" bears the claim "Alfalfa sprouts are one of our finest food sources of . . . saponin." These claims are nutrient content claims subject to section 403(r)(1)(A) of the Act because they characterize the level of nutrients of a type required to be in nutrition labeling (phytoestrogen and saponin) in your products by use of the term "source." Under section 403(r)(2)(A) of the Act, nutrient content claims may be made only if the characterization of the level made in the claim uses terms which are defined by regulation. However, FDA has not defined the characterization "source" by regulation. Therefore, this characterization may not be used in nutrient content claims.

121.    It is thus clear that a "source" claim like the one utilized by Dole are unlawful because the "FDA has not defined the characterization 'source' by regulation" and thus such a "characterization may not be used in nutrient content claims." Similarly, a claim that a nutrient is "found" in blueberries is improper because it is either an undefined characterization that a nutrient is found in a food at some undefined level or because it is a synonym for a defined term like "contains" as there is no difference in meaning between the statement "blueberries contain C3G" and the statement "C3G is found in blueberries." Both characterize the fact the blueberries contain C3G at some undefined level. The types of misrepresentations made above would be considered by a reasonable consumer like the Plaintiff when deciding to purchase the products.

122.    These very same types of violations at issue here over nutrient content claims for food products were condemned in an FDA warning letter to Unilever/Lipton. In the warning letter to Unilever, the FDA stated:

> The product label back panel includes the statement "packed with protective FLAVONOID ANTIOXIDANTS." The term "packed with" characterizes the level of flavonoid antioxidants in the product; therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "packed with" could be considered a synonym for a term defined by regulation, nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "packed with FLAVONOID ANTIOXIDANTS" does not comply with 21 CFR 101.54(g)1) because no RDI has been established for flavonoids. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

123.     Just as the FDA found Unilever's use of the phrase "packed with flavonoid antioxidants" to be in violation of law, Dole's use on its website and package labels of terms such as "packed with antioxidants" is in violation of law as are Dole's other nutrient content claims. Therefore, as with Unilever, such a violation causes Dole's' products "to be misbranded under section 403(r)(2)(A)(i) of the Act".

124.     The nutrient content claims regulations discussed above are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.

125.     Plaintiff relied on Dole's nutrient content claims when making his purchase decisions and was misled because he erroneously believed the implicit misrepresentation that the Dole products he was purchasing met the minimum nutritional threshold to make such claims. Plaintiff would not have purchased these products had he known that the Dole products did not in fact satisfy such minimum nutritional requirements with regard to antioxidants and other nutrients. Plaintiff had other food alternatives that satisfied such standards and Plaintiff also had cheaper alternatives.

126.     For these reasons, Defendants' nutrient content claims at issue in this Amended Complaint are false and misleading and in violation of 21 C.F.R. §§ 101.13 and 101.54 and identical California law, and the products at issue are misbranded as a matter of law. Defendants have violated these referenced regulations. Therefore, Defendants' Misbranded Food Products are misbranded as a matter of federal and California law and cannot be sold or held  and thus are legally worthless.

127.     Plaintiff was thus misled by the Defendants' unlawful labeling practices and actions into purchasing products he would not have otherwise purchased had he known the truth about those products. Plaintiff had other food alternatives that that satisfied such standards and Plaintiff also had cheaper alternatives.

128.     Defendants' claims in this respect are false and misleading and the products are in this respect misbranded under identical federal and California laws, Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

### b.     Special Requirements Must Be Met For Antioxidant Nutrient Content Claims

129.     Dole violates identical California and federal antioxidant labeling regulations.

130.     Both California and federal regulations regulate antioxidant claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.54(g), which has been adopted by California, contains special requirements for nutrient claims that use the term "antioxidant":

(1)  the name of the antioxidant must be disclosed;

(2)  there must be an established RDI for that antioxidant, and if not, no "antioxidant" claim can be made about it;

(3)  the label claim must include the specific name of the nutrient that is an antioxidant and cannot simply say "antioxidants" (*e.g.*, "high in antioxidant vitamins C and E"), *see* 21 C.F.R. § 101.54(g)(4);

(4)  the nutrient that is the subject of the antioxidant claim must also have recognized antioxidant activity, *i.e.*, there must be scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R.  § 101.54(g)(2);

(5)  the antioxidant nutrient must meet the requirements for nutrient content claims in 21 C.F.R. § 101.54(b), (c), or (e) for "High" claims, "Good Source" claims, and "More" claims, respectively.  For example, to use a "High" claim, the food would have to contain 20% or more of the Daily Reference Value ("DRV") or RDI per serving.  For a "Good Source" claim, the food would have to contain between 10-19% of the DRV or RDI per serving, *see* 21 C.F.R. § 101.54(g)(3); and

(6)  the antioxidant nutrient claim must also comply with general nutrient content claim requirements such as those contained in 21 C.F.R. § 101.13(h) that prescribe the circumstances in which a nutrient content claim can be made on the label of products high in fat, saturated fat, cholesterol or sodium.

1

     **c.**     **Defendants Make Unlawful Antioxidant Nutrient Content Claims**

2         131.    For example, the front panel of the product labels for Dole's frozen blueberries

3   states that it is "packed with antioxidants."

4         132.    The antioxidant labeling for Defendants' frozen blueberries violates federal and

5   California law.

6         133.    The antioxidant claims on the packages of these products violate federal and

7   California law:  (1) because the antioxidants are not named, (2) because there are no RDIs for the

8   unnamed antioxidants being touted (unless one includes Vitamins A & C), (3) because no

9   antioxidants (including Vitamin A and C) are capable of qualifying for a "good source" claim

10   and (4) because Defendants lack adequate scientific evidence that the claimed antioxidant

11   nutrients participate in physiological, biochemical, or cellular processes that inactivate free

12   radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from

13   the gastrointestinal tract.

14         134.    The FDA has issued at least 7 warning letters addressing similar unlawful

15   antioxidant nutrient content claims. Defendants knew or should have known of these FDA

16   warning letters.

17         135.    Ignoring the legal requirements regarding antioxidant claims, Defendants have

18   made multiple unlawful antioxidant claims about their vegetable and fruit products.

19         136.    Not only do Dole's antioxidant nutrient content claims regarding the benefits of

20   unnamed antioxidants and other nutrients violate FDA rules and regulations, they directly

21   contradict current scientific research, which has concluded after researching antioxidant

22   properties that:

23

       despite more than 50 studies convincingly showing that flavonoids possess potent

24       antioxidant activity *in vitro,* the ability of flavonoids to act as an antioxidant *in vivo* [in
        humans], has not been demonstrated….

25

       No evidence has been provided to establish that having antioxidant

26       activity/content and/or antioxidant properties is a beneficial physiological effect.

27

28

Rycroft, Jane, "The Antioxidant Hypothesis Needs to be Updated," Vol. 1, *Tea Quarterly Tea Science Overview,* Lipton Tea Institute of Tea Research (Jan. 2011), pp. 2-3.

137.    Scientific evidence and consensus establishes the improper nature of the Defendants' antioxidant claims as they cannot satisfy the legal and regulatory requirement that the nutrient that is the subject of the antioxidant claim must have recognized antioxidant activity, *i.e.,* there must be scientific evidence that after it is eaten and absorbed from the gastrointestinal tract, the substance participates in physiological, biochemical or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions, *see* 21 C.F.R. § 101.54(g)(2).

138.    Plaintiff relied on Dole's unlawful antioxidant nutrient content claims when making his purchase decisions and was misled because he erroneously believed the implicit misrepresentation that the Dole products he was purchasing met the minimum nutritional threshold to satisfy the requirements for the antioxidant claims being made about the products. This threshold represents the lowest level that a nutrient can be present in a food before it becomes deceptive and misleading to highlight its presence in a nutrient content claim. Plaintiff would not have purchased these products had he known that the Dole products did not in fact satisfy such minimum nutritional requirements with regard to antioxidants. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products. For these reasons, Defendants' antioxidant claims at issue in this Complaint are false and misleading and in violation of 21 C.F.R. § 101.54 and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally manufactured, advertised, distributed, held or sold, and are thus legally worthless.

**5.    Defendants Make Unlawful "Sugar Free" or "Sugarless" Nutrient Claims**

138.    Federal and California regulations regulate sugar free or sugarless claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the terms "sugar free" or "sugarless."  Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own.  California Health & Safety Code § 110100.

139.    21 C.F.R. § 101.60(c)(1) provides that:

Sugar content claims—(1) Use of terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietary insignificant source of sugar." Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless: (i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietary insignificant amount of sugar;" and (iii)(A) It is labeled "low-calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness … or (B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low-calorie food," or "not for weight control."

140.    21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

141.    All of Defendants' purportedly sugar free fruit products contain more than 0.5 grams of sugar which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2).

142.    All of Defendants' purportedly sugar free fruit products contain one or more ingredients that are generally understood by consumers to contain sugars but the listing of the ingredient in the ingredient statement is not followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietary insignificant amount of sugar as required by 21 C.F.R. §

1   101.60(b)(2).

2   143.   None of Defendants' purportedly sugar free fruit products are low-calorie or

3   suitable for weight control as they all contain more than 40 calories per reference amount

4   customarily consumed which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2).

5   144.   For example, Dole's purportedly low calorie and sugar free Mixed Fruit in Cherry

6   Gel 1) bears a sugar free claim despite containing 5 grams of sugar per labeled serving which is

7   ten times the maximum level allowed by 21 C.F.R. § 101.60(b)(2); 2) contains the ingredients

8   peaches, pears and pineapple that are ingredients generally understood by consumers to contain

9   sugars but the listing of these ingredient in the ingredient statement is not followed by an asterisk

10  that refers to the statement below the list of ingredients, which states "adds a trivial amount of

11  sugar," "adds a negligible amount of sugar," or "adds a dietary insignificant amount of sugar as

12  required by 21 C.F.R. § 101.60(b)(2), and 3) contains more than 60 calories per reference amount

13  customarily consumed which precludes it from being classified as a low calorie product. Not only

14  does this product fail to bear the required statement "not a reduced calorie food," "not a low-

15  calorie food," or "not for weight control" next to the term sugar free but Dole falsely advertises

16  this product on its website as  being "low calorie" when as a matter of identical California and

17  federal law this is false.

18  145.   Notwithstanding the fact that 21 C.F.R. § 101.60(c)(1) bars the use of the terms

19  "sugar free" or "sugarless" on foods that are not low-calorie unless they bear an express warning

20  immediately adjacent to each use of the terms that discloses that the food is "not a reduced calorie

21  food," or "not a low-calorie food," or "not for weight control," Defendants have touted their non-

22  low-calorie and non-sugar free products as "low calorie," and sugar free and have chosen to omit

23  the mandated disclosure statement. By doing so, the Defendants have concealed the fact that these

24  purportedly low calorie and sugar free products have more calories per serving or per gram than

25  other non-sugar free products sold by the Defendants.

26  146.   In doing so Defendants have ignored the language of 21 C.F.R. § 101.60(c)(1) that

27  states:

28          Consumers  may  reasonably  be  expected  to  regard  terms

that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

147.    Because consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners (e.g., "sugar free," or "sugarless") as indicating a product which is low in calories or significantly reduced in calories, consumers such as the Plaintiff and other members of the Class are misled when foods that are not low-calorie as a matter of law are falsely represented to be low-calorie through the unlawful use of terms like sugar free and sugarless that they are not allowed to bear due to their high calorific levels and absence of mandated disclosure statements. Consumers such as the Plaintiff and other members of the Class are also misled when foods that are not low-calorie as a matter of law are falsely represented to be low-calorie through the unlawful use of terms like "low-calorie" that they are not allowed to utilize due to their high calorific levels.

148.    The labeling of Defendants' products violates California and federal law.  For these reasons, Defendants' sugar free and sugarless claims at issue in this Amended Complaint are misleading and in violation of 21 C.F.R. § 101.60 and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally sold and are legally worthless.

149.    Defendants have also made the same illegal claims on their websites and advertising in violation of California and federal law.

150.    In September 2007, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about unlawful sugar free type claims "that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation." The letter stated:

Dear Manufacturer:

The Food and Drug Administration (FDA) is concerned about the number of products we have seen that contain claims regarding the absence of sugar, such as, "sugar free" but that fail to bear the required disclaimer statement when these foods

are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation. As part of our continuing effort to reduce the incidence of obesity in the United States, FDA wants to ensure that consumers are provided with the label information they need to make informed choices for maintaining a healthy diet. We are highlighting accurate claims about the absence of sugar as a regulatory priority. The agency intends to take appropriate action against products that we encounter that bear a claim about the absence of sugar (e.g., sugar free) but that fail to meet each of the requirements of the regulation that defines "sugar free." We intend to pay particular attention to those foods that are required to bear a disclaimer statement under the regulation that defines "sugar free," but that fail to do so or otherwise fail to comply with the regulation, 21 CFR 101.60(c). Therefore, we are taking this opportunity to remind food manufacturers and distributors of conventional food products that the definition of "sugar free" includes several requirements.

Under the authority of the Nutrition Labeling and Education Act of 1990, FDA issued regulations for the nutrient content claim "sugar free" 58 Federal Register (FR) 2302 at 2415. "Sugar free" is defined in Title 21 of the Code of Federal Regulations 101.60(c) …

FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low-calorie or that have been altered to reduce calories significantly. Therefore, the definition for "sugar free" includes the requirement that any food that is not low or reduced in calorie disclose that fact. Without such information some consumers might think the food was offered for weight control. See 56 FR 60421 at 60435. Consequently, the definition for "sugar free" includes the requirement that the food be labeled with the claim "low-calorie" or "reduced calorie" or bear a relative claim of special dietary usefulness labeled in compliance with 21 CFR 101.60(b)(2), (b)(3), (b)(4), or (b)(5) or such claim is immediately accompanied, each time it is used, by one of the following disclaimer statements: "not a reduced calorie food," "not a low-calorie food," or "not for weight control" (see 21 CFR 101.60(c)(1)(iii)). The disclaimer statement, when required, must accompany the claim each time it is used. In addition, the disclaimer statement is subject to the requirements of 21 CFR 101.2(c) and must appear prominently and conspicuously but in no case may the letters be less than one-sixteenth inch in height.

FDA encourages food manufacturers and distributors to review their labels and ensure that any food that bears a claim regarding the absence of sugar meet each of the requirements for that claim including the placement and conspicuousness of the disclaimer statement in 21 CFR 101.60(c)(1)(iii) when required. FDA will take appropriate action, consistent with our priorities and resources, when we find problems with the use of nutrient content claims regarding the absence of sugar in foods.

151.   Defendants have ignored this FDA guidance and have engaged in the exact labeling practices the FDA has sought to eliminate.

152.   In addition to the industry guidance which Defendants have ignored, the FDA has repeatedly taken enforcement action and issued warning letters against several other companies addressing the type of misleading sugar free and sugarless nutrient content claims described above.

153.   The enforcement actions and warning letters were not isolated, as the FDA has taken action against several companies finding that the products were misbranded within the meaning of section 403 because the products' labels bore "sugar free" claims but did not meet the requirements to make such a claim.

154.   Defendants have ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use unlawful low calorie and sugar free claims on their product labels and in their advertising and marketing materials when they know they are prohibited by law from doing so.

155.   Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded, and bore unlawful nutrient content claims by failing to meet the requirements to make those nutrient content claims. Defendants' labeling and advertising of their purportedly sugar free products misled the Plaintiff and other Class members who relied on the Defendants' low calorie and sugar free labeling and advertising. Plaintiff and other Class members have been misled as to the amount of sugar in the product which is 10 times higher than the maximum allowed in a sugar free product labeled in the manner that the Defendants purportedly sugar free products are labeled. Plaintiff and other Class members have been misled as to the fact that the calories in the products exceed the amount allowed per reference amount customarily consumed for low calorie products. Plaintiff and other Class members have been misled into the erroneous belief that the products in question are low calorie products when they are not.

**6.       Defendants Make Unlawful Health Claims**

156.   Dole has violated identical California and federal law by making numerous unapproved health claims about its products. It has also violated identical California and federal law by making numerous unapproved claims about the ability of its products to cure, mitigate,

1   treat and prevent various diseases that render its products unapproved drugs under California and

2   federal law. Moreover, in promoting the ability of its tomato products to have an effect on certain

3   diseases such as cancer and heart disease among others, Defendants have violated the advertising

4   provisions of the Sherman law.

5      157. A health claim is a statement expressly or implicitly linking the consumption of a

6   food substance (*e.g.*, ingredient, nutrient, or complete food) to risk of a disease (*e.g.*,

7   cardiovascular disease) or a health-related condition (*e.g.*, hypertension). *See* 21 C.F.R.

8   §101.14(a)(1), (a)(2), and (a)(5). Only health claims made in accordance with FDCA

9   requirements, or authorized by FDA as qualified health claims, may be included in food labeling.

10  Other express or implied statements that constitute health claims, but that do not meet statutory

11  requirements, are prohibited in labeling foods.

12     158. 21 C.F.R. § 101.14, which has been expressly adopted by California, provides

13  when and how a manufacturer may make a health claim about its product.  A "Health Claim"

14  means any claim made on the label or in labeling of a food, including a dietary supplement, that

15  expressly or by implication, including "third party" references, written statements (*e.g.*, a brand

16  name including a term such as "heart"), symbols (*e.g.*, a heart symbol), or vignettes, characterizes

17  the relationship of any substance to a disease or health-related condition. Implied health claims

18  include those statements, symbols, vignettes, or other forms of communication that suggest,

19  within the context in which they are presented, that a relationship exists between the presence or

20  level of a substance in the food and a disease or health-related condition (*see* 21 CFR §

21  101.14(a)(1)).

22     159. Further, health claims are limited to claims about disease risk reduction, and

23  cannot be claims about the diagnosis, cure, mitigation, or treatment of disease. An example of an

24  authorized health claim is: "Three grams of soluble fiber from oatmeal daily in a diet low in

25  saturated fat and cholesterol may reduce the risk of heart disease. This cereal has 2 grams per

26  serving."

27

28

160.     A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food. 21 U.S.C. § 321(g)(1)(D).

161.     The use of the term "healthy" is not a health claim but rather an implied nutrient content claim about general nutrition that is defined by FDA regulation. In general, the term may be used in labeling an individual food product that:

> Qualifies as both low fat and low saturated fat; Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;
>
> Does not exceed the disclosure level for cholesterol (*e.g.*, for most individual food products, 60 mg or less per reference amount and per labeled serving size); *and*
>
> Except for raw fruits and vegetables, certain frozen or canned fruits and vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C, calcium, iron, protein, *or* fiber per reference amount. Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with FDA's fortification policy.

21 C.F.R. § 101.65(d)(2).

162.     The FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d).

163.     Dole has violated the provisions of § 21 C.F.R. §101.14, 21 C.F.R. §101.65, 21 C.F.R. §101.76, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1) by including certain claims on its product labeling and website.

164.     For example, Dole unlawfully claims that products like its Wildly Nutritious Signature Blends Mixed Fruit may reduce the risk of cancer and in doing so utilizes a claim that the product is expressly prohibited from making by 21 C.F.R. §101.76 which has been adopted by

1   the State of California. In particular, Dole claims in connection with its Wildly Nutritious

2   Signature Blends Mixed Fruit that "[l]ow fat diets rich in fiber-containing fruits and vegetables

3   may reduce the risk of some types of cancer, a disease associated with many factors." 21 C.F.R.

4   §101.76 mandates that this claim can only be used in connection with a food that meets "without

5   fortification, the nutrient content requirements of §101.54 for a "good source" of dietary fiber."

6   Dole's Wildly Nutritious Signature Blends Mixed Fruit contains too little fiber to qualify as a

7   "good source" of dietary fiber and thus it is improper and unlawful for Dole to make such a claim

8   in connection with this product. It is also misleading as the claim implies that the product is rich in

9   fiber which it is not.

10        165.    Dole makes a number of other unlawful health claims. For example, Dole claims

11  on its website that blueberries contain compounds that may help ward off urinary tract infections,

12  reduce the risk of heart disease, which fight to protect one's health and which have anti-

13  inflammatory, heart healthy, anti-aging, and anti-carcinogenic properties; that pineapple contains

14  an enzyme, bromelain, that may reduce inflammation, speed healing, alleviate asthma symptoms,

15  and inhibit the growth of malignant lung and breast cancer cells; that apples contain quercetin

16  which may reduce the risk of Alzheimer's disease as well as lung and prostate cancer; that grapes

17  protect against heart disease and certain cancers; that peaches contain compounds which help keep

18  skin healthy.  These claims are merely typical examples of Dole's widespread practice of making

19  unlawful and unauthorized health claims. Dole's website also contains an abundance of instances

20  where Dole, like the snake oil salesmen of yore with their cure-all elixirs, promotes the ability of

21  its products to preserve one's health and to prevent cancer, asthma, cardiovascular disease,

22  Alzheimer's disease, urinary tract infections and many other diseases and even discusses how its

23  products may do things such as, in the case of pineapple, speed the recovery process from plastic

24  surgery, or in the case of blueberries, "protect astronauts against the radiation-induced free-radical

25  damage experienced during extended space flight."

26        166.    The therapeutic claims on Dole's website establish that Dole's products are drugs

27  because they are intended for use in the cure, mitigation, treatment, or prevention of disease.

28  Dole's products are not generally recognized as safe and effective for the above referenced uses

and, therefore, the products would be "new drug[s]" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from the FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

167.   Plaintiff saw such health related claims and relied on the Dole's health claims which influenced his decision to purchase the Defendants' products. Plaintiff would not have bought the products had he known Dole's claims were unapproved and that the products were thus misbranded.

168.   Plaintiff and members of the Class was misled into the belief that such claims were legal and had passed regulatory muster and were supported by science capable of securing regulatory acceptance. Because this was not the case, Plaintiff and members of the Class have been deceived.

169.   Dole's materials and advertisements not only violate regulations adopted by California such as 21 C.F.R. § 101.14,  they also violate California Health & Safety Code § 110403 which prohibits the advertisement of products that are represented to have any effect  on enumerated conditions, disorders and diseases including cancer and heart diseases unless the materials have federal approval.

170.   Plaintiff and members of the Class have been misled by Dole's unlawful labeling practices and actions into purchasing products they would not have otherwise purchased had they known the truth about these products. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

171.   Dole's health related claims are false and misleading and the products are in this respect misbranded under identical California and federal laws. Misbranded products cannot be legally sold and thus are legally worthless.

1

2

**D.**     **Defendants Have Violated California Law By Manufacturing, Advertising, Distributing and Selling Misbranded Food Products**

3     172.    Defendant has manufactured, advertised, distributed and sold products that are

4  misbranded under California law.    Misbranded products cannot be legally manufactured,

5  advertised, distributed, sold or held and are legally worthless as a matter of law.

6     173.    Defendants have violated California Health & Safety Code § 110390 which makes

7  it unlawful to disseminate false or misleading food advertisements that include statements on

8  products and product packaging or labeling or any other medium used to directly or indirectly

9  induce the purchase of a food product.

10     174.    Defendants have violated California Health & Safety Code § 110395 which makes

11  it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

12     175.    Defendants have violated California Health & Safety Code §§ 110398 and 110400

13  which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any

14  food that has been falsely advertised.

15     176.    Defendants have violated California Health & Safety Code § 110660 because their

16  labeling is false and misleading in one or more ways.

17     177.    Defendants' Misbranded Food Products are misbranded under California Health &

18  Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient

19  labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

20     178.    Defendants' Misbranded Food Products are misbranded under California Health &

21  Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient

22  content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

23     179.    Defendants' Misbranded Food Products are misbranded under California Health &

24  Safety Code § 110705 because words, statements and other information required by the Sherman

25  Law to appear on their labeling either are missing or not sufficiently conspicuous.

26     180.    Defendants' Misbranded Food Products are misbranded under California Health &

27  Safety Code § 110735 because they purport to be or are represented for special dietary uses, and

28  their labels fail to bear such information concerning their vitamin, mineral, and other dietary

properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

181.    Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110740 because they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

182.    Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

183.    Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

184.    Defendants have violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

185.    Defendants have violated the standard set by 21 C.F.R. § 101.22, which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

**E.    <u>Plaintiff Purchased Defendants' Misbranded Food Products</u>**

186.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.  Since 2008, and throughout the Class Period, Plaintiff purchased Defendants' Misbranded Food Products, including Dole Wildly Nutritious Signature Blends Mixed Berries; Dole Wildly Nutritious Signature Blends Tropical Fruit; Dole Mixed Fruit in 100% Fruit Juice; Dole Blueberries; Dole Fruit Smoothie Shakers; Dole Mixed Fruit in Cherry Gel (Sugar Free), and Dole Tropical Fruit in Light Syrup & Passion Fruit Juice.  During the Class Period, Plaintiff spent more than twenty-five dollars ($25.00) on Defendants' Misbranded Food Products.

187.    Plaintiff read the labels on Defendants' Misbranded Food Products, including the "All Natural," fresh, antioxidant and other nutrient content label claims, before purchasing them.

188.    Plaintiff relied on Defendants' package labeling including the "All Natural," label fresh, antioxidant, sugar free and other nutrient content claims, and based and justified the

decision to purchase Defendants' products in substantial part on Defendants' package labeling. Plaintiff read Dole's website and web claims concerning Defendants' Misbranded Food Products, including the "All Natural," fresh, antioxidant, sugar free and low calorie and other nutrient content claims as well as the health and disease related claims before purchasing them.

189.   Plaintiff reasonably relied on Defendants' package labeling, packaging, and website and justified the decision to purchase Defendants' Misbranded Food Products in substantial part on Defendants' package labeling and web claims as well as product packaging, including the antioxidant, sugar free and low calorie and other nutrient content claims and the representations that the products were fresh and natural and healthy.

190.   At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had he known the truth about them.

191.   After Plaintiff learned that Defendants' Misbranded Food Products were falsely labeled, he stopped purchasing them.

192.   At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' "All Natural," fresh, antioxidant, sugar free and other nutrient content label claims were unlawful and unauthorized as set forth herein, and would not have bought the products had he known the truth about them.

193.   As a result of Defendants unlawful misrepresentations, Plaintiff and thousands of others in California and throughout the United States purchased the Misbranded Food Products at issue.

194.   Defendants' labeling, advertising and marketing as alleged herein is false and misleading and was designed to increase sales of the products at issue.   Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

195.   A reasonable person would also attach importance to whether Defendants' products were legally salable, and capable of legal possession, and to Defendants' representations

1   about these issues in determining whether to purchase the products at issue. Plaintiff would not

2   have purchased Defendants' Misbranded Food Products had he known they were not capable of

3   being legally sold or held.

4       196.    Defendants' Misbranded Food Products 1) whose essential characteristics had

5   been misrepresented by the Defendants, 2) which had their nutritional and health benefits

6   misrepresented and overstated by the Defendants, and 3) which were misbranded products which

7   could not be resold and whose very possession was illegal,  were worthless to the Plaintiff and as

8   a matter of law.

9                              **CLASS ACTION ALLEGATIONS**

10      197.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure

11  23(b)(2) and 23(b)(3) on behalf of the following class:

12              All persons in the United States who, within the last four years,
                purchased Defendants' food products (1) labeled or advertised as
13              "All Natural" despite containing artificial or unnatural ingredients,
                flavorings, coloring, and/or chemical preservatives; (2) labeled
14              or advertised as fresh despite being thermal processed, frozen, or
                preserved; (3) labeled or advertised as sugar free despite
15              containing sugar and/or having more than 40 calories per serving
                size; (4) labeled or advertised as low calorie despite having more
16              than 40 calories per serving size; (5) labeled or advertised with a
                nutrient content or antioxidant claim for a nutrient lacking a Daily
17              Value  or lacking the minimum Daily Value specified for the type
                of claim made; or (6) labeled or advertised with an unauthorized
18              health claim (the "Class").

19      198.    The following persons are expressly excluded from the Class:  (1) Defendants and

20  their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from

21  the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and

22  its staff.

23      199.    This action can be maintained as a class action because there is a well-defined

24  community of interest in the litigation and the proposed Class is easily ascertainable.

25      200.    Numerosity:  Based upon Defendants' publicly available sales data with respect to

26  the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that

27  joinder of all Class members is impracticable.

28

201. <u>Common Questions Predominate</u>: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, just for example:

    a.    Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

    b.    Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

    c.    Whether Defendants made unlawful and misleading "All Natural" or fresh claims with respect to their food products sold to consumers;

    d.    Whether Defendants made unlawful and misleading antioxidant, nutrient content or health claims with respect to their food products sold to consumers;

    e.    Whether Defendants failed to disclose the presence of preservatives or falsely represented that their products did not contain preservatives or artificial ingredients;

    f.    Whether Defendant used unlawful and misleading nutritional information and statements of identity;

    g.    Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

    h.    Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    i.    Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

    j.    Whether Defendants were unjustly enriched by their deceptive practices.

202. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar

injuries arising out of Defendants' conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

203.  Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

204.  Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

205.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

206.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

207.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

208.    Plaintiff incorporates by reference each allegation set forth above.

209.    Defendants' conduct constitutes unlawful business acts and practices.

210.    Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Dole's headquarters in California.

211.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

212.    Defendants are corporations and, therefore, each is a "person" within the meaning of the Sherman Law.

213.    Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

214. Defendants' business practices are unlawful under § 17200, *et seq*. by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

215. Defendants' business practices are unlawful under § 17200, *et seq*. by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

216. Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally, and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

217. As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

218. Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

219. As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200,** *et seq.*
**<u>Unfair Business Acts and Practices</u>**

220. Plaintiff incorporates by reference each allegation set forth above.

221. Defendants' conduct as set forth herein constitutes unfair business acts and practices.

222. Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Dole's headquarters in California.

223.   Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

224.   Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct.

225.   Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

226.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

227.   Plaintiff and the Class who purchased Defendants' Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

228.   The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

229.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### <u>Fraudulent Business Acts and Practices</u>

230.    Plaintiff incorporates by reference each allegation set forth above.

231.    Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

232.    Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Dole's headquarters in California.

233.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

234.    Defendants' misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and their misrepresentations that the products were salable, capable of legal possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived. Defendants have engaged in fraudulent business acts and practices.

235.    Defendants' fraud and deception caused Plaintiff and the Class to purchase Defendants Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

236.    Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

237.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

238.    Plaintiff incorporates by reference each allegation set forth above.

239.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq*. for misleading and deceptive advertising against Defendants.

240.    Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Dole's headquarters in California.

241.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

242.    Defendants engaged in a scheme of offering Defendants Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendants Misbranded Food Products.  Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq*. in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

243.    In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Food Products.  Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

244.    Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

consumers by obfuscating the true composition and nature of Defendants Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

245.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

246.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

247.    Plaintiff incorporates by reference each allegation set forth above.

248.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

249.    Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Dole's headquarters in California.

250.    Defendants sold Misbranded Food Products in California and throughout the United States during the Class Period.

251.    Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products.  Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase

Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

252. In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

253. Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

254. As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

255. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

256. Plaintiff incorporates by reference each allegation set forth above.

257. This cause of action is brought pursuant to the CLRA. Defendants' violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

258. Plaintiff and the Class are entitled to actual and punitive damages against Defendants for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2),

*Amended Class Action Complaint*

Plaintiff and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

259.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

260.    Defendants sold Misbranded Food Products in California during the Class Period.

261.    Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

262.    Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

263.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

264.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular standard, quality or grade of the goods.

265.    By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

266.    By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

267.    Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

268.    Pursuant to Section 1782(a) of the CLRA, on May 8, 2012, Plaintiff's counsel served Dole with notice of Dole's violations of the CLRA.  As authorized by Dole's counsel, Plaintiff's counsel served Dole by certified mail, return receipt requested.    Dole, through its counsel, acknowledged receipt of Plaintiff's CLRA demand notice, by responding with a letter dated June 7, 2012.

269.    Dole has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the CLRA demand notice.  Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

270.    Plaintiff makes certain claims in this Amended Complaint that were not included in the original Complaint filed on April 11, 2012, and were not included in Plaintiff's CLRA demand notice.

271.    This cause of action does not currently seek monetary relief and is limited solely to injunctive relief, as to Defendants' violations of the CLRA not included in the original Complaint.  Plaintiff intends to amend this Complaint to seek monetary relief in accordance with the CLRA after providing Defendants with notice of Plaintiff's new claims pursuant to Cal. Civ. Code § 1782.

272.    At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

273.    Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of

costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

274.    Plaintiff incorporates by reference each allegation set forth above.

275.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products Defendants were enriched at the expense of Plaintiff and the Class.

276.    Defendants sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

277.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)

278.    Plaintiff incorporates by reference each allegation set forth above.

279.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

280.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code § 1791(j) & (l).

281.    Defendants' food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

282.    Defendants' "All Natural," nutrient and health claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

283. Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

284. Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

285. Defendants breached their express warranties regarding their Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

286. Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

287. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

288. Defendants' breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
## Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

289. Plaintiff incorporates by reference each allegation set forth above.

290. Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

291. Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

292. Defendants' food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

293. Defendants' "All Natural" claims constitute "express warranties."

294. Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

295.     Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

296.     Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

297.     Defendants sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

298.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of his claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action, except with respect to Plaintiff's new claims under the CLRA, as to which Plaintiff intends to amend this Complaint to seek such relief;

C.     For an order requiring Defendants to immediately cease and desist from selling their Misbranded Food Products listed in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.     For all remedies available pursuant to Cal. Civ. Code § 1780;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding punitive damages;

G.     For an order awarding pre-and post-judgment interest; and

H.     For an order providing such further relief as this Court deems proper.

1    Dated:  July  23, 2012                    Respectfully submitted,

2

3                                                  /s/ Ben F. Pierce Gore
                                              Ben F. Pierce Gore (SBN 128515)
4                                             PRATT & ASSOCIATES
                                              1901 S. Bascom Avenue, Suite 350
5                                             Campbell, CA  95008
                                              Telephone:  (408) 429-6506
6                                             Fax:  (408) 369-0752
                                              pgore@prattattorneys.com
7
                                              Jay Nelkin
8                                             Carol Nelkin
                                              Stuart M. Nelkin
9                                             NELKIN & NELKIN, P.C.
                                              5417 Chaucer Drive
10                                            Houston, Texas 77005
                                              Telephone:  (713) 526-4500
11                                            Facsimile:  (281) 825-4161
                                              jnelkin@nelkinpc.com
12                                            cnelkin@nelkinpc.com
                                              snelkin@nelkinpc.com
13
                                              Don Barrett
14                                            David McMullan, Jr.
                                              Brian Herrington
15                                            Katherine B. Riley
                                              BARRETT LAW GROUP, P.A.
16                                            P.O. Box 927
                                              404 Court Square North
17                                            Lexington, MS 39095
                                              Telephone: (662) 834-2488
18                                            Toll Free: (877) 816-4443
                                              Fax: (662) 834-2628
19                                            dbarrett@barrettlawgroup.com
                                              donbarrettpa@yahoo.com
20                                            bherrington@barrettlawgroup.com
                                              kbriley@barrettlawgroup.com
21                                            kbriphone@yahoo.com
                                              dmcmullan@barrettlawgroup.com
22
                                              Charles Barrett
23                                            CHARLES BARRETT, P.C.
                                              6518 Hwy. 100, Suite 210
24                                            Nashville, TN 37205
                                              Telephone: (615) 515-3393
25                                            Fax: (615) 515-3395
                                              charles@cfbfirm.com
26

27

28

*Amended Class Action Complaint*

1    Richard Barrett
     LAW OFFICES OF RICHARD R. BARRETT, PLLC
2    2086 Old Taylor Road, Suite 1011
     Oxford, MS 38655
3    Telephone: (662) 380-5018
     Fax: (866) 430-5459
4    rrb@rrblawfirm.net

5    J. Price Coleman
     COLEMAN LAW FIRM
6    1100 Tyler Avenue, Suite 102
     Oxford, MS 38655
7    Telephone: (662) 236-0047
     Fax: (662) 513-0072
8    colemanlawfirmpa@bellsouth.net

9    Dewitt M. Lovelace
     Alex Peet
10   LOVELACE LAW FIRM, P.A.
     12870 U.S. Hwy 98 West, Suite 200
11   Miramar Beach, FL 32550
     Telephone: (850) 837-6020
12   Fax: (850) 837-4093
     dml@lovelacelaw.com
13
     David Shelton
14   ATTORNEY AT LAW
     1223 Jackson Avenue East, Suite 202
15   Oxford, MS 38655
     Telephone: (662) 281-1212
16   Fax: (662-281-1312
     david@davidsheltonpllc.com
17
     Keith M. Fleischman
18   Frank Karam
     Ananda  N. Chaudhuri
19   FLEISCHMAN LAW FIRM
     565 Fifth Avenue, 7th Floor
20   New York, New York  10017
     Telephone:  212-880-9571
21   keith@fleischmanlawfirm.com
     frank@fkaramlaw.com
22   achaudhuri@fleischmanlawfirm.com

23   Zona Jones
     Darren Brown
24   PROVOST UMPHREY LAW FIRM LLP
     490 Park Street
25   P.O. Box 4905
     Beaumont, TX 77704
26   Telephone: (409) 299-5178
     zjones@provostumphrey.com
27   dbrown@provostumphrey.com

28   *Attorneys for Plaintiff*

- 60 -
*Amended Class Action Complaint*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28