UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHAD BRAZIL, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOLE FOOD COMPANY, INC., DOLE PACKAGED FOODS, LLC,<br><br>Defendants. | ) | Case No.: 12-CV-01831-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE |

Plaintiff Chad Brazil ("Brazil") brings this putative class action against Dole Food Company, Inc. and Dole Packaged Foods, LLC ("Dole" or "Defendants") alleging that Defendants' package labeling is "misbranded" because it is unlawful and misleading. Specifically, Brazil alleges the following: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*, for untrue, as well as misleading and

deceptive, advertising (claims 4 and 5); (3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.* (claim 6); (4) restitution based on unjust enrichment/quasi-contract (claim 7); (5) violation of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790 *et seq.* (claim 8); and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*. (claim 9). Brazil seeks compensatory and punitive damages, restitution, disgorgement of profits, interest, attorney's fees, costs, and injunctive relief.

The Court held a hearing on this motion on January 24, 2013. Having considered the submissions of the parties, the parties' oral arguments, and the relevant law, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion to Strike.

## I. BACKGROUND

### A. Factual Allegations

Brazil, on behalf of himself and others who are similarly situated, alleges that he purchased Defendants' misbranded food products, including Dole Wildly Nutritious Signature Blends Mixed Berries, Dole Wildly Nutritious Signature Blends Tropical Fruit, Dole Mixed Fruit in 100% Fruit Juice, Dole Blueberries, Dole Fruit Smoothie Shakers, Dole Mixed Fruit in Cherry Gel (Sugar Free), and Dole Tropical Fruit in Light Syrup & Passion Fruit Juice. First Amended Complaint ("FAC"), ECF No. 25, ¶ 186.

Brazil read and relied upon Defendants' package labeling including the "'All Natural,' fresh, antioxidant, sugar-free and other nutrient content claims," and based his decision to purchase Defendants' products in substantial part on Defendants' package labeling, as well as Defendants' product packaging and web claims. FAC ¶¶ 187–189. At the point of sale, Brazil alleges that he "did not know, and had no reason to know, that Defendants' products were misbranded." FAC ¶ 192. However, he claims that he "would not have bought the products had he known the truth about them." FAC ¶ 192. Brazil spent more than twenty-five dollars in the aggregate on these misbranded products. FAC ¶ 186.

Brazil seeks to bring this putative class action on behalf of a nationwide class consisting of all persons who, within the last four years, purchased Defendants' food products:

United States District Court
For the Northern District of California

> (1) labeled or advertised as "All Natural" despite containing artificial or unnatural ingredients, flavorings, coloring, and/or chemical preservatives; (2) labeled or advertised as fresh despite being thermal processed, frozen, or containing sugar and/or having more than 40 calories per serving size; (3) labeled or advertised as sugar free despite containing sugar and/or having more than 40 calories per serving size; (4) labeled or advertised as low calories despite having more than 40 calories per serving size; (5) labeled or advertised with a nutrient content or antioxidant claim for a nutrient lacking a Daily Value or lacking the minimum Daily Value specified for the type of claim made; or (6) labeled or advertised with an unauthorized health claim.

FAC at 1-2.

**B. Procedural History**

Brazil filed a putative class action complaint against Defendants on April 11, 2012. ECF No. 1. Defendants filed a Motion to Dismiss on July 2, 2012. ECF No. 16. Rather than responding to Defendants' Motion to Dismiss, Brazil filed an amended class action complaint on July 23, 2012. ECF No. 25. The Court then denied Defendants' Motion to Dismiss the original complaint as moot. ECF No. 28.

On August 13, 2012, Defendants filed a Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion to Strike for: (1) lack of subject matter jurisdiction as required by Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) failure to plead claims grounded in fraud with sufficient particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss Pl.'s FAC ("Mot."), ECF No. 29. In addition, Defendants filed a Request for Judicial Notice in Support of the Motion to Dismiss. ECF Nos. 32, 33. Brazil filed an opposition to the motion to dismiss, *see* Pl.'s Opp. to Defs.' Mot. to Dismiss FAC ("Opp'n"), ECF No. 35, to which Defendants filed a reply, *see* Defs.' Reply Supp. Mot. to Dismiss P1.'s FAC ("Reply"), ECF No. 37. Brazil also filed four notices of new case law relevant to Defendants' Motion to Dismiss, *see* ECF Nos. 42, 49, 50, 51, and Defendants filed four similar notices, ECF No. 41, 45, 57, and 58.

## II. LEGAL STANDARDS

**A. Rule 12(b)(1)**

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101-02 (1998). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**B. Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

**C. Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

**D. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III. DISCUSSION

Defendants seek to dismiss Brazil's FAC for four reasons: (1) Brazil's claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"); (2) Brazil cannot show injury in fact in order to satisfy Article III's "case or controversy" requirement; (3) Brazil's claims are neither plausible nor sufficiently particular; and (4) none of Brazil's claims state a viable cause of action. *See* Mot. at i. In the alternative, Defendants request that the Court strike all allegations concerning statements that Brazil did not see and products that Brazil did not buy. Mot. at 16. For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss the FAC. The Court DENIES as moot Defendants' Motion to Strike.

### A. Preemption

Defendants contend that all of Brazil's claims are preempted because there is no private right of action to enforce regulations promulgated by the Food and Drug Administration ("FDA"). Mot. at 4-7. In addition, Defendants argue that the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq.*, cannot be used to enforce FDA regulations, and Brazil's attempts to impose requirements "not identical" to FDA regulations are expressly preempted. *See* Mot. at 7-11. Even if the Court does not find that Brazil's claims are preempted, Defendants urge the Court to abstain and either dismiss or stay the case under the doctrine of primary jurisdiction. Mot. at 11-12.

The Court finds that the FDA regulations do not preempt Brazil's state law claims, brought pursuant to the Sherman Law, that impose requirements identical to those imposed by the FDCA.

In addition, the Court declines to abstain and dismiss or stay this case under the doctrine of primary jurisdiction.

**1. Federal and Statutory Framework**

The FDCA, codified at 21 U.S.C. §§ 301 *et. seq*., "gives the FDA the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (citing 21 C.F.R. § 393(b)(2)(A)). Section 331 expressly prohibits the misbranding of food in interstate commerce, 21 U.S.C. § 331 (a)-(c), (k), and Section 344 sets forth conditions under which food is considered "misbranded," *see* 21 U.S.C. § 343. In general, a food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).

In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act of 1990 ("NLEA") to include additional food labeling requirements. Pub. L. No. 101-535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (stating that the purpose behind the NLEA was "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.").

In addition, through the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of this state." Cal. Health & Safety Code § 110100. California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See, e.g.*, Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."); Cal. Health & Safety Code § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in . . . 21 U.S.C. § 343(q)"); Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in . . . 21 U.S.C. § 343(r)").

United States District Court
For the Northern District of California

All of the alleged misbranding violations at issue in this case are covered by FDA regulations and policies, including regulations for "nutrient content claims," 21 C.F.R. § 101.13, "antioxidant" claims, 21 C.F.R. § 101.54(g); "fresh" claims, 21 C.F.R. § 101.95; "sugar free" and "sugarless" claims, 21 C.F.R. § 101.60(c); and "health" claims, 21 C.F.R. § 101.14.

**2. Preemption and Private Rights of Action**

Defendants allege that all of Brazil's claims are preempted because "there is no private right of action to enforce FDA regulations." Mot. at 4. The FDCA provides that, in general, "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the *United States*." 21 U.S.C. § 337(a) (emphasis added).[1] Therefore, there is no federal private right of action to enforce the FDCA. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (noting, in the context of the medical device provisions of the FDCA that, due to 21 U.S.C. § 337(a), "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]"). Brazil does not contest this fact.

The real question presented here is whether the FDCA preempts Brazil's suit to enforce *state* food-labeling requirements, brought pursuant to the Sherman Law, that are identical to requirements imposed by the FDCA. Defendants contend that, in addition to the express preemption provided by Section 337(a), Brazil's claims are also subject to implied preemption. *See* Jan. 24, 2013 Hr'g Tr. ("Tr.") 12:21-25, ECF No. 55. Consequently, Defendants argue that Brazil is impermissibly using the Sherman law to "detour around the private enforcement bar." Mot. at 7. The Court disagrees.

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation

[1] The NLEA preemption statute also permits a State to bring proceedings, "in its own name and within its jurisdiction," to enforce certain food-labeling provisions of the FDCA if the State complies with specified procedural requirements. 21 U.S.C. § 337(b).

United States District Court
For the Northern District of California

marks and citations omitted."). While construing a preemption statute "must begin with its text," a court's interpretation of the statute's language "does not occur in a contextual vacuum." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996); *see Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (stating that, even "[i]f a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains.").

When analyzing the scope of a preemption statute, a court's analysis must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Lohr*, 518 U.S. at 485 (internal quotation marks and citations omitted). This approach "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id*. Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming 'th[is] starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)).

There is a strong presumption against federal preemption in this case as the regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.") (citing *Plumley v. Massachusetts*, 155. U.S. 461, 472 (1894), which similarly states, "[i]f there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which . . . it is the protection of the people against fraud and deception in the sale of food products.").

Nonetheless, in support of its preemption argument, Defendants rely heavily on the Ninth Circuit's recent decision in *Pom Wonderful LLC v. Coca-Cola Company*, 679 F.3d 1170 (9th Cir. 2012). In *Pom Wonderful*, the manufacturer of a pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coca-Cola's competing product, "Pomegranate

Blueberry," was false both in name and label because it consisted of 99.4% apple and grape juice. As in the instant case, the *Pom Wonderful* plaintiff also brought state law claims under the Sherman Law, the UCL, and the FAL, alleging that those state laws incorporate the identical FDA labeling standards and prohibitions. *Id*. at 1174. The *Pom Wonderful* Court ultimately held that, based on the "particular circumstances of th[e] case," "the FDCA and its regulations bar pursuit of both the name and labeling aspects of [plaintiff's] Lanham Act claim." *Id*. at 1176 (citing with approval *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 922 (9th Cir. 2010)).

The Ninth Circuit based its *Pom Wonderful* decision, in part, on the fact that the FDCA and the Lanham Act—both broad federal statutes—may at times conflict. *Id*. at 1175. Consequently, the Ninth Circuit observed that, to "try to give as much effect to both statutes as possible . . . courts have focused on Congress's decision to entrust to the FDA the task of interpreting and enforcing the FDCA." *Id*. (internal quotation marks and citations omitted). Allowing a plaintiff to sue under the Lanham Act to enforce the FDCA or its regulations would, as the Ninth Circuit reasoned, "undermine Congress's decision to limit enforcement of the FDCA to the federal government." *Pom Wonderful LLC*, 679 F.3d at 1176. Defendants argue that this rationale applies with equal force to this case, and therefore, based on a theory of implied preemption, Brazil is precluded from bringing a private suit based on claims that "piggyback alleged violations of FDA regulations." Mot. at 5; *see also* Tr. at 13:3-11.

The Court is not persuaded that *Pom Wonderful* stands for the sweeping proposition Defendants set forth. First, the Court in *Pom Wonderful* limited its ruling to the federal Lanham Act and explicitly declined to address whether plaintiff's state law claims were also preempted. *See Pom Wonderful LLC*, 679 F.3d at 1179 (vacating the summary judgment to the extent it ruled that plaintiff lacked statutory standing on its UCL and FAL claims and "remand[ing] so that the district court can rule on the state claims). Consequently, the Ninth Circuit did not specifically address the impact of the FDCA on states' historic power to protect its people against fraud and deception in the sale of food products. *But see Florida Lime & Avocado Growers*, 373 U.S. at 132. Nor did it grapple with the presumption that Congress did not intend to supplant state law. *Cf. Stengel*, 704 F.3d at 1227-28. Thus, the Court finds that *Pom Wonderful* is not binding

authority. *See Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 WL 2563857, *7 n. 3 (N.D. Cal. June 28, 2012) ("The Ninth Circuit's preemption ruling [in *Pom Wonderful*] was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."); *accord Khasin v. Hershey Co.*, No. 12-01862, 2012 WL 5471153, *5 (N.D. Cal. Nov. 9, 2012).

Second, there is no indication from the text of the NLEA or its legislative history that Congress "intended a sweeping preemption of private actions predicated on requirements contained in state laws." *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090. As noted by the California Supreme Court when addressing this issue in the *In re Farm Raised Salmon Cases*, Representative Henry Waxman—who introduced the NLEA in the House of Representatives—stated specifically that the NLEA "recognizes the importance of the State role: by allowing *States* to adopt standards that are identical to the Federal standard, which may be enforced in State court; by allowing the *States* to enforce the Federal Standard in Federal court." 42 Cal. 4th at 1090 (quoting Remarks of Rep. Waxman, 136 Cong. Rec. 1539 (daily ed. July 30, 1990)). Based on this comment, the California Supreme Court opined that "allow[ing] states to enforce the federal requirements in federal court, but not discussing who would be allowed to enforce the identical state requirements . . . suggest[s] that Congress did not intend to alter the status quo, *i.e.*, states may choose to permit their residents to file unfair competition or other claims based on the violation of state laws." *Id.*; *see also id.* (noting that "Congressional silence on this point is all the more strange in light of Congress's presumed awareness that virtually every state in the nation permits . . . nongovernmental parties to enforce state . . . laws of general applicability prohibiting deceptive or unfair acts and practices in the marketplace.") (internal quotation marks and citation omitted). As the Supreme Court noted in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141 (1989), "[t]he case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Id.* at 166-167 (internal quotation marks omitted).

That Congress did not intend to preclude private enforcement actions of state laws that mirror the FDCA is also supported by the fact that Section 6(c)(1) of the NLEA states that the

preemptive effect of the NLEA "sweep[s] no further than the plain language of the statute itself." Pub. L. No. 101–535, § 6(c)(1) (Nov. 8, 1990), 104 Stat. 2364, amended Aug. 17, 1991, Pub.L. 102-108, § 2(b), 105 Stat. 549.

Furthermore, finding that states are not prevented from pursuing private actions to enforce state requirements that mirror FDCA requirements corresponds with the Supreme Court and the Ninth Circuit's interpretation of similar preemption provisions in the context of the Medical Device Amendments "MDA" to the FDCA, 21U.S.C. §§ 360c *et seq*. In *Medtronic, Inc. v. Lohr*, the Supreme Court interpreted the MDA's express preemption provision which prohibits States from establishing "any requirement . . . different from, or in addition to" FDCA labeling and design requirements for medical devices. 21 U.S.C. § 360k. The Supreme Court held that Section 360k does not preempt "State or local requirements that are equal to, or *substantially identical* to, requirements imposed by or under the [FDCA]." 518 U.S. at 496-97.[2] The Supreme Court affirmed this understanding of Section 360k in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), when it held that "[s]tate requirements are preempted under the [Medical Device Amendments] only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law." *Id*. at 330 (citing 21 § 360k(a)(1)). Thus, the Supreme Court concluded that Section 360k "does not prevent states from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal

---

[2] In *Lohr*, the defendants encouraged the Supreme Court to adopt a position on preemption similar to the one Defendants set forth in this case. The Supreme Court rejected defendant's argument regarding field preemption, stating that it was "not only unpersuasive," but also "implausible." *Lohr*, 518 U.S. at 487. "Under [defendant's] view of the statute, Congress effectively precluded state courts from affording state consumers any protection from injuries resulting from a defective medical device. Moreover, because there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied private right of action, Congress would have barred most, if not all, relief for person's injured by defective medical devices. [Defendant's] construction of § 360k would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation." *Id*. Justice Breyer concurred on this point, writing, "[I cannot] find any indication that either Congress or the FDA intended the relevant FDA regulations to occupy entirely any relevant field." *Id*. at 508 (Breyer, J., concurring in part and concurring in the judgment). This Court similarly finds it doubtful that, in attempting to strengthen and unify nutrition labeling on food, Congress would have intended to eliminate all judicial recourse for those harmed by false and misleading nutritional labels.

requirements." *Id*. Notably, in *Stengel v. Medtronic*, which the Ninth Circuit heard *en banc* after *Pom Wonderful*, the Court held that state law claims that parallel federal law duties under the MDA of the FDCA are not preempted "either expressly or impliedly" by the FDCA. *Stengel*, 704 F.3d at 1233. In so doing, the Ninth Circuit's reasoning reiterated the strong "presumption against preemption of state laws that operate in traditional state domains." *Id.* at 1227.

Given that (1) regulating the proper marketing of food has traditionally been within states' historic police powers, and (2) there is no clear indication from Congress that, in the process of attempting to strengthen and unify nutrition food labeling, it intended to preclude states from affording state consumers protection from misbranded food products, the Court is not persuaded that Defendants have overcome the presumption against preemption. *See Lohr*, 518 U.S. at 485; *see Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010). Accordingly, the Court DENIES Defendants' Motion to Dismiss on this basis.

**3. Preemption Based on Claims that are "Not Identical" to Federal Requirements**

Defendants contend that Brazil is also attempting to impose requirements that differ from or are in addition to FDA regulations, which is expressly preempted. Mot. at 8. Pursuant to 21 U.S.C § 343-1(a), "no state . . . may directly or indirectly establish . . . any requirement . . . made in the . . . labeling of food that is not identical to" certain FDA requirements, such as 21 U.S.C. § 343(q), which applies to nutrition information, and 21 U.S.C. § 343(r), which applies to "Nutrition levels and health-related claims." *See Wyeth v. Levine*, 555 U.S. 555, 576 (2009) (stating that "an agency regulation with the force of law can pre-empt conflicting state requirements"). Brazil contends that he "does not seek to enforce any state claim that would impose a standard of conduct that is not identical to that imposed by the FDCA." Opp'n at 9. He only seeks to enforce the Sherman Law, which has adopted requirements identical to FDA regulations. Opp'n at 8.

For the purpose of this motion, Defendants have not identified the specific discrepancies that they believe exist between the FDA regulations and the requirements that Brazil is allegedly seeking to impose. Instead, Defendants simply provide "examples" which they believe to be illustrative, contending that Brazil's "kitchen sink" approach makes it "[im]possible to rebut each

of his errors" within the confines of this motion. Mot. at 9, n.10. The Court declines to engage in a searching inquiry of all potential discrepancies on its own. *See generally United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

In addition, Defendants contend that, "[f]or purposes of this motion, this Court is not being asked to decide" whether Defendants' products actually fall within FDA regulations and guidelines." Mot. at 7. Rather, Defendants contend that "it is enough that this Court recognize that to decide these questions the Court must necessarily 'originally interpret' FDA rules." *Id*. However, Defendants concede that "FDA has established requirements applicable to all of the alleged violations Plaintiff asserts." Mot. at 9. In fact, Defendants claim that "there is no label element Plaintiff challenges that is *not* addressed by FDA regulation or policy." Mot. at 9 (emphasis in original). Therefore, the Court declines to make a determination about whether any of Brazil's allegations conflict with requirements imposed by FDA regulations. Defendants' Motion to Dismiss on this basis is DENIED.

**4. Primary Jurisdiction**

Defendants argue that, even if the Court finds that Brazil's claims are not preempted, the Court should abstain and either dismiss or stay the case under the doctrine of primary jurisdiction. The Court declines to do either.

The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (amended). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the

agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark*, 523 F.3d at 1114.

Here, Defendants contend that the FDA has "regulatory authority pursuant to a statute that subjects an industry or activity to comprehensive regulatory authority," and that "resolving the issue 'requires expertise of uniformity in administration.'" Mot. at 12 (citing *Syntek Semiconductor Co.*, 307 F.3d at 780-81). Defendants urge the Court to stay or dismiss the case and to "let FDA do its job," as opposed to "creat[ing] a patchwork of court-made labeling law." Mot. at 12.

In support of its position, Defendants cite to Judge Hamilton's recent decision in *Astiana v. Hain Celestial Grp.* ("*Hain Celestial*"), --- F.Supp.2d ---, 2012 WL 5873585 (N.D. Cal. 2012), another misbranding case involving cosmetic products with labels bearing the terms "all natural," "pure natural," and "pure, natural, and organic." Relying in part on the reasoning in *Pom Wonderful*, Judge Hamilton held that, "[i]n the absence of any FDA rules or regulations (or even informal policy statements) regarding the use of the word 'natural' on *cosmetics* labels, the court declines to make any independent determination of whether defendants' use of 'natural' was false or misleading. Doing so would 'risk undercutting the FDA's expert judgments and authority.'" *Id.* at *3 (citing *Pom Wonderful LLC*, 679 F.3d at 1177) (emphasis added).

However, *Hain Celestial* is inapposite because the FDA has established requirements applicable to all of the alleged violations Brazil asserts. In fact, as noted previously, Defendants concede, "there is no label element Plaintiff challenges that is *not* addressed by FDA regulation or policy." Mot. at 9 (emphasis in original). Therefore, in this case there is no such risk of "undercutting the FDA's judgment and authority" by virtue of making independent determinations on issues upon which there are no "FDA rules or regulations (or even informal policy statements)." *Cf. Hain Celestial*, --- F.Supp.2d ---, 2012 WL 5873585, *3.

Moreover, this case does not raise a "particularly complicated issue that Congress has committed to a regulatory agency." *Brown*, 277 F.3d at 1172. As with so many of the other food misbranding cases filed recently within this district, Brazil's case is "far less about science than it is about whether a label is misleading." *Jones v. ConAgra Foods, Inc.*, --- F. Supp. 2d.---, 2012

WL 6569393, *7 (N.D. Cal. Dec. 17, 2012). Furthermore, "'every day courts decide whether conduct is misleading,'" and the "'reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'" *Id.* *7 (quoting *Lockwood*, 597 F. Supp. 2d at 1035, and *Delacruz v. CytoSport*, No. 11-3532, 2012 WL 2563857, at *10 (N.D. Cal. June 28, 2012)); *see also Chacanaca v. The Quaker Oats Co.*, 752 F.Supp.2d 1111, 1124 (N.D. Cal. 2010) (stating that plaintiffs advance a "relatively straightforward claim: they assert that defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer. This is a question courts are well-equipped to handle.").

Thus, because this case does not "require[] resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," the Court does not find it necessary to stay this case based on the doctrine of primary jurisdiction. *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002). As the Ninth Circuit noted in *MCI WorldCom Network Services*, the doctrine of primary jurisdiction "does *not* require that all claims within an agency's purview be decided by the agency." *Id.* (emphasis added). "Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.*

The Court also does not find it necessary to "abstain and dismiss" this case. Defendants cite to *In re Paxil Litig*, 218 F.R.D. 242, 248 (C.D. Cal. 2003), for the proposition that Courts may withhold relief, such as class certification, if awarding it would entangle them in a complex area that is already subject to oversight by an agency having day-to-day expertise and supervisory responsibilities. Specifically, in *In re Paxil Litig.*, the Court declined to certify the class because it appeared to be an attempt to "use the court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety." 218 F.R.D. at 248. However, Brazil is not seeking to "second guess" a decision by the FDA. Brazil's claims can be resolved entirely based on what the FDA regulations already require. Consequently, there is no reason for the Court to abstain and dismiss this case.

**B. Article III "Injury in Fact"**

Defendants also argue that Brazil lacks Article III standing as he cannot prove that he suffered an "injury in fact." Mot. at 12 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Court disagrees.

An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *See Clapper v. Amnesty Int'l*, --- U.S. ---, 133 S.Ct. 1138, 1146 (2013) ("One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy Article III standing, a plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) wherein injury is fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, --- U.S. ---, 130 S.Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (same); *Lujan*, 504 U.S. at 561-62 (same). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendants argue that Brazil cannot prove that he suffered an "injury in fact" because his alleged injury arises from the allegation that the products he purchased are "legally worthless." Mot. at 13 (citing to FAC ¶¶ 80, 92, 105, 126, 128, 138, 148, 171, 172, 216, 226, 236, 245, 254, 276, 286, 297). Defendants characterize this as "a lawyer's musings," rather than a "real harm." *But see Lanovaz v. Twinings North America, Inc.*, No. 12-02646, 2013 WL 675929, *6 (N.D. Cal. Feb. 25, 2013) (holding, in the context of a similar putative class action lawsuit asserting claims based on defendant's alleged misbranding of green tea, that defendant's argument regarding injury based on "legally worthless" products "misses the mark" because plaintiff "would not have *purchased* the product if she had known that the label was unlawful.").

Defendants also contend that Brazil does not satisfy the "injury in fact" requirement as he does not allege any physical harm caused by eating the fruit. In support of this argument, Defendants cite to *Boysen v. Walgreen Co.*, No. 11-CV-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012), in which Judge Illston dismissed for lack of Article III standing a complaint brought by a purchaser of fruit juice who claimed injury attributable to trace amounts of lead and arsenic in the

United States District Court
For the Northern District of California

products. Specifically, Judge Illston dismissed the complaint because "[plaintiff] does not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice . . . plaintiff only alleges that he purchased and consumed the fruit juices, but that the levels of lead and arsenic in defendant's product were unsatisfactory to him." *Id.* *7.

In opposition, Brazil contends that his allegations are clearly sufficient to plead standing. Opp'n at 12. Specifically, Brazil alleges economic injury based on the following: (1) purchasing products he would not have otherwise purchased had he known the truth about Defendants' "unlawful labeling practices and actions," *see* FAC ¶¶77, 91, 104, 125, and 127; and (2) paying an "unwarranted premium" due to Defendants' false and misleading labels, *see* FAC ¶¶ 80, 92, 105, 128, 137, 170, and 216. Notably, unlike in *Boysen*, Brazil does allege that, had defendants' products been differently labeled, he would have purchased different fruit products. *See, e.g.*, FAC ¶ 91.

Essentially, Brazil alleges that he and class members "spent money that, absent defendants' actions, they would not have spent," which constitutes "a quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011); *see also Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing"); *cf. Pirozzi v. Apple Inc.*, --- F. Supp. 2d. ---, 2012 WL 6652453, *4 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.").

Notably, several other courts within this district have found similar allegations sufficient for the purposes of alleging "injury in fact." *See, e.g.*, *Chacanaca* , 752 F. Supp. 2d at 1125 (finding injury in fact based on "the *purchase* of food products that contain an ingredient the plaintiffs find objectionable" and which they otherwise "would not have purchased"); *Jones*, --- F. Supp. 2d. ---, 2012 WL 6569393, *10 (finding that plaintiffs sufficiently alleged injury, and thus have standing, because they "sufficiently alleged that they paid an 'unwarranted premium' for the allegedly mislabeled products" and "Plaintiffs alleged that had they been aware that the labeling was inaccurate, they would not have purchased Defendant's products.") (internal case citations omitted).

This Court sees no reason to stray from the conclusions reached by other courts in this district in the context of similar misbranding claims. As Judge Hamilton stated in *Astiana v. Ben & Jerry's Homemade, Inc.*, "[i]t may ultimately prove true, as defendants claim, that plaintiffs have no actionable claims. However, that is not the same as finding no standing." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *5 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's Homemade, Inc.*").

Assuming all of the factual allegations alleged in the FAC to be true, the Court must accept that Brazil suffered a concrete and particularized injury based on the fact that he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products. Accordingly, the Court finds that Brazil has sufficiently alleged injury in fact in order to satisfy the requirements for Article III standing.

**C. Plausibility and Particularity**

Defendants allege that, "[e]ven if Plaintiff could survive preemption and could show Article III 'injury in fact,' all his claims would run aground on implausibility and failure to plead with particularity." Mot. at 17. While the Court does not find that Brazil's claims are so implausible as to warrant granting Defendants' Motion to Dismiss on this basis, the Court does find that a number of Brazil's claims lack sufficient particularity. Consequently, pursuant to Rule 9(b), the Court GRANTS without prejudice Defendants' Motion to Dismiss Brazil's UCL, FAL, and CLRA claims that are grounded in fraud.[3]

**1. Plausibility**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that Rule 8 requires that a complaint's well-pleaded allegations, if taken as true, must "*plausibly* give rise to an entitlement to relief." *Iqbal*, 556 U.S.

[3] The Court separately addresses Brazil's causes of action based on the Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, and Restitution based on Unjust Enrichment. *See* Part III.D.

at 679 (emphasis added). Determining the plausibility of allegations is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The standard for California's UCL, FAL, and CLRA is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir. 2008). Here, Defendants essentially contend that Brazil's claims are facially implausible because no reasonable customer is likely to be deceived by Defendants' labeling of its products. *See* Mot. at 17. In support of their argument, Defendants submit a request for judicial notice with seven exhibits, four of which are packaging labels for Defendants' products.[4]

While the Court has doubts about the ultimate viability of some of Brazil's claims, the Court recognizes that "[t]he plausibility standard is not akin to a probability requirement." *Iqbal,* 556 U.S. at 678. Moreover, whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the pleadings. *See Williams*, 552 F.3d at 938-940; *see Colucci v. ZonePerfect Nutrition Co*., No. 12-2907, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012); *see also Khasin*, 2012 WL 5471153, *7 (N.D. Cal. Nov. 9, 2012) (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion"). As stated by Judge Conti in *Collucci*, "the Court is not inclined to assume the role of fact-finder in the guise of determining plausibility." *Colucci*, 12-2907, 2012 WL 6737800, *8. The Court DENIES Defendants' Motion to Dismiss on this basis.

**2. Particularity**

[4] On a motion to dismiss, a court may only consider the pleadings and matters of public record subject to judicial notice. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Therefore, a court may take judicial notice of a fact that is "not subject to reasonable dispute" because the fact is "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b). The Court GRANTS Defendants' Request for Judicial Notice as the Court finds that all of the exhibits are either "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*.

Defendants also argue that Brazil does not meet the more stringent requirements of Rule 9(b). Brazil's second, third, fourth, fifth, and sixth causes of action sound in fraud and are therefore all subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."). These causes of action are: (2) violation of the UCL for unfair business act and practices; (3) violation of the UCL for fraudulent business acts and practices; (4) violation of the FAL for misleading and deceptive advertising; (5) violation of the FAL for untrue advertising; and (6) violation of the CLRA. Brazil's first cause of action alleges violation of the UCL for unlawful business acts and practices that are predicated on the same course of conduct as his other UCL, FAL, and CLRA claims. *See* FAC ¶¶ 213, 214, and 215. The Court finds that this claim is also subject to the heightened pleading standard because the crux of Brazil's "unlawful" UCL claim is premised on a uniform course of fraudulent conduct. *See, e.g.*, FAC ¶ 57 (alleging that Dole has "engaged in a series of unlawful schemes" and "unlawful practices . . . in furtherance of these schemes."); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (stating that, when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . he claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)").

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124, as well as the circumstances indicating fraudulent conduct, *Vess*, 317 F.3d at 1106. Brazil argues that he has satisfied the Rule 9(b) requirements. *See* Opp'n at 21. While the Court agrees that Brazil has sufficiently alleged the "who" and "when" of the charged misconduct for purposes of a motion to dismiss, the Court finds the rest of Brazil's averments fail to satisfy Rule 9(b).

Despite spanning sixty-one pages, Brazil's FAC provides little more than a long summary of the FDCA and its food labeling regulations, a formulaic recitation of how these regulations apply to Defendants' products, and conclusory allegations regarding Defendants' "unlawfulness." *But see Iqbal*, 556 U.S. at 678 ("a complaint [does not] suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557); *Kearns*, 567 F.3d at 1124 ("A party alleging fraud must set forth *more* than the neutral facts necessary to identify the transaction.") (internal quotation marks and citation omitted).

First, the FAC does not state which Dole products are at issue in this case. Instead, the FAC makes general references to Defendants' misbranded labels on a "number" of their "food products." *See, e.g.*, FAC ¶ 53. Although Brazil alleges that he purchased seven fruit-related products, FAC ¶ 186, the FAC also appears to allege violations based on misbranding of products that are not necessarily similar, such as Dole vegetables, *see* FAC ¶ 135, and products that are otherwise unidentifiable, such as Dole's "other food products," *see* FAC ¶ 85. Nevertheless, the FAC claims, without factual support, that "the violations and misrepresentations are similar across product labels and product lines." *Id.* ¶16. At times the FAC even refers to products that are not at issue in this case, such as tea. *See, e.g.*, FAC ¶ 136. Brazil's claims are difficult to decipher and appear to include claims from similar lawsuits filed in this district.

Second, the FAC is filled with vague assertions that, despite general references to multiple categories of state and federal regulations, leave unclear the precise nature of any alleged violation. Finally, the FAC also does not clearly indicate the content of the labels upon which Brazil allegedly relied when making his purchases or the advertisements and website statements that he saw and supposedly found misleading. Although Brazil alleges that "Defendants' misrepresentations are part of an extensive labeling, advertising, and marketing campaign," FAC ¶ 194, he does not allege that he personally saw and/or relied on any misleading advertisements or website statements in particular. Brazil is correct that, "where a 'plaintiff alleges exposure to a long-term advertising campaign . . . [he] is not required to plead with an *unrealistic* degree of specificity that . . . [he] relied on particular advertisements or statements." Opp'n at 15 (citing *In re Tobacco II Cases*, 46 Cal. 4th at 328) (emphasis added). However, Brazil has not supported his allegations with even a minimal degree of factual specificity.

Thus, the FAC does not "give defendants notice of the particular misconduct which is alleged to constitute the fraud charge[s]." *Semegen*, 780 F.2d at 731. Brazil has failed to meet the heightened pleading standard of Rule 9(b), and the Court DISMISSES without prejudice Brazil's

United States District Court
For the Northern District of California

claims based on violations of the UCL, FAL, and CLRA. In light of this ruling, the Court DENIES Defendants' Motion to Strike as moot.

**D. Rule 12(b)(6)**

Finally, Defendants argue that, pursuant to Rule 12(b)(6), all of Brazil's causes of action must be dismissed due to failure to state a claim upon which relief may be granted.

**1. UCL, FAL, and CLRA Claims**

In light of the Court's ruling in Parts III.A., III.B., and III.C. of this Order, the Court declines to address Defendants' additional arguments that Brazil's FAC should be dismissed pursuant to Rule 12(b)(6) because Brazil: (1) lacks standing to assert a claim under the UCL and FAL; (2) has failed to plead actual reliance or causation; and (3) Plaintiff's claims under the unlawful and unfairness prongs fail because they cannot be based on alleged FDCA violations as the "FDA maintains exclusive enforcement authority, and the FDCA precludes any private right of action." Mot at 23.

**2. Song-Beverly Consumer Warranty Act**

Defendants contend that Brazil has not stated a claim under the Song-Beverly Consumer Warranty Act. The Court agrees, and DISMISSES this claim with prejudice.

The Song-Beverly Consumer Warranty Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Under the Act, a "consumer good" is defined as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, *except for* clothing and *consumables*." Cal. Civ. Code § 1791(a) (emphasis added). Brazil does not dispute that all of the products at issue in this case are consumables. Therefore, all of Defendants' products are excluded from the Act. Because Brazil has not, and cannot, allege a breach of the Song-Beverly Consumer Warranty Act, the Court GRANTS Defendants' Motion to Dismiss this cause of action with prejudice.

**3. Magnuson-Moss Warranty Act**

In addition, Defendants seek to dismiss Brazil's claim under the Magnuson-Moss Warranty Act ("MMWA"). The Court finds that Brazil has failed to state a viable cause of action under the

MMWA because: (1) Brazil's allegations are insufficient to confer subject matter jurisdiction, and (2) the allegedly misbranded labels do not constitute "written warranties," as defined by the Act. Accordingly, the Court GRANTS Defendants' Motion to Dismiss the MMWA claim with prejudice.

The federal MMWA creates a civil cause of action for consumers to enforce the terms of implied or express warranties. *See* 15 U.S.C. § 2310(d). In order to bring a cognizable claim under the MMWA, the amount in controversy of an individual claim must be greater or equal to $25, and the number of named plaintiffs must be more than one hundred. 15 U.S.C. § 2310(d)(3)(C). In addition, the MMWA applies only to products that cost more than five dollars. 15 U.S.C. § 2302(e). As there is only one named plaintiff in this action, and Brazil fails to allege that the products at issue cost more than five dollars, the Court lacks subject matter jurisdiction to review this claim. *But see Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012) (finding that "where the party invoking federal jurisdiction is able to meet his or her burden of proving jurisdiction under CAFA, the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson-Moss Warranty Act"). Accordingly, the Court dismisses Brazil's MMWA claim with prejudice.

Brazil's MMWA claim also fails because the allegedly misbranded labels do not constitute warranties, and thus are not covered by the act. Under the MMWA, a "written warranty" means a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material . . . and affirms or promises that such material . . . is *defect free* or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(a).

"The word 'defect' is not defined within the MMWA." *Larsen v. Trader Joe's Co.*, No. 11-5188, 2012 WL 5458396, *3 (N.D. Cal. June 14, 2012) ("*Larsen*"). However, "[t]he Oxford English Dictionary defines 'defect' as 'the fact of being wanting or falling short; a blemish [or] flaw.'" *Id*. In *Larsen*, a case involving the marketing and sale of "All Natural" and "100% Natural" products which, plaintiffs alleged, in fact contained one or more synthetic and/or non-natural ingredients, Judge Illston found that defendants' products did not qualify as "defects"

because "[t]he synthetic ingredients at issue were presumably knowingly and purposely added or used in the process of making these food products." *Id*. Similarly, in *Littlehale v. The Hain Celestial Group, Inc.*, No. 11–6342, 2012 WL 5458400 (N.D. Cal. July 2, 2012), Judge Hamilton considered and rejected the proposition that statements such as "Pure Natural" and "All Natural" constitute affirmations or promises that the products are defect free. Instead, Judge Hamilton found that "the statements are mere product descriptions, and do not fall within the Magnuson Moss Warranty Act's definition of 'warranty.' To accept plaintiffs' argument would be to transform most, if not all, product descriptions into warranties against a defect, and plaintiffs have not articulated any limiting principle to convince the court otherwise." Other courts within this district have similarly concluded that "product descriptions do not constitute warranties against a product defect" for the purposes of a MMWA claims. *See, e.g.*, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. 11-2910, 11-3164, 2012 WL 2990766, * 3 (N.D. Cal. July 20, 2012); *Jones*, --- F. Supp. 2d ---, 2012 WL 6569393, *12. The Court agrees with the reasoning of the other courts in this district that have determined that "misbranded" labels, such as the ones at issue here, constitute mere product descriptions rather than promises of defect-free products or promises. Thus, the Court dismisses Brazil's MMWA claim with prejudice on this basis as well.[5]

**4. Unjust Enrichment**

Defendants' final argument is that Brazil's claim for restitution based on "unjust enrichment/quasi contract" must be dismissed because California does not recognize "unjust enrichment" as a separate cause of action. Mot. at 25. The Court agrees.

Despite some inconsistency in the law, several recent decisions by the California Court of Appeals have held that "[u]njust enrichment is not a cause of action, just a restitution claim." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). In light of this

[5] Despite the fact that the Court has dismissed Brazil's only federal claim, the Court finds that it retains jurisdiction due to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Both parties agree. *See* Tr. 11:6-22.

United States District Court
For the Northern District of California

recent persuasive authority, this Court has previously determined that there is no cause of action for unjust enrichment under California law. *See, e.g., Low v. LinkedIn Corp.*, --- F. Supp. 2d ---, 2012 WL 2873847, *15 (N.D. Cal. 2012); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011); *accord Ferrington v. McAfee, Inc.*, No. 10-01455, 2010 WL 3910169, at *17 (N.D. Cal. Oct. 5, 2010) (citing *Durell*, 183 Cal.App.4th at 1370)). Other federal courts have similarly determined that there is no independent cause of action for unjust enrichment. *See, e.g.*, *see also Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a stand-alone cause of action); *LaCourt v. Specific Media, Inc.*, No. 10-1256, 2011 WL 1661532, *8 (C.D. Cal. 2011) (dismissing unjust enrichment claim because it "cannot serve as an independent cause of action"); *In re DirecTV Early Cancellation Litig.*, 738 F.Supp.2d 1062, 1091–92 (C.D. Cal. 2010) (same).

In addition, restitution is already a remedy for Brazil's UCL claim. *See Pfizer Inc. v.Super. Ct.*, 182 Cal.App. 4th 622, 631 (2010); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App. 4th 663, 694 (2006). Therefore, any claim for restitution that Brazil could assert is superfluous. *See In re Apple and AT & T iPad Unlimited Data Plan Litig.*, c, 1077 (N.D. Cal. 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims.") (citing cases).

Accordingly, the Court thus GRANTS Defendants' Motion to Dismiss Brazil's claim for Restitution Based on Unjust Enrichment/Quasi Contract with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES without prejudice Brazil's UCL, FAL, and CLRA claims (causes of action one through six). The Court DISMISSES with prejudice Brazil's seventh, eighth and ninth causes of action that are based on the Song-Beverly Act, the Manguson-Moss Warranty Act, and Unjust Enrichment. The Court DENIES as moot Defendants' Motion to Strike.

**United States District Court**
For the Northern District of California

Should Brazil elect to file a Second Amended Complaint curing the deficiencies discussed herein, he shall do so within 21 days of the date of this Order. Failure to meet the 21 day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Brazil may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 25, 2013

Lucy H. Koh
LUCY H. KOH
United States District Judge