UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHAD BRAZIL, an individual, on his own behalf and on behalf of all others similarly situated, | ) ) ) | Case No.: 12-CV-01831-LHK |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MOTION TO STRIKE |
| v. | ) ) | |
| DOLE FOOD COMPANY, INC., DOLE PACKAGED FOODS, LLC, | ) ) | |
| Defendants. | ) ) ) ) | |

Before the Court is Dole Food Company and Dole Packaged Foods, LLC's (collectively, "Dole" or "Defendants") Motion to Dismiss and Motion to Strike Plaintiff Chad Brazil's ("Brazil") Second Amended Complaint ("SAC"). ECF No. 62. Brazil opposes the Motion, ECF No. 68, and Defendants replied, ECF No. 71. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss and Motion to Strike.

**I.     BACKGROUND**

### A.      Factual Allegations

Defendants are "leading producers of retail food products" who sell their products "through grocery and other retail stores throughout the United States." SAC ¶ 18. Defendant Dole Food Company is a Delaware corporation while Defendant Dole Packaged Foods, LLC, is a California limited liability corporation. SAC ¶¶ 16-17. Both Defendants have their principal place of business in Westlake Village, California. *Id.* Brazil alleges that "[a]ll of the misconduct alleged [in the SAC] was contrived in, implemented in, and has a shared nexus with California." SAC ¶ 19.

Brazil is a California consumer who "cares about the nutritional content of food and seeks to maintain a healthy diet." SAC ¶¶ 15, 193. From April 2008 to the present, Brazil has spent over $25.00 on Defendant's food products, which he contends are "misbranded" in violation of federal and state law. SAC ¶¶ 5, 193. Specifically, Brazil alleges that he purchased the following eight food products: (1) Dole Frozen Wildly Nutritious Signature Blends—Mixed Berries (12 oz. Bag); (2) Dole Frozen Wildly Nutritious Signature Blends—Mixed Fruit (12 oz. bag); (3) Dole Frozen Blueberries (12 oz. bag); (4) Dole Frozen Blueberries (3 oz. plastic cups); (5) Dole Mixed Fruit in 100% Fruit Juice (4 oz. cups); (6) Dole Fruit Smoothie Shakers—Strawberry Banana (4 oz.); (7) Dole Mixed Fruit in Cherry Gel (4.3 oz. plastic cups); (8) Dole Tropical Fruit in Light Syrup & Passion Fruit Juice (15.25 oz. can). SAC ¶ 2. Brazil refers to these products collectively as the "Purchased Products." *Id.* The SAC also alleges claims based on thirty additional products that Brazil did not purchase, but which are, Brazil claims, substantially similar to those that he did, in that they "(i) make the same label representations . . . as the Purchased Products and (ii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.*" SAC ¶¶ 3-4. Brazil refers to this group of products as the "Substantially Similar Products." SAC ¶ 3.

Brazil alleges that Defendants make numerous representations concerning their products—both on the products' labels and on Defendants' website, the address of which (www.dole.com) appears on many of the products' labels—that are unlawful, as well as false and misleading, under federal and California law. SAC ¶¶ 8-14. Specifically, the SAC alleges that the following types of representations are false and misleading.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

1          **1.     All Natural Claims**

2          Brazil challenges Defendants' claims that certain of their products are "all natural." SAC

3    ¶ 30 (identifying which of the Purchased Products make All Natural Claims); ¶ 201 (identifying

4    which of the Substantially Similar Products make All Natural Claims). According to Brazil,

5    regulations issued by the Food and Drug Administration (FDA) dictate that Defendants may not

6    claim that a product is "all natural," if it contains "unnatural ingredients such as added color, [or]

7    synthetic and artificial substances." SAC ¶ 31; *see also* 21 C.F.R. § 101.22 (setting forth the

8    circumstances under which added colors and artificial flavors must be disclosed on a package's

9    label). Defendants' products are mislabeled, Brazil alleges, because they contain ingredients that

10   preclude the use of the term "natural." SAC ¶ 37-39; *see also* ¶ 125 (label on Dole Frozen Wildly

11   Nutritious Signature Blends—Mixed Fruit unlawfully "uses the phrase 'All Natural Fruit' even

12   though this product contains the following artificial ingredients: ascorbic acid, citric acid, malic

13   acid and added flavors").

14          **2.     Fresh Claims**

15          Brazil next challenges the use of the term "fresh" on various Dole product labels. SAC ¶ 41

16   (identifying which of the Purchased Products make Fresh Claims); ¶ 201 (identifying which of the

17   Substantially Similar Products make Fresh Claims). Under FDA regulations:

18          The term 'fresh,' when used on the label or in labeling of a food in a manner that
             suggests or implies that the food is unprocessed, means that the food is in its raw
19           state and has not been frozen or subjected to any form of thermal processing or any
             other form of preservation. . . .
20
21   21 C.F.R. § 101.95(a); *see also* SAC ¶ 46 (quoting an FDA Compliance Policy Guide, which states

22   that "[t]he term fresh should not be applied to foods which have been subjected to any form of heat

23   or chemical processing"). FDA regulations further require that foods that have undergone

24   particular forms of processing be labeled as "canned" or "pasteurized" if they are packaged and

25   sold in a manner that "suggest[s] or impl[ies] that the article is other than a canned food," as when

26   foods are packaged in glass or plastic instead of metal cans. SAC ¶ 46 (quoting FDA Compliance

27   Policy Guide).

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

**United States District Court**
For the Northern District of California

The SAC asserts that Defendants' product labels violate these federal regulations for two reasons. First, products that bear the term "fresh" have in fact been subject to "thermal processing, freezing, [or] chemical preservation." SAC ¶ 52; *see also* ¶ 169 (Dole Mixed Fruit in Cherry Gel is unlawful and misleading because it uses the term "fresh taste" despite having been subject to various forms of thermal and chemical processing). Second, products packaged in plastic or glass do not disclose that they are "canned," in spite of the fact that they have undergone processing that the FDA considers equivalent to canning. SAC ¶ 48; *see also* ¶¶ 152-154 (Dole Mixed Fruit in 100% Fruit Juice is unlawful and misleading because it is packed in plastic, and yet the "label fails to disclose that chemicals are used as preservatives or that the product is a canned food item").

### 3. Failure to Disclose Preservatives and Artificial Flavors

Brazil contends that certain of Defendants' products fail to disclose that they contain "artificial additives and chemical preservatives and other artificial ingredients." SAC ¶ 56; *see also* SAC ¶ 54 (identifying which of the Purchased Products fail to disclose such ingredients); ¶ 201 (identifying which of the Substantially Similar Products fail to disclose such ingredients). Because federal law requires that a product containing artificial flavors, artificial colors, or chemical preservatives disclose that fact "as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use," 21 C.F.R. § 101.22(c), Brazil asserts that Defendants' failure to disclose the use of preservatives and artificial flavors on their products is unlawful and misleading. SAC ¶¶ 56-58; *see also* ¶ 178 (Dole Tropical Fruit in Light Syrup & Passion Fruit Juice unlawfully "fails to disclose that chemicals are used as preservatives").

### 4. Nutrient Content Claims

Brazil's next set of claims alleges that various of Defendants' products bear unlawful "nutrient content claims." SAC ¶ 62 (identifying which of the Purchased Products make Nutrient Content Claims); ¶ 201 (identifying which of the Substantially Similar Products make Nutrient Content Claims). Pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA") and accompanying regulations, a "nutrient content claim" is a statement made in a food's labeling that "expressly or by implication . . . characterizes the level of any nutrient" present in the food. 21

4

U.S.C. § 343(r)(1)(A); 21 C.F.R. §§ 101.13(b), 101.54. Such claims are authorized only if they comply with federal regulations. For instance, in order to state that a food is a "good source" of, "contains," or "provides" a given nutrient, the food must contain between 10% and 19% of the FDA's recommended daily value for that nutrient. 21 C.F.R. § 101.54(c)(1); *see also* SAC ¶ 70. If the claim is that the food is "rich in," an "excellent source" of, or contains "high" amounts of a given nutrient, then the food must contain 20% or more of the FDA's recommended daily value. 21 C.F.R. § 101.54(b)(1); *see also* SAC ¶ 69.

Brazil alleges that Defendants' Nutrient Content Claims violate these regulations by making Nutrient Content Claims for foods that do not contain nutrient quantities sufficient to merit such claims. *See, e.g.*, SAC ¶ 116 (Dole Frozen Wildly Nutritious Signature Blends—Mixed Berries "is misleading and deceptive because the label uses the phrase[] 'Rich in Nutrients' because there is not more than one nutrient that is capable of qualifying for a claim which must be at least 20% daily value. This phrase states that there are [*sic*] more than one nutrient at sufficient levels in the product.").

### 5.   Antioxidant Claims

Brazil further alleges that Defendants make unlawful claims regarding antioxidants. SAC ¶ 77 (identifying which of the Purchased Products make Antioxidant Claims); ¶ 201 (identifying which of the Substantially Similar Products make Antioxidant Claims). 21 C.F.R. § 101.54(g) provides special requirements for antioxidant nutrient content claims. Under this regulation, a food product label may characterize the level of antioxidants present in the food only if: (1) the nutrient providing the antioxidants has an established recommended daily value; (2) the nutrient has recognized antioxidant activity; (3) the nutrient is present in sufficient quantity to merit a "high," "good source," or "more" claim; and (4) the nutrient providing the antioxidants is identified on the label. 21 C.F.R. § 101.54(g)(1)-(4); *see also* SAC ¶ 79.

Brazil contends that Defendants' Antioxidant Claims fail to meet these requirements because Defendants' product labels fail to name the nutrients that provide the antioxidants and because any antioxidant-containing nutrients found in the products are not present in high enough quantities to warrant a nutrient content claim. SAC ¶ 134 (Dole Frozen Blueberries unlawfully

United States District Court
For the Northern District of California

5

state that they are "Packed with Antioxidants," because "the antioxidants are not named" and "no antioxidants (including Vitamin A and C) are capable of qualifying for a 'good source' claim because the label states: Vitamin A 0% and Vitamin C 6%"). Brazil further contends that there are no established recommended daily values for unspecified "antioxidants" and that unspecified "antioxidants" do not have established antioxidant properties. *Id.* (Dole Frozen Blueberries unlawfully state that they are "packed with Antioxidants," because "there are no reference daily value[s] for the unnamed antioxidants being touted," and "Defendants lack adequate scientific evidence that the claimed antioxidant nutrients participate in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions after they are eaten and absorbed from the gastrointestinal tract").

### 6.      Sugar Free Claims

Brazil's next contention is that Defendants unlawfully label their Dole Mixed Fruit in Cherry Gel product as "sugar free." SAC ¶ 84. Federal law provides that food products bearing the label "sugar free" must: (1) "contain[] less than 0.5 g of sugars . . . per reference amount customarily consumed and per labeled serving"; (2) "contain[] no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk . . . which states 'adds a trivial amount of sugar,' 'adds a negligible amount of sugar,' or 'adds a dietarily insignificant amount of sugar'"; and (3) is either labeled '"low calorie" or "reduced calorie," "bears a relative claim of special dietary usefulness [in compliance with 21 C.F.R. § 101.60(b)(2)-(5)]," or expressly states that it is "not a reduced calorie food," "not a low calorie food," or "not for weight control." 21 C.F.R. § 101.60(c)(1); *see also* SAC ¶¶ 86-89. According to Brazil, Dole Mixed Fruit in Cherry Gel violates this regulation in every respect: not only does the product contain more than .5 grams of sugar per labeled serving and include ingredients customarily understood to contain sugars (namely, fruit) without disclosing that the ingredients add sugar, SAC ¶ 90, but it also fails either to contain sufficiently few calories to qualify as a low calorie food or to disclose that it is not a low calorie food, *id.*

### 7.      Health Claims

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

Finally, Brazil alleges that Defendants make unlawful "health" claims about their blueberry products. SAC ¶ 97. 21 C.F.R. § 101.14 governs the use of "health" claims—*i.e.*, any claim "that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition"—in food labeling. *See also* SAC ¶ 101. Although the SAC identifies Health Claims that appear only on Defendants' website, Brazil contends that statements made on websites are incorporated into a product's labeling whenever the website's address appears on the label. SAC ¶ 12.

Brazil contends that health claims on food must be "limited to claims about disease *risk reduction*, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease." SAC ¶ 102 (emphasis added); *see also* SAC ¶ 103 ("A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food." (citing 21 U.S.C. § 321(g)(1)(D)). Defendants allegedly violate this limitation by claiming that their blueberries can cure, mitigate or treat disease. SAC ¶ 104; ¶ 138 (Defendants' website "state[s] that blueberries contain compounds that may help ward off urinary tract infections, reduce the risk of heart disease, which fight to protect one's health and which have anti-inflammatory, heart healthy, antiaging, and anti-carcinogenic properties; and 'protect astronauts against the radiation-induced free-radical damage experienced during extended space flight'").

Brazil alleges that he "read and reasonably relied on the labels on Defendants' Purchased Products before purchasing them," and "based and justified the decision to purchase Defendants' products, in substantial part, on these labels." SAC ¶ 194. Brazil further claims that he "did not know, and had no reason to know, that the Purchased Products were unlawful and misbranded," that he "would not have bought the products had he known the truth about them," and that once he "learned that Defendants' Purchased Products were falsely labeled, he stopped purchasing them." SAC ¶¶ 195-196.

### B.   Putative Class Claims

Brazil seeks to bring this putative class action, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of "[a]ll persons in the United States, or alternatively California, who

since April 11, 2008, purchased one or more of [the Purchased Products or Substantially Similar Products]." SAC ¶ 202.

The SAC alleges that by manufacturing, advertising, distributing, and selling misbranded products, Defendants have violated California Health & Safety Code Sections 110390, 110395, 110398, 110400, 110660, 110665, 110670, 110705, 110735, 110740, 110760, 110765, and 110770. *See* SAC ¶¶ 180-191. In addition, Brazil asserts that Defendants have violated the standards set by 21 C.F.R. §§ 1.21, 101.13, 101.14, 101.22, 101.54, and 101.95, which have been adopted by reference into the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 *et seq. See* SAC ¶ 192. Based on these violations, the SAC states the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices (claims 1, 2, and 3), SAC ¶¶ 213-242; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising (claims 4 and 5), SAC ¶¶ 243-260; and (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (claim 6), SAC ¶ 261-277.

**C.      Procedural History**

Brazil filed an Original Complaint against Defendants on April 11, 2012. ECF No. 1. Defendants filed a Motion to Dismiss on July 2, 2012. ECF No. 16. Rather than responding to Defendants' Motion to Dismiss, Brazil filed a First Amended Complaint on July 23, 2012. ECF No. 25. The Court then denied Defendants' Motion to Dismiss the original complaint as moot. ECF No. 28.

On August 13, 2012, Defendants filed a Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion to Strike, ECF No. 29, which the Court granted in part and denied in part on March 25, 2013, ECF No. 59. The Court granted leave to amend, and, accordingly, Brazil filed the SAC on April 12, 2013. ECF No. 60. In response to the SAC, Defendants filed a Motion to Dismiss and Motion to Strike on April 29, 2013. ("Mot.") ECF No. 62. On May 20, 2013, Brazil filed an Opposition, ("Opp'n") ECF No. 68, and Defendants replied on June 3, 2013, ("Reply")

United States District Court
For the Northern District of California

1    ECF No. 71. In addition to his Opposition, Brazil has filed two Notices of New Case Law relevant

2    to the Motion to Dismiss, ECF Nos. 69, 70; Defendant has filed one such Notice, ECF No. 72.

3    **II.      LEGAL STANDARDS**

4         **A.      Rule 12(b)(1)**

5              A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

6    to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

7    jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish

8    subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

9    Cir. 2003). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court

10   lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a*

11   *Better Env't*, 523 U.S. 83, 101-02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not

12   restricted to the face of the pleadings, but may review any evidence, such as affidavits and

13   testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United*

14   *States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject

15   matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the

16   court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

17   2010), by putting forth "the manner and degree of evidence required" by whatever stage of the

18   litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also*

19   *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to

20   dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts

21   plausibly explaining" why the standing requirements are met).

22        **B.      Rule 9(b)**

23              Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

24   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

25   particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

26   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the

27   allegations must be "specific enough to give defendants notice of the particular misconduct which

28   is alleged to constitute the fraud charged so that they can defend against the charge and not just

*United States District Court*
*For the Northern District of California*

9

deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific

content of the false representations as well as the identities of the parties to the misrepresentations."

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks

omitted). The plaintiff must set forth what is false or misleading about a statement, and why it is

false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by*

*statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### C.      Rule 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

P. 26(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money

that must arise from litigating spurious issues by dispensing with those issues prior to trial."

*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are

generally disfavored and "should not be granted unless the matter to be stricken clearly could have

no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to

be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte*

*Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).

"With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the

light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike

lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12–

00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft*

*Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### D.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"should be freely granted when justice so requires," bearing in mind that "the underlying purpose

of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.      DISCUSSION

Defendants seek to dismiss portions of Brazil's SAC on the grounds that: (1) Brazil lacks standing to sue over products he did not purchase and website statements he did not view; and (2) Brazil's claims regarding products he did not purchase and website statements he did not read fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). Mot. at v. In the alternative, Defendants move to strike Brazil's claims relating to products he did not purchase and website statements he did not see. *Id.* Defendants also move to strike: (1) Brazil's claims based on Defendants' failure to disclose that their products were mislabeled on the ground that such claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"); and (2) Brazil's nationwide class allegations on the ground that the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), precludes Brazil from pursuing California state-law claims on behalf of a nationwide class. *Id.* For the reasons stated herein, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss the SAC and GRANTS in part and DENIES in part Defendants' Motion to Strike.

### A.      Standing

Defendants contend that Brazil lacks Article III standing to sue over products he did not personally purchase and statements he did not personally view. Mot. at 3.[1] To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). As discussed below, the Court concludes that Brazil may proceed with

---

[1] Defendants do not challenge Brazil's standing to pursue claims based on the Purchased Products.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

his claims based on products he did not purchase, but not with his claims based on statements he did not view.

### 1.        Products Brazil Did Not Purchase

Defendants argue that Brazil cannot satisfy Article III's injury-in-fact requirement for products he did not purchase. Brazil's alleged injury is that he paid money for products that he would not have purchased but for Defendants' misrepresentations, *see* SAC ¶¶ 193-196, and Defendants reason that Brazil cannot possibly have suffered this economic injury for products he did not buy. Mot. at 4. In response, Brazil points out that the majority of courts in this District and elsewhere in California hold otherwise. Opp'n at 8. Some courts decline to address whether a plaintiff may assert claims based on products he did not purchase until ruling on a motion for class certification, *see, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012), while others "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar," *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases); *see also, e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012). In either case, these courts allow plaintiffs to proceed with claims based on products the plaintiffs did not purchase past the motion to dismiss stage, at least so long as the products and claims at issue are "substantially similar."[2]

This Court has previously applied the "substantial similarity" approach when analyzing standing challenges in the food-misbranding context, *see Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *10-11 (N.D. Cal. Sept. 19, 2013); *Bruton v. Gerber Prods. Co.*, --- F. Supp. 2d --

---

[2] This is admittedly not the universal view in this District. Some courts have dismissed claims for lack of standing when the plaintiff did not purchase the product on which the claim is based. *See, e.g.*, *Granfield v. NVIDIA Corp.*, No. 11-5403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-1044, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd on other grounds*, 475 F. App'x 113 (9th Cir. 2012).

12

*United States District Court*
For the Northern District of California

-, 2013 WL 4833413, at *15 (N.D. Cal. Sept. 6, 2013), and will do so again here. Not only does this approach accord with the views of most other courts in this District, but it also makes sense, both as a logical and as a practical matter. Critically, Brazil is not asserting standing to sue over injuries he did not suffer; rather, Brazil asserts that the injuries he suffered as a result of buying the Purchased Products and the injuries suffered by the unnamed class members who purchased the Substantially Similar Products are one and the same. This is the entire point of the substantially similar approach: by limiting a plaintiff's ability to sue over products he did not purchase to situations involving claims and products that are substantially similar to those products he did purchase, courts ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff. The substantially similar approach therefore recognizes the need to limit a plaintiff's standing to injury he has personally suffered. At the same time, however, the approach recognizes that the definition of the plaintiff's "injury" is not so narrow as to encompass only the exact set of circumstances that led to the plaintiff's suit. The approach acknowledges, for instance, that where, as here, a plaintiff claims that he was misled by the improper use of the term "all natural" on Dole Mixed Fruit in Cherry Gel, SAC ¶ 162, the injury he suffers as a result of that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual who is misled by the use of the term "all natural" on Dole Mixed Fruit in Black Cherry or Peach Gel, SAC ¶ 201.

As Judge Whyte recently explained in another food misbranding case, the substantially similar approach is also consistent with the Ninth Circuit's warning that courts "should not be too rigid in applying standing requirements to proposed classes." *Lanovaz v. Twining's N. Am., Inc.*, No. 12-2646, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013). When evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar, but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1    Allowing Brazil to proceed with substantially similar claims based on both products he purchased

2    and substantially similar products he did not purchase is a realistic approach that avoids parsing the

3    question of injury too finely. Accordingly, the Court finds that Brazil has adequately demonstrated

4    standing, at least for purposes of surviving a motion to dismiss, to assert substantially similar

5    claims based on products that are substantially similar to the Purchased Products and DENIES

6    Defendants' Motion to Dismiss the SAC's Substantially Similar Product Claims on this basis. The

7    Court will address whether Brazil's allegations regarding substantial similarity are pleaded with

8    sufficient particularity for purposes of Rule 9(b) below. *See infra* Part III.B.[3]

9                    **2.    Statements Brazil Did Not View**

10              Defendants further argue that Brazil lacks standing to sue over the Health Claims appearing

11   on Defendants' website because the SAC does not allege that Brazil ever viewed these website

12   statements. Mot. at 6. Brazil concedes that he did not view Defendants' website. Opp'n at 14.

13   Nevertheless, Brazil argues that he need not have viewed the statements on Defendants' website in

14   order to have standing to sue over them. *Id.* at 12-15. According to Brazil, the FDA has determined

15   that statements made on websites whose addresses appear on a product's label are incorporated into

16   the label as a matter of law. *Id.* at 12-13 (citing FDA Warning Letters). Because Defendants'

17   website address appears on Defendants' various blueberry products, Brazil reasons that any

18   unlawful Health Claims made on Defendants' website render the products "misbranded" under

19   federal and California law. *Id.* at 13-14. Because it is "unlawful for any person to manufacture, sell,

20   deliver, hold, or offer for sale" misbranded food products, Brazil argues that he purchased "illegal"

21   products as a result of Defendants' misrepresentations. *Id.* at 14 (quoting Cal. Health & Safety code

22   § 110760). Brazil asserts that merely purchasing an "illegal product" is sufficient injury to confer

23   standing. *Id.* at 15. The Court disagrees.

24              Initially, the Court notes that it is doubtful whether Brazil's "illegal product" theory is

25   sufficient to establish causation for purposes of Article III standing. *See Lujan*, 504 U.S. at 560

26   _____

27   [3] Although Defendants do not specifically challenge Brazil's standing under the UCL, FAL, and
     CLRA to bring claims based on the Substantially Similar Products, for the reasons discussed in the

28   foregoing section, the Court concludes that Brazil has statutory standing to assert these claims as
     well as standing under Article III.

                                            14

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    (Article III standing requires "a causal connection between the injury and the conduct complained

2    of"). While Defendants' website statements may violate federal law by virtue of the FDA's

3    position that website statements may be incorporated into a product's labeling by reference, it is far

4    from apparent how this regulatory violation could have *caused* Brazil to purchase Defendants'

5    products when he neither saw the allegedly offending statements nor relied on them in deciding to

6    purchase Defendants' products.

7             Regardless, even if Brazil's illegal product theory could pass muster under Article III, it

8    fails as a basis for establishing statutory standing under the UCL, FAL, and CLRA. To have

9    standing under the FAL and CLRA, a plaintiff must allege that she relied on the defendant's

10   alleged misrepresentation. *See, e.g.*, Cal. Bus. & Prof. Code § 17535 (providing that a plaintiff

11   suing under the FAL must have "suffered injury in fact and ha[ve] lost money or property as a

12   result of a violation of this chapter"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367

13   (2010) (plaintiff's CLRA claim failed because plaintiff failed to allege facts showing that he "relied

14   on any representation by" defendant). The UCL similarly requires a plaintiff to allege actual

15   reliance in order to have standing to sue under its provisions. *See* Cal. Bus. & Prof. Code § 17204

16   (to sue under the UCL, plaintiff must have "suffered injury in fact and [] lost money or property as

17   a result of the unfair competition"). This reliance requirement applies to claims arising under the

18   UCL's fraud prong, *see In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009, and also to claims

19   arising under the UCL's unfair and unlawful prongs where the underlying misconduct alleged is

20   fraudulent, *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011); *see also In re*

21   *Actimmune Mktg. Litig.*, No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) *aff'd*,

22   464 F. App'x 651 (9th Cir. 2011) (holding "that a plaintiff must plead 'actual reliance,' even if

23   their [*sic*] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause

24   of action grounded in misrepresentation or deception.").

25             The gravamen of Brazil's claims under the UCL's unlawful, unfair, and fraud prongs is that

26   Defendants' labeling was deceptive. Brazil must therefore demonstrate that he actually relied on

27   Defendants' alleged misrepresentations. He cannot do so, *see* Opp'n at 14 (Brazil "makes no []

28   allegations" that "he either viewed or relied on the Dole website in purchasing" Defendants'

15

blueberry products), and thus he cannot have standing under the UCL, FAL, or CLRA.

Moreover, Brazil's "illegal product" theory is inconsistent with the enhanced standing requirements for UCL claims imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset*. As explained in *Kwikset*, the voters enacted Proposition 64 in 2004 as a means of "confin[ing] standing to those actually injured by a defendant's business practices and [] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, *viewed the defendant's advertising*, or had any other business dealing with the defendant." 51 Cal. 4th at 321 (emphasis added) (internal quotation marks omitted). Were the Court to hold that Brazil, who never viewed the Health Claims, has standing to bring claims based solely upon allegations that he would not have purchased a product that was misbranded, purchasers who never "viewed the defendant's advertising" or misleading labeling would have standing to sue. Such a holding is inconsistent with Proposition 64 and *Kwikset*.

Accordingly, the Court finds that Brazil does not have standing to sue over website statements he never viewed and GRANTS Defendants' Motion to Dismiss the SAC's Health Claims on this basis. Because the Court finds that Brazil's "illegal product" theory fails as a matter of law, it concludes that amendment of this claim would be futile and, accordingly, this dismissal is with prejudice.

### B.   Rule 9(b)

Defendants argue that even if Brazil might, as a theoretical matter, have standing to assert claims based on the Substantially Similar Products, he has failed to plead these claims with the particularity required by Federal Rule of Civil Procedure 9(b). *See* Mot. at 7.[4] As Defendants see it, all Brazil has done with respect to the Substantially Similar Products is provide a list of product names and statements that appear on the product labels without explaining "*how* the labels are unlawful or misleading for each product." *Id.*

In fact, however, the SAC is far more detailed than Defendants' characterization would suggest. For each category of representations challenged, the SAC identifies the regulations that

---

[4] Defendants do not challenge the particularity of Brazil's pleadings with respect to the Purchased Products.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California

1    the representations allegedly violate, states why the representations allegedly violate these

2    regulations, and states why a reasonable consumer would be misled by these alleged regulatory

3    violations. *See* SAC ¶¶ 30-106. Then, for the Purchased Products, the SAC highlights the

4    individual representations appearing on each product label and, again, explains why those

5    representations are allegedly unlawful and misleading. *See* SAC ¶¶ 107-178. Finally, for the

6    Substantially Similar Products, the SAC identifies the products and identifies the representations

7    made on each, all of which are representations that also appear on the Purchased Products and

8    which therefore have already been described in depth. *See* SAC ¶ 201. This is enough to satisfy

9    Rule 9(b)'s requirement that a plaintiff provide a particularized account of the allegedly false

10   representations, including an explanation of why the representations are false. *See Swartz*, 476 F.3d

11   at 764; *In re Glenfed*, 42 F.3d at 1548. Defendants would apparently like Brazil to spell out the

12   regulatory violations associated with every single product identified in the SAC with the same

13   degree of exhaustive detail Brazil provides for the Purchased Products, but such detail would only

14   render the SAC cumbersome, redundant, and excessively long. Accordingly, the Court finds that

15   Brazil has pleaded his allegations regarding the Substantially Similar Products with sufficient

16   particularity for purposes of Rule 9(b) and DENIES Defendants' Motion to Dismiss on this basis.[5]

17       **C.      Preemption**

18           Defendants next contend that Brazil's claim that "the very fact that Defendants sold []

19   misbranded products and did not disclose this fact to consumers is a deceptive act in and of itself"

20

21   ――――――――――――――――――
     [5] Although Defendants do not specifically challenge the adequacy of the SAC's allegations that the
22   Purchased Products and Substantially Similar Products are, indeed, substantially similar, the Court
     nevertheless finds these allegations sufficient for purposes of surviving a motion to dismiss. The
23   Substantially Similar Products are all just different flavors or varieties of the Purchased Products,
     *compare* SAC ¶ 2 (listing the Purchased Products), *with* ¶ 4 (listing the Substantially Similar
24   Products), and consequently the Court finds that the products themselves are substantially similar.
     *Accord Colucci*, 2012 WL 6737800, at *4 (different flavors of same nutrition bar were
25   substantially similar). Likewise, the representations made on the Substantially Similar Products are
     identical to those made on Purchased Products, *compare* SAC ¶¶ 107-178 (detailing the
26   representations made on the Purchased Products), *with* ¶ 201 (identifying the representations made
     on the Substantially Similar Products), and thus the Court finds that the representations are
27   substantially similar as well. *Accord Colucci*, 2012 WL 6737800, at *4 (claims were substantially
     similar across purchased and non-purchased products when products shared challenged ingredients
28   and bore the same alleged misrepresentation).

                                                      17

1   attempts to impose on food manufacturers an affirmative duty to disclose labeling violations on

2   their packaging that does not appear in the FDCA or FDA regulations. Mot. at 8-9 (quoting SAC

3   ¶ 6). Because the FDCA's express preemption provision provides that "no state . . . may directly or

4   indirectly establish . . . any requirement . . . made in the . . . labeling of food that is not identical to"

5   certain FDA labeling requirements, including those related to nutrition information, nutrient levels,

6   and health-related claims, 21 U.S.C. § 343-1(a), Defendants assert that any attempt to impose an

7   affirmative duty to disclose labeling violations is expressly preempted. Mot. at 9. Defendants are

8   correct that Brazil may not attempt to impose labeling requirements that go beyond those set forth

9   in the FDCA and FDA regulations. Courts, including this Court, have routinely found express

10  preemption in the food-misbranding context when a plaintiff has attempted to sue over conduct that

11  does not violate the FDCA or its accompanying regulations. *See, e.g.*, *Gustavson*, --- F. Supp. 2d --

12  -, 2013 WL 5201190, at *11-17 (N.D. Cal. Sept. 16, 2013); *Ivie v. Kraft Foods Global, Inc.*, No.

13  12-2554, 2013 WL 685372, at *9 (N.D. Cal. Feb. 25, 2013); *see also* 21 C.F.R. 100.1(c)(4) ("'Not

14  identical to' . . . means that the State requirement directly or indirectly imposes obligations or

15  contains provisions concerning the composition or labeling of food, or concerning a food container,

16  that . . . [a]re not imposed by or contained in the applicable provision . . . .").

17          Brazil responds by identifying a provision of the Code of Federal Regulations that, in his

18  view, imposes an affirmative duty to disclose the sorts of labeling violations alleged in the SAC.

19  Opp'n at 16. 21 C.F.R. § 1.21 states:

20          (a) Labeling of a food, drug, device, cosmetic, or tobacco product shall be deemed
            to be misleading if it fails to reveal facts that are: (1) Material in light of other
21          representations made or suggested by statement, word, design, device or any
            combination thereof; or (2) Material with respect to consequences which may result
22          from use of the article under: (i) The conditions prescribed in such labeling or (ii)
            such conditions of use as are customary or usual.
23
            (b) Affirmative disclosure of material facts pursuant to paragraph (a) of this section
24          may be required, among other appropriate regulatory procedures, by (1)
            Regulations in this chapter promulgated pursuant to section 701(a) of the act; or (2)
25          Direct court enforcement action.

26  On its face, this regulation does not immediately appear to impose a duty to disclose one's own

27  violations of federal labeling regulations on the very labels that violate those regulations. Rather, it

28

18

appears to impose a duty to disclose facts about the food product *itself*—either facts that may be needed to render other representations on the label not misleading, or those that may be material in light of how the food is typically consumed. Brazil does not cite, and the Court has not found, any authority to support the counterintuitive proposition that a product's label must disclose the fact of its own illegality, nor does Brazil identify any regulation or enforcement action that, under 21 C.F.R. § 1.21(b), specifically imposes such a duty.

Absent any authority or persuasive explanation to support the claim that Section 1.21 imposes an affirmative duty to disclose labeling violations on a food's packaging, the Court agrees with Defendants that Brazil is attempting to impose a requirement not identical to those imposed by federal law. *Cf. Perez v. Nidek Co.*, 711 F.3d 1109, 1118-19 (9th Cir. 2013) (plaintiff's claim based on failure-to-disclose theory was expressly preempted by the FDCA where plaintiff failed to identify any federally imposed affirmative duty to disclose). Accordingly, the Court finds that this claim is expressly preempted and GRANTS Defendants' Motion to Strike the "affirmative duty to disclose" allegations from the SAC. The Motion to Strike these allegations is granted with prejudice, as the Court finds that any attempt to plead additional facts to support an affirmative duty to disclose labeling regulatory violations on food packaging would be futile. In addition, the Court notes that although the "affirmative duty to disclose" theory did not appear in Brazil's First Amended Complaint, Brazil neither sought leave of the Court nor permission from Defendants to add it to the SAC.

### D.    Nationwide Class Claims

Finally, Defendants move to strike Brazil's nationwide class allegations on the ground that the Ninth Circuit's decision in *Mazza*, 666 F.3d 581, prevents Brazil from pursuing "claims under California law on behalf of consumers who purchased Dole products in another state." Mot. at 10. In *Mazza*, the plaintiffs sued Honda for violations of the UCL, FAL, and CLRA allegedly committed in connection with Honda's marketing of its "Collision Mitigation Braking System." *Id.* at 586-87. The Ninth Circuit reversed the district court's certification of a nationwide class, after concluding that, "[u]nder the facts and circumstances of this case," California's choice-of-law rules

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1    dictated that "each class member's consumer protection claim should be governed by the consumer

2    protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

3         While the Court acknowledges that some courts in this District have relied on *Mazza* to

4    strike nationwide class allegations at the pleadings stage, *see, e.g.*, *Littlehale v. Hain Celestial*

5    *Grp.*, No. 11-6342, 2012 WL 5458400, at *1-2 (N.D. Cal. July 2, 2012); *Banks v. Nissan N. Am.,*

6    *Inc.*, No. 11-2022, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012), it finds that striking the

7    nationwide class allegations at this stage of this case would be premature. Significantly, the Ninth

8    Circuit's opinion in *Mazza*—which was itself decided at the class certification stage and not on a

9    motion to dismiss—depended heavily on a detailed choice-of-law analysis that compared how

10   various states' consumer protection laws applied to the facts of the plaintiffs' claims. *See Mazza*,

11   666 F.3d at 589-94. By contrast, there has been no choice-of-law analysis in this case:

12   Defendants—who bear the burden of demonstrating "that foreign law, rather than California law,

13   should apply to class claims" in a California choice-of-law analysis, *Wash. Mut. Bank, FA v.*

14   *Superior Court*, 24 Cal. 4th 906, 921 (2001); *see also Mazza*, 666 F.3d at 590—provide no support

15   whatsoever for their position that foreign law, and not California law, governs Brazil's class

16   claims. Absent the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza*,

17   the Court is unable to determine, at this stage, whether California's choice-of-law rules apply to bar

18   all, some, or none of Brazil's class claims.[6] Accordingly, the Court DENIES Defendants' Motion

19   to Strike Brazil's nationwide class allegations.

---

20   [6] This conclusion accords with that of numerous other courts within the Ninth Circuit, which have

21   declined, even after *Mazza*, to conduct the choice-of-law analysis at the pleadings stage. *See, e.g.*,
     *Clancy v. The Bromley Tea Co.*, No. 12-3003, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ("Such

22   a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings]
     stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification

23   stage, after discovery."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal.

24   2012) ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike.
     At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be

25   inappropriate. Since the parties have yet to develop a factual record, it is unclear whether applying
     different state consumer protection statutes could have a material impact on the viability of

26   Plaintiffs' claims.") (citation omitted); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal.

27   2012) ("Although *Mazza* may influence the decision whether to certify the proposed class and
     subclass, such a determination is premature. At [the motion to dismiss] stage in the litigation—
     before the parties have submitted briefing regarding either choice-of-law or class certification—

28   plaintiff is permitted to assert claims under the laws of different states in the alternative.").

20

**IV.     CONCLUSION**

For the foregoing reasons, the Courts GRANTS Defendants' Motion to Dismiss the SAC's claims based on website statements Brazil did not view with prejudice, but otherwise DENIES the Motion to Dismiss. In addition, the Court GRANTS Defendants' Motion to Strike the SAC's claims based on Defendants' alleged affirmative duty to disclose regulatory violations on their food product labels with prejudice. The remainder of Defendants' Motion to Strike is DENIED.

**IT IS SO ORDERED.**

Dated: September 23, 2013

_____
LUCY H. KOH
United States District Judge

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE

United States District Court
For the Northern District of California