1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   CLAUDIA M. VETESI (CA SBN 233485)
    CVetesi@mofo.com
3   KATHLEEN B. RONEY (CA SBN 268446)
    KRoney@mofo.com
4   LISA A. WONGCHENKO (CA SBN 281782)
    LWongchenko@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone: 415.268.7000
7   Facsimile: 415.268.7522

8   Attorneys for Defendant
    DOLE PACKAGED FOODS, LLC
9

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15   CHAD BRAZIL, an individual, on his own behalf    Case No. CV12-01831 LHK
     and on behalf of all others similarly situated,
16                                                    **DEFENDANT DOLE PACKAGED**
                       Plaintiff,                     **FOODS, LLC'S OPPOSITION TO**
17                                                    **PLAINTIFF'S MOTION FOR CLASS**
           v.                                         **CERTIFICATION, FOR**
18                                                    **APPOINTMENT OF CLASS**
     DOLE PACKAGED FOODS, LLC,                        **REPRESENTATIVE, AND FOR**
19                                                    **APPOINTMENT OF CLASS**
                       Defendant.                     **COUNSEL**
20
                                                     Hearing Date:    April 17, 2014
21                                                   Time:            1:30 p.m.
                                                     Judge:           Hon. Lucy H. Koh
22                                                   Action Filed:    April 11, 2012

23

24

25

26            REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

STATEMENT OF THE ISSUES TO BE DECIDED............................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.     INTRODUCTION .......................................................................................1

II.    THE LEGAL STANDARD ........................................................................1

III.   ARGUMENT ..............................................................................................2

     A.    The Court Should Dismiss All Claims That Plaintiff Has Dropped. ....................2

     B.    Plaintiff Is Not a Member of The Class as to Products He Did Not Purchase. .........................................................................................................3

     C.    Plaintiff Has Not Shown "Ascertainability." ........................................................3

     D.    "Commonality" And "Predominance" Are Lacking as to Liability.....................6

         1.    Plaintiff's "Unlawful" Theory Raises Myriad Individual Issues..............................................................................................7

         2.    Plaintiff's "Deception" Theory Raises Myriad Individual Issues............................................................................................ 11

         3.    The Actual Evidence Refutes a Finding of Materiality or a Common Understanding of "All Natural Fruit.".................................. 15

     E.    Plaintiff Cannot Show Classwide Entitlement to Monetary Relief. .................. 17

         1.    Two Courts, Including this One, Have Rejected Dr. Capps' Models.................................................................................... 17

         2.    All Three Damages Models Fail. ............................................... 17

         3.    The Actual Evidence Shows That No One Paid a Premium. ................... 23

     F.    The Court Should Deny Plaintiff's "Rule 23(b)(2)" Injunction Class.......................................................................................................... 24

     G.    The Court Should Deny Plaintiff's Request for a Nationwide Class.................. 25

IV.   CONCLUSION ......................................................................................... 25

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
5    No. 10-cv-04387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ...... 5, 16, 20, 22

6

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013).......................................................................... 9, 18

7

*Avoy v. Turtle Mountain, LLC*,
8    No. 13-CV-0236-LHK, 2014 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 14, 2014)............... 13

9

*Balser v. Hain Celestial Grp., Inc.*,
10    No. CV 13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ...................................... 9

11

*Banks v. Nissan N. Am., Inc.*,
   No. C 11-2022-PJH, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012) ................... 25

12

13

*Barnes v. Campbell Soup Co.*,
   No. C 12-05185 JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013) ...................................... 8

14

*Berger v. Home Depot USA, Inc.*,
15    741 F.3d 1061, 2014 WL 350082 (9th Cir. 2014) ............................................................. 3, 13

16

*Brazil v. Dell Inc.*,
   No. C-07-01700-RMW, 2010 WL 8816312 (N.D. Cal. Mar. 29, 2010) ............................... 24

17

*Brazil v. Dole Food Co.*,
18    935 F. Supp. 2d 947 (N.D. Cal. 2013) .................................................................................. 11

19

*Campion v. Old Republic Home Prot. Co.*,
20    272 F.R.D. 517 (S.D. Cal. 2011)............................................................................................ 13

21

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) .................................................................................................. 14

22

*Carrera v. Bayer Corp.*,
23    727 F.3d 300 (3d Cir. 2013).............................................................................................. 3, 6

24

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
   424 F. Supp. 2d 1229 (E.D. Cal. 2005).................................................................................. 10

25

26

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ................................................................................ 11

27

*Cohen v. DIRECTV, Inc.*,
28    178 Cal. App. 4th 966 (2009) ............................................................................................... 13

*Colgan v. Leatherman Tool Grp., Inc.,*
 135 Cal. App. 4th 663 (2006) ................................................................................. 18

*Collins v. Safeway Stores, Inc.,*
 187 Cal. App. 3d 62 (1986)....................................................................................... 5

*Comcast Corp. v. Behrend,*
 133 S. Ct. 1426 (2013) ......................................................................................*passim*

*Cortez v. Purolator Air Filtration Prods. Co.,*
 23 Cal. 4th 163 (2000) ............................................................................................. 18

*Daubert v. Merrell Dow Pharm., Inc.,*
 509 U.S. 579 (1993).................................................................................................. 12

*Denney v. Deutsche Bank AG,*
 443 F.3d 253 (2d Cir. 2006)..................................................................................... 23

*Ellis v. Costco Wholesale Corp.,*
 657 F.3d 970 (9th Cir. 2011)....................................................................................... 2

*Espenscheid v. DirectSat USA, LLC,*
 705 F.3d 770 (7th Cir. 2013)..................................................................................... 22

*Ewert v. eBay, Inc.,*
 No. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)................................ 24

*Fairbanks v. Farmers New World Life Ins. Co.,*
 197 Cal. App. 4th 544 (2011) ................................................................................. 15

*Faulk v. Sears Roebuck & Co.,*
 No. 11-CV-02159 YGR, 2013 WL 1703378 (N.D. Cal. Apr. 19, 2013).............................. 14

*Frezza v. Google Inc.,*
 No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ........................... 25

*Gitson v. Trader Joe's Co.,*
 No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 (N.D. Cal. Oct. 4, 2013).............. 14

*Gonzalez v. Proctor & Gamble Co.,*
 247 F.R.D. 616 (S.D. Cal. 2007)............................................................................. 14

*Granfield v. NVIDIA Corp.,*
 No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)...................................... 25

*Guido v. L'Oreal, USA, Inc.,*
 Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx),
 2013 WL 3353857 (C.D. Cal. July 1, 2013) ................................................................ 19

*Halvorson v. Auto-Owners Ins. Co.*,
  718 F.3d 773 (8th Cir. 2013)...................................................................................................... 23

*Haskell v. Time, Inc.*,
  965 F. Supp. 1398 (E.D. Cal. 1997).......................................................................................... 11

*Heighley v. J.C. Penney Life Ins. Co.*,
  257 F. Supp. 2d 1241 (C.D. Cal. 2003) .................................................................................... 11

*Hodes v. Van's Int'l Foods*,
  No. CV 09-01530 RGK, 2009 WL 2424214 (C.D. Cal. July 23, 2009).......................... 15, 22

*Holk v. Snapple Beverage Corp*,
  575 F.3d 329 (3d Cir. 2009)........................................................................................................ 8

*In re Charles Schwab Corp. Sec. Litig.*,
  No. C 08-01510 WHA, 2009 WL 3429742 (N.D. Cal. Oct. 22, 2009) ..................................... 2

*In re Facebook, Inc., PPC Advert. Litig*,
  282 F.R.D. 446 (N.D. Cal. 2012)........................................................................................... 5, 18

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006)..................................................................................................... 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ...................................................................................... 25

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) .................................................................................................... 13

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ......................................................................................................... 12, 13

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ............................................................................................... 14, 18

*Kane v. Chobani, Inc.*,
  No. 12-CV-02425-LHK, 2014 U.S. Dist. LEXIS 22258 (N.D. Cal. Feb. 20, 2014)...... 1, 7, 13

*Karhu v. Vital Pharm., Inc.*,
  No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014) ............................................... 6

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ................................................................................................................. 8

*Keilholtz v. Lennox Hearth Prods., Inc.*,
  268 F.R.D. 330 (N.D. Cal. 2010) *see* Mot., 18:9-19 ............................................................. 14

*Koehler v. Litehouse, Inc.*,
  No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012).................................... 25

*Kotteras v. Whole Foods Mkt., Inc.*,
   281 F.R.D. 16 (D.D.C. 2012) ................................................................. 17, 22, 23

*Kowalsky v. Hewlett-Packard Co.*,
   No. 5:10–cv–02176–LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012) ............................ 25

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................ 17

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002) ........................................................................ 3

*Littlehale v. Hain Celestial Grp., Inc.*,
   No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ........................................ 25

*Mahfood v. QVC, Inc.*,
   No. SACV 06-0659-AG(ANx), 2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) ................... 15

*Major v. Ocean Spray Cranberries, Inc.*,
   No. 5:12-CV-03067 EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013) ........................... 1, 3

*Marcus v. BMW of N. Am., Inc.*,
   687 F.3d 583 (3d Cir. 2012) ............................................................................. 3

*Mazza v. Am. Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012) ...................................................................... i, 1, 25

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ........................................................................... 22

*McManus v. Sturm Foods Inc.*,
   292 F.R.D. 606 (S.D. Ill. 2013) ......................................................................... 9

*Ogden v. Bumble Bee Foods, LLC*
   No. 5:12-CV-01828-LHK,
   2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) .................................... *passim*

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ........................................................................... 5

*Pelayo v. Nestlé USA, Inc*,
   No. CV 13-5213-JFW, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ............................. 8, 9

*Red v. Kraft Foods, Inc.*,
   No. CV-10-1028-GW(AGRx), 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ........... 6, 21, 22

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. Nov. 27, 2012) .............................................. 18, 22, 24

*Ries v. Ariz. Beverages USA LLC*,
    No. 10-01139 RS, 2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013)........................ 24

*Sandbrook v. Office Depot, Inc.*,
    No. C-07-05938 RMW, 2009 U.S. Dist. LEXIS 30857 (N.D. Cal. Mar. 30, 2009)................. 3

*Schulken v. Wash. Mut. Bank*,
    No. 09-CV-02708 LHK, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012)...................................... 24

*Sethavanish v. ZonePerfect Nutrition Co.*,
    No. 12–2907–SC, 2014 WL 580696 ...................................................................... 6

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012) ................................... 14

*Thompson v. Auto. Club of S. Cal.*,
    217 Cal. App. 4th 719 (2013) .............................................................................. 6

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) ............................................................................ 13

*Turcios v. Carma Labs., Inc.*,
    No. CV 12-8487-JGB (Ex), 2014 WL 323662 (C.D. Cal. Jan. 7, 2014) ............................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ......................................................................... 1, 2, 8, 24

*Webb v. Carter's, Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ........................................................................ 14

*Weiner v. Snapple Beverage Corp*,
    No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)............................. 6, 21

*Weiner v. Snapple Beverage Corp.*,
    No. 07 Civ. 8742(DLC), 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) ................................... 22

*Xavier v. Philip Morris USA, Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) (Alsup, J.).......................................................... 2, 3, 6

**STATUTES & REGULATIONS**

21 C.F.R.
    § 10.85(d), (e), and (j) .................................................................................. 8
    § 182.3013.............................................................................................. 4
    § 184.1625.............................................................................................. 4

Cal. Health & Safety Code
    § 110100................................................................................................ 8

58 Fed. Reg. 2302 (Jan. 6, 1993) ........................................................................ 8, 10

**RULES**

Fed.R. Civ. P.
    Rule 23 ......................................................................................................... *passim*
    Rule 23(a)(2) ............................................................................................................. 6
    Rule 23(b)(2) ........................................................................................................... 24
    Rule 23(b)(3) ................................................................................................ 2, 6, 17

Fed. R. Evid.
    702 ............................................................................................................................ 12

**OTHER AUTHORITIES**

USDA, Meat and Poultry Labeling Terms, *available at*
    http://www.fsis.usda.gov/wps/wcm/connect/e2853601-3edb-45d3-90dc-
    1bef17b7f277/Meat_and_Poultry_Labeling_Terms.pdf?MOD=AJPERES (last visited
    March 5, 2014.) ......................................................................................................... 7

1

### STATEMENT OF THE ISSUES TO BE DECIDED

2

Plaintiff's motion raises the following seven issues:

3

1. **Abandonment.** In moving for class certification only as to a small subset of his claims as pled in the Second Amended Complaint after the Court denied his motion to sever, has Plaintiff abandoned his other claims such that they should be dismissed?

4

5

6

2. **Membership in Class.** Has Plaintiff shown by a "preponderance of the evidence" that he is typical and/or a member of his own class where he is suing over seven products he did not buy?

7

8

3. **Ascertainability.** Has Plaintiff shown "by a preponderance of the evidence" that his class is ascertainable if the wrong depends on Defendant's use of "synthetic" ingredients (citric acid and ascorbic acid), but the evidence shows that all or most, of Defendant's ingredient suppliers used only "natural" processes, no company records exist to show who the purchasers are, how many products or which types they bought, and there is no showing that consumers kept receipts or their products' containers?

9

10

11

4. **Commonality and Predominance as to Liability.** Has Plaintiff shown "by a preponderance of the evidence" that he can prove his claims by common evidence and that common questions predominate where (i) his theory of "misbranding" raises predominating individual issues, (ii) his theory of deception raises predominating individual issues, and (iii) consumer survey evidence refutes a finding of materiality or a common meaning of "All Natural Fruit"?

12

13

14

5. **Commonality and Predominance as to Damages.** Has Plaintiff shown "by a preponderance of the evidence" that damages can be proven on a classwide basis where (i) Plaintiff himself denies having paid a premium and cannot identify a single comparable product that was cheaper, (ii) he relies on an expert who offers no feasible damages model that can avoid individualized assessments, and (iii) the evidence shows that no one paid a premium?

15

16

17

18

6. **23(b)(2) Class.** Has Plaintiff shown "by a preponderance of the evidence" that his purported "injunctive relief" class can be certified where his monetary damages claims are not "merely incidental" to his injunctive relief remedy?

19

20

7. **Nationwide Class Action Allegations.** Can a California plaintiff assert claims under California's consumer protection statutes against a California defendant on behalf of a nationwide class of consumers in light of *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)?

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I. INTRODUCTION

3      This is a peculiar class action.  Plaintiff Chad Brazil ("Brazil") assails Dole Packaged

4  Foods ("Dole") for using the words "All Natural Fruit" on ten Dole product labels.  He insists that

5  "citric acid" and "ascorbic acid" are "synthetic" and hence not "natural."   Because of these

6  labeling crimes, so the argument goes, the Court must certify a nationwide class of all purchasers

7  of the ten products and order Dole to restore all (or some) of their purchase price back to 2008.

8      Mr. Brazil didn't do his homework.  Certifications from three Dole suppliers verify that

9  the citric and ascorbic acids *are* natural.  This dooms "ascertainability" because someone who

10  bought a product sourced by any of those ingredient suppliers has no claim.  Yet, no one knows

11  which supplier's ingredient went into whose purchases.  In an indistinguishable "all natural" case,

12  Judge Hamilton recently denied class certification where plaintiff could not identify which Ben &

13  Jerry's ice cream purchases contained the allegedly synthetic alkali and which did not.

14      Class counsel's other food misbranding cases expose other flaws.  In *Ogden v. Bumble*

15  *Bee*, this Court granted summary judgment in part and stripped the case of all monetary relief.  In

16  *Kane v. Chobani*, it entered final judgment.  In those cases, class counsel relied on the same legal

17  theories and experts.  In *Major v. Ocean Spray*, Judge Davila denied certification because

18  plaintiff sued over products he didn't buy; here, Mr. Brazil bought three Dole products but wants

19  to sue over ten.  This case has all the flaws of *Ogden*, *Kane*, and *Major*, and then some.

20      Beyond that, the elements of Rule 23 are not met.  There is no common meaning of "All

21  Natural Fruit," so commonality and predominance are lacking.  Reliance, materiality, and

22  causation all raise individual issues.  There is no "damages" model susceptible to common proof.

23  And Ninth Circuit law precludes a nationwide class.  The Court should deny Plaintiff's motion.

24

## II. THE LEGAL STANDARD

25      "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine

26  whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am.*

27  *Honda Motor Co.* 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).  That will

28  frequently "entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*

*Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 980 (9th Cir. 2011).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Fed. R. Civ. P. 23.  *Wal-Mart*, 131 S. Ct. at 2551.  Plaintiff must do more than identify common *questions*; he must show that litigation will produce a classwide *answer* to the common question.  *Id.*  In addition, he must demonstrate that the class is ascertainable.  *Xavier v. Philip Morris USA, Inc*., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (Alsup, J.).  Finally, courts may certify a class under Rule 23(b)(3) only if there is "evidentiary proof" showing a classwide method of awarding relief that is consistent with the plaintiff's theory of liability.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

## III.   ARGUMENT

### A.   The Court Should Dismiss All Claims That Plaintiff Has Dropped.

Mr. Brazil admits that the class he seeks is "much narrower" than the one he pled. (Motion for Class Certification, for Appointment of Class Representative, and for Appointment of Class Counsel, ("Mot."), 5:6-9 (Dkt. No. 96).)  Indeed it is.  The operative complaint attacks 38 products and identifies seven label infractions:  "all natural," "fresh," preservatives, "sugar-free," "low-calorie," "nutrient content," and "antioxidant" claims.  (Second Amended Complaint ("SAC") ¶¶ 4, 14 (Dkt. No. 60).)  But Plaintiff seeks certification as to just ten products and one label statement: "All Natural Fruit."  (Mot., i:9-12.)  Those excluded claims should be dismissed.

Plaintiff insists that those claims remain.  (Declaration of Claudia M. Vetesi ("Vetesi Decl.") ¶ 4.)  Yet, he had asked the Court to "sever this case into separate cases" (*see* Dkt. No. 74, at 2:14-16) and the Court denied that request.  (Vetesi Decl. ¶ 3.)  Following that ruling, he opted not to include them in his motion for class certification.

The Court should give these claims the same regard Plaintiff has.  They should be deemed abandoned.  *See In re Charles Schwab Corp. Sec. Litig*., No. C 08-01510 WHA, 2009 WL 3429742, at *3 (N.D. Cal. Oct. 22, 2009) (denying leave to assert nationwide class/"counsel has sat on this matter until after class certification").

Whatever else it does, the Court should dismiss the abandoned claims, with prejudice.

**B.      Plaintiff Is Not a Member of The Class as to Products He Did Not Purchase.**

Plaintiff bought three Dole products but wants to sue on behalf of purchasers of seven other products he did not buy.  (Mot., 1:23-2:12.)  He got past Dole's motion to dismiss because he alleged that the other products were "substantially similar" and this conferred standing for purposes of a motion to dismiss.  (Order Granting in Part and Denying in Part Motion to Dismiss and Motion to Strike ("Order"), 14:1-6 (Dkt. No. 76).)  He can avoid the problem no longer.

A class representative must be a member of the class he seeks to represent.  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067, 2014 WL 350082 (9th Cir. 2014).  In *Berger*, a class representative who had signed one version of a tool rental agreement could not sue on behalf of customers who signed four others:  "Because he is not a member of those subclasses, Berger cannot prosecute claims on their behalf."  *Id.*; *see also Sandbrook v. Office Depot, Inc.*, No. C-07-05938 RMW, 2009 U.S. Dist. LEXIS 30857, at *13-14 (N.D. Cal. Mar. 30, 2009) (same).  "Substantially similar" or not, the other rental agreements were off limits for class certification.

In another case brought by class counsel, Judge Davila held "the typicality requirement has not been met" where "Plaintiff's proposed classes … encompass products that she herself did not purchase."  *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067 EJD, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013); *see also Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 234 (S.D.N.Y. 2002) (no typicality where plaintiff bought two of 60 products).

Mr. Brazil is not a member of the class as to the seven products he did not buy.  He can no more sue over those seven products than he might sue over securities he didn't buy or a puddle in which he didn't slip and fall.

**C.      Plaintiff Has Not Shown "Ascertainability."**

"[T]he party seeking certification must demonstrate that an identifiable and ascertainable class exists."  *Xavier*, 787 F. Supp. 2d at 1089.  Class members must be identifiable by objective criteria (*Marcus v. BMW of N. Am., Inc.*, 687 F.3d 583, 592-93 (3d Cir. 2012)) "without extensive and individualized fact-finding or mini-trials."  *Carrera v. Bayer Corp.*, 727 F.3d 300, 303-04 (3d

1  Cir. 2013) (quotation marks omitted).  Plaintiff does not address "ascertainability."  Even if he

2  had, he would still lose, for two reasons.

3      First, there is the problem of "*which* citric and ascorbic acid?"  It is not enough to have

4  bought a qualifying Dole fruit product.  As Mr. Brazil reminds us, Dole's offense was not that it

5  used citric acid and ascorbic acid, but that it used *synthetic* versions.  (Mot., 1:16-26.)  Thus, Mr.

6  Brazil must establish that an objective means exists for showing that all class members' purchases

7  involved a *synthetic* and not a non-synthetic citric or ascorbic acid.  He cannot prove this.

8      Plaintiff flatly asserts that *all* citric and ascorbic acid used in Dole's products is

9  "synthetic."  (*See, e.g.*, Mot., 1:26 & 2:11.)  But he has no evidence aside from Dr. Scarbrough's

10  uninformed "understanding."  (Scarbrough Decl. ¶ 16.)  Dr. Scarbrough's citation to 21 C.F.R.

11  § 184.1625 (*id.*) addresses "potassium citrate," not "citric acid," and his citation to 21 C.F.R.

12  § 182.3013 is merely part of a list of ingredients that could be used as safe preservatives.  It says

13  nothing about the classification of ascorbic acid generally.

14      Dole's expert, Dr. Montville, is a Professor of Food Science at Rutgers University.  He

15  explains that citric acid and ascorbic acid are typically produced through *natural* fermentation.

16  (Declaration of Thomas J. Montville ("Montville Decl.") ¶¶ 5, 9.)  More importantly, three of the

17  suppliers of Dole's citric acid and ascorbic acid have produced certifications attesting that their

18  ingredients are "natural."  (Declaration of Hany Farag ("Farag Decl.") Exs. A-C.)  These three

19  certifications are likely representative of all of Dole's suppliers, as Dole has many documents

20  from suppliers showing the same methods of producing the two ingredients.  (Farag Decl. ¶ 11.)

21  The processes for making the ingredients generally do not differ.  (*Id.*)  Thus, at the very least,

22  any putative class members who bought products that used those supplier's ingredients received

23  "natural"—*non*-synthetic—citric and ascorbic acid.

24      This is fatal to ascertainability.  The labels themselves do not indicate which process was

25  used to derive the citric or ascorbic acid.  They simply recite "citric acid" and "ascorbic acid."

26  (SAC ¶ 125; *see also* labels, Dkt. Nos. 96-3, 97, 98-4, 99, 100, 100-4.)  To figure out which

27  process was used would require a massive scavenger hunt, tantamount to a product recall.  What

28  might that look like?  The ten products at issue were manufactured in China, Thailand,

1   Philippines, Swaziland, and California.  (Farag Decl. ¶ 4.)[1]  Dole owns the California facility,

2   while Dole's affiliates own the facilities in Philippines and Thailand.  But third-party co-packers

3   own the China and Swaziland facilities.  Each facility sources its own ingredients.  (*Id*. ¶ 5.)

4   None of Mr. Brazil's experts can say which class members bought a product with a "synthetic"

5   versus a "non-synthetic" ingredient.

6          Even more daunting is the task of tracing the source of citric and ascorbic acid from each

7   consumer back through the supply chain.  Indeed, it is impossible unless a class member kept his

8   product package.  (*Id*. ¶ 7.)  Although Mr. Brazil retrieved some of his Dole packages from the

9   garbage after he met with class counsel (Brazil Dep., 15:11-16:9 [Vetesi Decl. Ex. A]), it is

10  unreasonable to assume that other consumers saved their spent containers.

11         This case is the essence of an un-ascertainable class.  Judge Hamilton found this problem

12  fatal to class certification in *Astiana v. Ben & Jerry's Homemade, Inc*., No. 10-cv-04387 PJH,

13  2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014).  There, plaintiff alleged that certain of Ben

14  & Jerry's "all natural" ice cream products were processed with a synthetic alkali, but she could

15  not show *which* ice cream products were made with the "synthetic" alkali (potassium carbonate)

16  as opposed to a "non-synthetic" alkali (sodium carbonate).  *Id*., at *9-10.  The same is true here.

17         *Collins v. Safeway Stores, Inc.*, 187 Cal. App. 3d 62 (1986) is illustrative.  There, the class

18  representatives bought eggs that had been recalled but there was no way to identify which

19  customer bought cartons with the contaminated eggs.  Class certification was denied due to lack

20  of ascertainability.  *Id*. at 69-70; *see also Oshana v. Coca-Cola Co*., 472 F.3d 506, 514 (7th Cir.

21  2006) (class of purchasers of "fountain" Diet Coke who complained they were misled by the

22  suggestion it did not contain saccharin was unascertainable because the class "could include

23  millions who were not deceived [by the alleged misrepresentations] and thus have no

24  grievance."); *accord In re Facebook, Inc., PPC Advert. Litig*, 282 F.R.D. 446, 460-01 (N.D. Cal.

26         [1] The location varies by product.  For example, "Tropical Fruit in Light Syrup and Passion Fruit Juice" (can) is made in Philippines and Thailand, "Wildly Nutritious Signature Blends Mixed Fruit" (frozen) is made California, and "Diced Apples" and "Mandarin Oranges" (Fruit Bowls) are made in China and Thailand.  (Farag Decl. ¶ 3.)

1    2012) (class certification denied/plaintiff could not distinguish between "fraudulent" and

2    "invalid" clicks); *Thompson v. Auto. Club of S. Cal.*, 217 Cal. App. 4th 719, 732 (2013)

3    (same/individual inquiries were necessary to identify which class members had a valid claim and

4    which did not).

5           Second, courts presiding over food misbranding cases have denied class certification

6    where, as here, the defendant is a wholesale manufacturer and no records identify consumer

7    purchases. *See Carrera*, 727 F.3d at 308; *see also Red v. Kraft Foods, Inc.*, No. CV-10-1028-

8    GW(AGRx), 2012 WL 8019257, at *5-6 (C.D. Cal. Apr. 12, 2012); *Sethavanish v. ZonePerfect*

9    *Nutrition Co.*, No. 12–2907–SC, 2014 WL 580696, at *5 (N.D. Cal. Feb. 13, 2014) ("The Court

10   finds the reasoning of *Carrera* and *Xavier* more persuasive…"); *Weiner v. Snapple Beverage*

11   *Corp*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) ("All Natural"

12   case); *see also Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *3 (S.D. Fla.

13   Mar. 3, 2014).  Here, company records do not identify who the individual purchasers are, how

14   much they bought, or which products they bought.  (Declaration of David Spare ("Spare Decl.")

15   ¶ 20.)[2]

16          The putative class is not ascertainable.  The Court should deny Plaintiff's motion.

17          **D.    "Commonality" And "Predominance" Are Lacking as to Liability.**

18          Mr. Brazil's argument in favor of commonality (Rule 23(a)(2)) and predominance (Rule

19   23(b)(3)) goes like this: (i) "all class members purchased one of Defendant's fruit products

20   bearing the same misleading front panel language—'All Natural Fruit'—containing ascorbic acid

21   and citric acid, [which are] processed artificial and synthetic ingredients…"  (Mot., 6:22-24);

22   (ii) whether the labels were misbranded (read, "unlawful") presents a common legal question (*id.*,

23   8:5-9); and (iii) whether the labels were misleading (read, "fraudulent") is common as "it asks

24

25          [2] Asking consumers to sign an affidavit will not work.  "[A] defendant must be able to
26   challenge class membership." *Carrera*, 727 F.3d at 308-09 (self-identification by affidavit
     violates due process); *Weiner*, 2010 WL 3119452, at *13 (verifying class members claims "would
     invite them to speculate, or worse").  And as Judge Alsup noted, "[s]uch affidavits would be
27   unreliable for several reasons, one of which is the selective memory problem." *Xavier*, 787
     F. Supp. 2d at 1090.
28

1   whether 'members of the public are likely to be deceived'." (*Id.*, 8:10-13; *see also id.*, 17:8-15).

2   All three pieces to Plaintiff's commonality/predominance puzzle are misplaced.

3       **1.   Plaintiff's "Unlawful" Theory Raises Myriad Individual Issues.**

4       Plaintiff contends that FDA and the Sherman law "are clear" that food manufacturers "are

5   forbidden from telling the public that a product is 'all natural' if synthetic ingredients are used."

6   (Mot., 1:5-8.) He is wrong. Plaintiff's "unlawful" claim cannot be certified for several reasons.

7       **a.   Dole's Ascorbic and Citric Acids Are "Natural."**

8       FDA's "natural" policy turns on a two-part test: (i) Was anything artificial or synthetic

9   included, and (ii) is this something "that would not normally be expected"? (*See* Mot., 3:4-7.)[3]

10  Under FDA's test, the citric acid and ascorbic acid used in Dole's products *are* natural.

11      Three Dole suppliers produced "natural" certifications attesting that their citric and

12  ascorbic acids are "natural." (Farag Decl. Exs. A-C.) Moreover, as Professor Montville explains,

13  citric acid and ascorbic acid (also called vitamin C) are "products of natural biological

14  fermentations." (Montville Decl. ¶ 5.) "The citric acid in this case is the same as that extracted

15  from citrus fruits" and "[t]he ascorbic acid is the same as that found in dark green leafy

16  vegetables and citrus fruits." (*Id.*) He concludes that they are "natural" within the meaning of

17  FDA's policy. (*Id.*)

18      In *Kane v. Chobani, Inc.*, this Court dismissed with prejudice plaintiff's "all natural"

19  claims against a yogurt manufacturer because "Plaintiffs do not allege how they thought these

20  juices were processed, nor provide any explanation as to how Defendant 'highly processed' the

21  juices in such a way as to render them 'unnatural' or how the processing fell short of Defendant's

22  labeling representations." No. 12-CV-02425-LHK, 2014 U.S. Dist. LEXIS 22258, at *45 (N.D.

23

24  _____

25      [3] This is FDA's test. USDA's test of "natural" includes an additional requirement, that the food can be only "minimally processed." *See* USDA, Meat and Poultry Labeling Terms,

26  *available at* http://www.fsis.usda.gov/wps/wcm/connect/e2853601-3edb-45d3-90dc-1bef17b7f277/Meat_and_Poultry_Labeling_Terms.pdf?MOD=AJPERES (last visited March 5,

27  2014.) Dole's fruits contain no meat or poultry, hence, FDA's policy statement applies, not USDA's. In any event, FDA's policy statement is the operative rule (SAC ¶ 33), so the Court

28  should ignore Plaintiff's erroneous references to "processing." (*See* Mot., 1:5.)

1    Cal. Feb. 20, 2014).  Though that was a pleading case, it follows from *Kane* that here, at class

2    certification, Plaintiff must do more than just incant the adjective "synthetic."  He has not.[4]

3                          **b.      FDA's "Natural" Policy is Non-Binding.**

4            Even if 100% of Dole's ingredients were synthetic, Plaintiff still loses.  The "law" he

5    seeks to "borrow" is not a "law" but, rather, FDA's "natural" policy statement, 58 Fed. Reg.

6    2302, 2407 (Jan. 6, 1993).  (*See* Mot., 3:1-7; 8:5-9.)  FDA's "natural" statement is non-binding.

7    It does not have the force of law.  *Holk v. Snapple Beverage Corp*, 575 F.3d 329, 342 (3d Cir.

8    2009); *accord Barnes v. Campbell Soup Co*., No. C 12-05185 JSW, 2013 WL 5530017, at *8

9    (N.D. Cal. July 25, 2013) (White, J.) (characterizing FDA's "natural" policy as "non-binding

10   guidance"); *Pelayo v. Nestlé USA, Inc*, No. CV 13-5213-JFW (AJWx), 2013 WL 5764644, at *5

11   (C.D. Cal. Oct. 25, 2013) ("FDA's 'informal policy' regarding the definition of 'natural' does not

12   establish a legal requirement") (citing *Ries v. Hornell Brewing Co.*, No. 10-1139–JF (PVT), 2010

13   WL 2943860, at *5 (N.D. Cal. July 23, 2010)).

14           To invoke the "unlawful" prong of the UCL, there must be a "violation" of positive law.

15   *See Kasky v. Nike, Inc*., 27 Cal. 4th 939, 950 (2002).  You cannot "violate" a non-binding policy

16   statement.[5]  Likewise, the Sherman Law incorporates only "food labeling *regulations*" that FDA

17   has "adopted."  Cal. Health & Safety Code § 110100 (emphasis added).  FDA's "natural" policy

18   statement is not a regulation.  It was never "adopted."  FDA regards it merely as an "advisory

19   opinion."  *See* 21 C.F.R. § 10.85(d), (e), and (j).

20           Plaintiff begs to differ, insisting that FDA "regulates" the term "natural" and has "for

21   many years."  (Mot., 3:1-2.)  But he is impeached by his own citation to the January 6, 2014 letter

22   from FDA:  "FDA has *not* promulgated a formal definition of the term 'natural' with respect to

23   food."  (Mot., 3:2-7 [attached as Dkt. No. 101-1] (emphasis added).)  FDA has regulated the term

24   "natural" with respect to "flavorings."  Notably, the FDA regulation that defines "natural flavors"

---

26   [4] While this is also a "merits" issue, it affects "ascertainability."  (*See* Part III.C, above.)
     Thus, it may be considered on class certification.  *Wal-Mart Stores*, 131 S. Ct. at 2551-52.

27   [5] The conduct might be "unfair" or "fraudulent" under the UCL, but the violation of a
28   non-binding "policy" cannot be "unlawful."

1   expressly permits fermentation for producing "natural flavors."  (Montville Decl. ¶ 7 (citing 21

2   C.F.R. § 101.22(a)(3)).)  Plaintiff's unlawful claim fails.

3                          **c.     "All Natural" Has No Common Meaning.**

4        Even if Dole had used synthetic citric and ascorbic acid and even if FDA's policy

5   statement had carried the force of law, Plaintiff's commonality argument stumbles over the next

6   hurdle: There is no common meaning of the term "All Natural Fruit."  Plaintiff disagrees (*see*

7   Mot., 3:1-7), but every court that has faced the issue has decided against him, and so has FDA.

8        Let's begin with court decisions.  In *Astiana v. Kashi Company*, 291 F.R.D. 493, 508

9   (C.D. Cal. 2013), another "All Natural" case, the court noted: "[F]ood producers, consumers, and

10  the [FDA] all fail to define 'natural' in any definite manner."  Thus, the court denied certification

11  as to the "All Natural" class because "[p]laintiffs fail to sufficiently show that "All Natural" has

12  any kind of uniform definition among class members, that a sufficient portion of class members

13  would have relied to their detriment on the representation, or that Defendant's representation of

14  "All Natural" in light of the presence of the challenged ingredients would be considered to be a

15  material falsehood by class members."  *Id.*

16       Likewise, in *Pelayo v. Nestlé*, the court dismissed with prejudice the claims against a pasta

17  manufacturer because "Plaintiff has failed to allege either a plausible objective definition of the

18  term 'All Natural' or her subjective definition of the term 'All Natural' that is shared by the

19  reasonable consumer."  2013 WL 5764644, at *5; *accord Balser v. Hain Celestial Grp., Inc.*, No.

20  CV 13-05604-R, 2013 WL 6673617, at *1 (C.D. Cal. Dec. 18, 2013) (court dismissed with

21  prejudice the claims against a shampoo manufacturer because "All Natural" was implausible); *see*

22  *also McManus v. Sturm Foods Inc.*, 292 F.R.D. 606, 618 (S.D. Ill. 2013) (district court denied

23  class certification in a mislabeling case against a coffee manufacturer who claimed "fresh ground

24  coffee" where "[e]ach class member's understanding of 'soluble' and 'microground'… is at

25  issue," raising "individual variations").

26       FDA also disagrees with Mr. Brazil.  It declined to adopt a fixed meaning of the term

27  "natural" in 1993 because consumers, food industry experts, and scientists espoused divergent

28

1    views about the term when used to describe food products.  *See* 58 Fed. Reg. at 2407 (noting that

2    commentators "provided a wide range of ideas" regarding the definition of "natural").

3          The Court might rightly ask, what evidence does Mr. Brazil offer that "All Natural Fruit"

4    has a single meaning that is susceptible to classwide proof?  In deposition, Mr. Brazil undermined

5    that position.  He gave two different possible meanings.  One meaning, which he advances here,

6    is that the entire product has to be "All Natural."  (Vetesi Decl. Ex. A., 32:2-6, 45:5-11.)  But

7    another meaning is that "All Natural" modifies only "fruit," and under that meaning only the *fruit*

8    needs to be "All Natural," not the entire product.  (*Cf. id.*, 86:25-87:11.)

9          Defendant's expert, Dr. Kent Van Liere tested what consumers understood this phrase to

10   mean.  As described in Section D.3 below, he found that most consumers understood the products

11   contained citric acid and ascorbic acid, and only 13 percent of the respondents who were shown

12   the allegedly misleading package believed the products contained "natural" citric and ascorbic

13   acid.  (Declaration of Kent Van Liere ("Van Liere Decl.") Ex. A ¶ 38.)

14         Mr. Brazil merely relies on Dr. Edward Scarbrough, a former Director of FDA's Office of

15   Food Labeling.  Dr. Scarbrough admits that "ascorbic acid occurs naturally in plants and

16   animals," but then goes on to offer his "understanding" that ascorbic acid is synthetically

17   produced and so is citric acid.  (Scarbrough Decl. ¶ 16.)  But Dr. Scarbrough does not speak for

18   FDA, he is opining on a "legal" question, he has ventured outside his expertise, and he does not

19   purport to know how consumers would understand the phrase "All Natural Fruit."[6]  Dole has

20   moved separately to strike his declaration.[7]

21

22

23         [6] In his deposition given in the Bumble Bee case, Dr. Scarbrough admitted that consumer
24   behavior is beyond his expertise.  (Scarbrough Dep., 71:17-72:3 [Vetesi Decl. Ex. B].)

25         [7] Because Dr. Scarbrough's testimony consists entirely of legal conclusions it is
     inadmissible.  *See CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233
26   (E.D. Cal. 2005) (excluding the testimony of a proposed expert as to the meaning and application
     of the FCC's regulations because "expert testimony consisting of legal conclusions is generally
27   inappropriate").  The entire Scarbrough Declaration should be excluded.  (*See* accompanying
     Motion to Strike the Declaration of F. Edward Scarbrough.)

28

### 2. Plaintiff's "Deception" Theory Raises Myriad Individual Issues.

Even if there were a single meaning of "All Natural Fruit," Plaintiff cannot show that the materiality, reliance, and causation elements of his deception claim can be proven by common evidence. Plaintiff disagrees, and contends that "All Natural Fruit" is "likely to mislead" reasonable consumers and can be proven by classwide evidence. (Mot., 7:13-17; SAC ¶ 6.)

He is wrong again. At trial, Plaintiff must prove that the words "All Natural Fruit" are "likely to deceive." *Brazil v. Dole Food Co.,* 935 F. Supp. 2d 947, 962-63 (N.D. Cal. 2013) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 948 (9th Cir. 2008)). He must show that this can be proven by common evidence, such as a consumer survey. *See Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130-31 (N.D. Cal. 2000); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260-61 (C.D. Cal. 2003); *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407-08 (E.D. Cal. 1997) (consumer surveys needed to prove UCL deception).

Let's examine the evidence, starting with Mr. Brazil. He had never heard of ascorbic acid before this lawsuit. (Vetesi Decl. Ex. A, 107:15-17.) Likewise, he had never heard of the Sherman Law or considered Dole's labels misleading until he spoke to class counsel. (*Id.*, 10:1-10, 50:12-14.) This means that, prior to purchase, he cannot have relied on some technical understanding that "All Natural" was burdened with the meaning imparted by FDA's 1993 policy statement. (*Cf.* Montville Decl. ¶ 5 ("A reasonable consumer might rely on a common dictionary definition. It is doubtful that they would know, much less define, "natural" from the definitions used by "the federal government and its agencies" as suggested by the plaintiff's expert").)

Prior to purchase, Mr. Brazil read only the front label statement "All Natural Fruit" and not the back label or ingredient list. (Vetesi Decl. Ex. A, 24:14-25:4, 34:5-11 [frozen blueberries], 50:2-11 [mixed fruit in 100% fruit juice]; *see also id.*, 59:13-16, 73:10-12, 168:1-4.) As he put it, "I don't have the time." (*Id.*, 131:3-7.) As for materiality, he bought Dole because he was "brand loyal." (*Id.*, 174:17-23.) Price was never a factor. (*Id.*, 175:25-176:1.) Even after filing suit, he continued to buy Dole fruit products due to "convenience." (*Id.*, 219:16-24.) He stopped buying only about six months ago—almost 18 months after filing suit. (*Id.*, 143:8-23.)

1    Plaintiff offers the personal opinion of Dr. Julie Caswell that the statement "All Natural

2   Fruit" "would be material to a reasonable consumer."  (Caswell Decl. ¶ 27.)  Notably, Dr.

3   Caswell never spoke to Mr. Brazil.  She conducted no study to learn what Dole's customers

4   believed.  Her opinion is based on no facts related to this case.  If her opinion sounds generic and

5   mass-produced, that's because it is.  Dr. Caswell has given the same declaration—almost word-

6   for-word—in four other food misbranding cases that Mr. Brazil's attorneys have filed in this

7   district.  Only the caption and the counterpart to Paragraph 27 were changed.[8]  Dole has

8   separately moved to strike Dr. Caswell's declaration.[9]

9    Plaintiff also offers the testimony of Dr. Oral Capps, who says "it is *quite likely* that many

10   consumers would not have purchased the products in question but for the claims made on the

11   labels."  (Capps Decl. ¶ 7 (emphasis added).)  Nothing supports that contention.  Like Dr.

12   Caswell, Dr. Capps tendered the same declaration in four of class counsel's "misbranding"

13   cases.[10]  In *Twinings*, the only difference was an adjective: "Very" likely, not just "quite" likely.

14    All of this is made up.  Without real evidence of reliance, materiality, and causation that

15   can apply classwide, Plaintiff's real argument is that he doesn't need evidence, citing *In re*

16   *Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).  (Mot., 8:10-13 ("As long as Plaintiff relied … it

17   is not necessary to show reliance by absent class members")).)  Everyone else's reliance can be

18

19

20    [8] *See, e.g.,* Caswell Decl. ¶ 26 filed in *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-
01828-LHK, Dkt. No. 59-8 ("Reasonable consumers would rely on these statements in making
21   their purchases"); Caswell Decl. ¶ 26, filed in *Jones v. ConAgra Foods, Inc.*, No. 12-cv-02646,
Dkt. No. 128-1,  ("The labeling of the product as 100% Natural is material because reasonable
22   consumers would rely on this label"); and Caswell Decl. ¶ 27 filed in *Lanovaz v. Twinings N.*
*Am., Inc.*, No. CV12-02-02646-RMW, Dkt. No. 91-3 ("it is my opinion that the statements listed
23   in Paragraph 25 would be material to a reasonable consumer.").

24    [9] Because Dr. Caswell's testimony is not based on a scientific technique that can be tested,
subjected to peer review, or evaluated for potential error rate, it is inadmissible under Federal
25   Rule of Evidence 702.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993)
("[t]he subject of an expert's testimony must be 'scientific . . . knowledge.'")  Her declaration
should be excluded.  (*See* accompanying Motion to Strike the Declaration of Julie Caswell.)

26    [10] Dr. Capps has submitted nearly identical declarations in (i) *Ogden v. Bumble Bee*
*Foods, LLC*, Dkt. No. 59-7, (ii) *Jones v. ConAgra Foods, Inc.*, Dkt. No. 128-7, (iii) *Major v.*
27   *Ocean Spray Cranberries, Inc.*, No. 5:12-cv-03067-EJD, Dkt. No. 23-11; and (iv) *Lanovaz v.*
*Twinings N. Am., Inc.*, Dkt. No. 91-8.

28

1    presumed, he says, because the statements were material, and materiality is a given because

2    everyone got the same label.  (*Id.*, 9:28-10:2; 10:16-17.)  This is a carousel of circularity.

3         It is also wrong.  *Tobacco II* does not support Plaintiff's argument that proof of classwide

4    reliance is suspended.  *Tobacco II* was a pleading case; it tells us nothing about class certification.

5    The Supreme Court said so itself.  *Cf.* 46 Cal. 4th at 324.  The Ninth Circuit agrees.  In *Berger v.*

6    *Home Depot*, it held that "standing" is one thing; Rule 23 is another and has to be shown by

7    common proof.  *Tobacco II* notwithstanding, "the question of likely deception does not

8    automatically translate into a class-wide question."  *Berger*, 741 F.3d at 1068; *accord Tucker v.*

9    *Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 227 (2012) (*Tobacco II* did not "dispatch with an

10   examination of commonality when addressing a motion for class certification.") (citation

11   omitted); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009) (same); *Campion v. Old*

12   *Republic Home Prot. Co.*, 272 F.R.D. 517, 533 n.4 (S.D. Cal. 2011) (same).

13        The notion that classwide proof of reliance, materiality, and causation is suspended is just

14   Plaintiff's "illegal product" theory in disguise.  This Court has rejected that claim, including in

15   this case.  (*See* Order, 16:13-17 (Dkt. No. 76) ("Brazil's 'illegal product' theory fails as a matter

16   of law")); *see also Kane*, 2014 U.S. Dist. LEXIS 22258, at *22-23; *Ogden v. Bumble Bee Foods,*

17   *LLC*, No. 5:12-CV-01828-LHK, 2014 U.S. Dist. LEXIS 565, at *21-25 (N.D. Cal. Jan. 2, 2014);

18   *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236-LHK, 2014 U.S. Dist. LEXIS 19241, at *21-22

19   (N.D. Cal. Feb. 14, 2014).  The better question might be:  Why didn't Plaintiff cite *Kane*, *Ogden*,

20   and *Avoy* and this Court's earlier ruling?

21        His citation to *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) (*see*

22   Mot., 9:7-14, 10:2-8) shows how far he has strayed.  That case involved the presence of

23   androstenediol, a "Schedule III controlled substance," illegal to possess without a prescription.

24   Few would disagree that having an undisclosed illegal drug slipped into one's over-the-counter

25   nutrition supplement might be material.  That is not our case.  As this Court noted, "*Steroid*

26   *Hormone* was decided *prior* to the California Supreme Court's decision in *Kwikset* and the

27   alleged unlawful conduct in that case was not based on a statute prohibiting specific types of

28   misrepresentations."  *Kane*, 2014 U.S. Dist. LEXIS 22258, at *25-26.  In another food case

1    brought by Mr. Brazil's lawyers, Judge Orrick rejected it as "a far cry" from a food misbranding

2    case.  *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917, at

3    *19-20 (N.D. Cal. Oct. 4, 2013).[11]

4        A presumption of reliance is appropriate only if Plaintiff shows that there is "common

5    evidence as to what consumers perceived or what they would find material."  *In re Vioxx Class*

6    *Cases*, 180 Cal. App. 4th 116, 133 (2009) (affirming denial of class certification).  But "[i]f the

7    misrepresentation or omission is not material as to all class members, the issue of reliance 'would

8    vary from consumer to consumer' and the class should not be certified."  *Stearns v. Ticketmaster*

9    *Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012); *see also*

10   *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624-26 (S.D. Cal. 2007) (no presumed

11   reliance if some class members may not have seen or relied upon the alleged

12   misrepresentations).[12]

13       Plaintiff never shows how materiality can be proven on a classwide basis.  Instead he says

14   that he "*will* present evidence."  (Mot., 10:8-10 (emphasis added).)  A promise of evidence to

15   come later is not evidence.

16       Even Dr. Caswell agrees that causation raises individual questions:  "[W]hen making

17   buying decisions consumers consider a range of food quality attributes for which the amount and

18   timing of the information they have available to make their decisions varies."  (Caswell Decl.

19   ¶ 21.)  And "[c]onsumers receive product quality indicators and cues from a broad range of

20   extrinsic sources, including, for example, from labeling, price, and brand name."  (*Id.* ¶ 22.)  In

21   fact, when she was deposed in one of Plaintiff's counsel's other cases, she admitted that there is

22   variance from consumer to consumer regarding which label elements, if any, factor into the

23   purchase decision, and that any combination of factors (e.g., purchase price or brand name) may

24   

25       [11] Plaintiff also cites *Keilholtz v. Lennox Hearth Products, Inc.*, 268 F.R.D. 330, 343
     (N.D. Cal. 2010) (*see* Mot., 18:9-19), but *Keilholtz* confirms that a plaintiff must first show
26   materiality before a presumption of reliance arises.  He has not done that here.

27       [12] *See also, e.g., Faulk v. Sears Roebuck & Co.*, No. 11-CV-02159 YGR, 2013 WL
     1703378, at *9 (N.D. Cal. Apr. 19, 2013); *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 502-03 (C.D.
28   Cal. 2011); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667-68 (1993).

1   be material to a single consumer's decision to purchase.  (*See Major v. Ocean Spray Cranberries,*

2   *Inc.*, No. 5:12-CV-03067-EJD (N.D. Cal.), Dkt. No. 33-4, Newman Decl. Ex. B ("Caswell

3   Dep."), 100:10-25; 146:4-147:20.)

4          Dr. Caswell was right.  According to Dole's market research, customers buy packaged and

5   frozen fruit for a wide variety of reasons, and they choose Dole largely because of its consistent

6   quality and brand reputation.  (Spare Decl. ¶ 21.)  Consumers also care about the health benefits

7   of fruit generally.  Fruit Bowls, for example, are popular in children's lunches because they are

8   healthier than other snacks like chips and candy.  (*Id.*)  Dole has tested whether "natural"

9   statements on the label drive sales.  They do not.  Indeed, one market study ranked ███████

10  ████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ██████   (*Id.* ¶ 24.)

14         Where, as here, individual purchasing decisions vary, courts find that predominance is not

15  met.  *See, e.g., Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 WL 2424214,

16  at *4 (C.D. Cal. July 23, 2009) ("individualized purchasing inquiries" preclude predominance);

17  *Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG(ANx), 2008 WL 5381088, at *4-5 (C.D. Cal.

18  Sept. 22, 2008) (finding "there exists far too much variation in individual purchasing

19  experiences"); *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 565 (2011)

20  (materiality not subject to common proof because there are many different reasons class members

21  may have purchased the insurance policy at issue).

22              **3.      The Actual Evidence Refutes a Finding of Materiality or a Common
                          Understanding of "All Natural Fruit."**
23

24         Rather than guess, Dole decided to find out what actual Dole customers believed "All

25  Natural Fruit" meant.  Dole retained an expert, Dr. Kent Van Liere, who tested Plaintiff's

26  hypothesis.  Two groups of putative class members were shown the products, some with the

27  offending statement (test group) and others without (control group).  (Van Liere Decl. Ex. A.)

28

The results of Dr. Van Liere's study demolish Plaintiff's theory:

- **No materiality.**  When asked the message conveyed by the packaging, 69 percent of those who saw the "All Natural Fruit" labels did not mention "natural."  (*Id.* ¶ 33.)

- **No expectation of "natural" citric and ascorbic acid.**  When asked, most consumers in both groups identified citric acid and ascorbic as ingredients.  (*Id.* ¶¶ 35, 36.)  But only 13 percent of respondents in the test group believed the products contained "natural" citric acid and ascorbic acid.  (*Id.* ¶ 38.)

- **No causation.**  More importantly, respondents' beliefs about whether the ingredients were "natural" were not shaped by the "All Natural Fruit" statement.  The results were almost the same for the control group, with ten percent reporting the ingredients were "natural."  (*Id.* ¶¶ 39, 40.)

- **No substantial factor.**  At least 80 percent of respondents in the test group reported that their beliefs about the ingredients made them neither more nor less likely to buy the products.  Specifically, those who believed the ingredients were either natural or synthetic were asked whether that would influence their purchase decision, and those who did not have a belief as to whether they were natural, or did not identify the ingredients as being present, were asked whether the presence of the ingredients would influence their purchase decision.  Overwhelmingly, respondents did not care.  (*Id.* ¶¶ 42, 45 Table 4.)

Judge Hamilton cited another study by Dr. Van Liere in concluding that deception was not a common question where, as here, the defendant (Ben & Jerry's) provided survey evidence and plaintiff presented none.  *Astiana* v. *Ben & Jerry's Homemade, Inc.*, No. 10-cv-04387 PJH, 2014 U.S. Dist. LEXIS 1640, at *19 (N.D. Cal. Jan. 7, 2014); *see also Turcios v. Carma Labs., Inc.*, No. CV 12-8487-JGB (Ex), 2014 WL 323662, at *7 (C.D. Cal. Jan. 7, 2014) (rejecting commonality because "Defendant has put forth persuasive evidence that materiality and reliance is an individualized question;" evidence showed that "consumers' behavior varies even when there is common awareness of the alleged misrepresentation").

With results this lopsided, no wonder Mr. Brazil did not undertake a consumer survey.

1   **E.      Plaintiff Cannot Show Classwide Entitlement to Monetary Relief.**

2        Plaintiff must provide a model for calculating remedies that comports with substantive

3   law and is "susceptible of measurement across the entire class for Rule 23(b)(3) purposes."

4   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  He cites Dr. Oral Capps, who offers

5   three models.  (Mot., 19:11-12.)  None of the three satisfies *Comcast*.

6        **1.      Two Courts, Including this One, Have Rejected Dr. Capps' Models.**

7        Dr. Capps has submitted the same generic declaration in class counsel's other

8   "misbranding" cases, but to date no court has accepted it.  Two have rejected it.

9        This Court rejected Dr. Capps' declaration in *Ogden*, 2014 U.S. Dist. LEXIS 565, at *52-

10  53.  His *Ogden* submission was nearly identical to his declaration here; only the caption and the

11  defendant's name changed.  (*Compare* Capps Decl. (Dkt. No. 101-9) *with Ogden*, Dkt. No. 59-7.)

12  As this Court said: "Dr. Capps' opinion, even if admissible, does not provide sufficient evidence

13  to support [plaintiff's] claim for restitution."  *Ogden*, 2014 U.S. Dist. LEXIS 565, at *53 n.15.

14       The court in *Kotteras v. Whole Foods Market, Inc.*, 281 F.R.D. 16 (D.D.C. 2012) also

15  rejected Dr. Capps' opinion: "[T]he proposed methodology of Plaintiffs' expert is too vague for

16  the Court to rigorously analyze."  *Id.* at 18.  Dr. Capps' "assurance that [he] intend[ed] to meet

17  the requirements [of Rule 23]" was not enough.  *Id.* at 25-26 (citation omitted).

18       **2.      All Three Damages Models Fail.**

19            **a.      Plaintiff's "Restitution" Model Fails as a Matter of Law.**

20       Even if Dr. Capps were writing on a clean slate, his opinions are not up to the task.  He

21  offers a restitution model built on the false legal premise that "restitution is the return of the

22  purchase price."  (Capps Decl. ¶ 8.)  He is wrong for two reasons.

23       First, he is wrong legally.  The proper measure of restitution is "price premium," not

24  return of the full purchase price.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 (2011)

25  (economic loss to a consumer who relies on a misleading label is the difference between the

26

27

28

1    product "as labeled" and the product "as it actually is").[13]  As this Court ruled in *Ogden*, "a claim

2    for restitution requires that Ogden also present evidence of the difference in value between what

3    she spent and what she received."  *Ogden*, 2014 U.S. Dist. LEXIS 565, at *51.  "Ogden must

4    present additional evidence of the value of Bumble Bee's products without the allegedly unlawful

5    label statements in order to obtain restitution."  *Id.*, at *51-52 (citing *Ries I*, 287 F.R.D. at 532).[14]

6           <u>Second</u>, Dr. Capps is wrong on the facts and the evidence.  He never even spoke to Mr.

7    Brazil.  If he had, he would know that Mr. Brazil was asked whether he paid a premium because

8    of the label statement, and that Mr. Brazil answered "I don't believe that that was the case."

9    (Vetesi Decl. Ex. A, 218:6-10.)  He would also have learned that Mr. Brazil believes the products

10   "are worth what I paid for them, at the very least."  (*Id.*, 212:3-5.)  He would have discovered that

11   price was never a factor (*id.*, 175:25-176:2) because Mr. Brazil was brand loyal to Dole (*id.*,

12   174:17-23), and any premium was not because of the words "All Natural Fruit" but because

13   "name brands do cost more."  (*Id.*, 216:16-23; *see also* 217:12-218:10.)  He kept no receipts (*id.*,

14   222:16-22) and he cannot name any Dole competitors.  (*Id.*, 189:1-8.)

15          Dr. Capps offers nothing different than what he presented in *Ogden*.  Offered in support of

16   class certification, that declaration was rejected by this Court as inadequate:

17                  Dr. Capps did not estimate the price premium associated with
                    Bumble Bee's label statements.  Rather, Dr. Capps merely stated
18                  that he *could* provide such an estimate and offered a general
                    description of several methods he might use to do so.  Capps Decl.
19                  ¶¶ 12-17.  Standing alone, this description of methodology is not

20   ────────────────────

21          [13] Many other cases hold that price-premium is the only proper measure of restitution, not
     return of the purchase price.  *See, e.g., Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th
     663, 700 (2006); *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 174 (2000)
22   (restitution is "the excess of what the plaintiff gave the defendant over the value of what the
     plaintiff received"); *In re First Alliance Mortg. Co.,* 471 F.3d 977, 997 (9th Cir. 2006) (restitution
23   is not the total sum plaintiff paid); *In re Facebook, Inc., PPC Advert. Litig.,* 282 F.R.D. 446, 461
     (N.D. Cal. 2012) ("plaintiffs must be able to prove, for each class member, the difference
24   between what the plaintiffs paid and the value of what the plaintiffs received"); *In re Vioxx Class
     Cases*, 180 Cal. App. 4th at 131; *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (C.D. Cal. 2013);
25   *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. Nov. 27, 2012) ("*Ries I*").

26          [14] Notably, Dr. Capps admitted in *Jones v. Conagra* that a "full refund" model has "no
     correlation to any economic injury attributable to the challenge [sic] [label statement]."  (No. 12-
27   cv-01633-CRB, Dkt. No. 151-5, at 102:8-15.)  He proposed it only because class counsel told him
     that full was the correct measure because the food products are "legally worthless."  Dr. Capps
28   does not agree that a label infraction renders the products worthless.  (*Id.*, at 91:5-92:17.)

1

> evidence of the proper amount of restitution in this case.
> Furthermore, although the Capps Declaration intimates that Dr.
> Capps intends to calculate the proper amount of restitution at some
> point in the future, *see id.*, Dr. Capps apparently has yet to do so….

*Ogden,* 2014 U.S. Dist. LEXIS 565, at *52-53.

The same is true here.  Dr. Capps did no analysis.  As in *Ogden,* he merely says he could. (Capps Decl. ¶¶ 14-15.)[15]  "I will figure it out later" is not evidence.

### b.   Plaintiff's "Disgorgement" Model Fails for The Same Reason.

Dr. Capps also offers a disgorgement theory, namely, "return of the Defendant's net profit from the sale of the misbranded products."  (Capps Decl. ¶ 8.)  In *Ogden*, this Court rejected that theory for the same reason it rejected his restitution theory.  *Ogden*, 2014 U.S. Dist. LEXIS 565, at *54.  He offers the same model here.  It is no better the second time around.

### c.   Plaintiff's "Price-Premium" Model Flunks *Comcast*.

Dr. Capps attempts to identify comparable products and he settles upon two private-label "store brands":  "Safeway Kitchen Mandarin Oranges" (comparable to Dole's Mandarin Oranges) and "Great Value Fruit Cocktail Packed in 100% Juice," "Great Value Fruit Cocktail Packed in Water (No Sugar Added, Artificially Sweetened)," and "Great Value Fruit Cocktail in Heavy Syrup" (comparable to Dole's Tropical Fruit in Light Syrup and Passion Fruit Juice).  (*See* Capps Decl. ¶¶ 14, 15.)  He is wrong that these are comparable.[16]

First, he cannot have read the deposition of Dole's Vice President of Marketing, David Spare.  If he had, he would know that Dole's competitors in the fruit cup and canned fruit market are Del Monte and various private label store brands.  In the frozen fruit market, Dole primarily competes with private label and small regional brands.  (Spare Decl. ¶ 5.)

---

[15] In *Guido v. L'Oreal, USA, Inc*., Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013), plaintiffs sought class certification and argued that they *could* adduce expert testimony, but had not.  Citing *Comcast*, the court denied the motion:  "[B]ecause plaintiffs have not submitted expert testimony . . . they have not met their burden of demonstrating that common questions predominate."  *Id.*  Here, the same chasm separates Plaintiff's rhetoric and evidence.

[16] In addition to the other problems with Dr. Capps' analysis, Mr. Brazil only bought Dole's canned Tropical Fruit (SAC ¶ 2(h)). He did not buy Dole's Mandarin Oranges.  (*Id.* ¶ 2.) If the Court were to accept that Mr. Brazil cannot sue over products not purchased (*see* Part III.B., above), Dr. Capps' comparison to the Safeway store brand becomes irrelevant.

He would also know that private labels are not comparable (a fact even Mr. Brazil admits) because Dole has higher specifications.  The private label products, by contrast, emphasize low price over quality.  For example, Dole allows fewer broken pieces of oranges and has piece-size uniformity standards that private labels typically do not have.  (*Id.* ¶ 6.)  Moreover, the Safeway Kitchen Mandarin Oranges product is packed in water, while Dole's Mandarin Oranges are packed in 100% juice.  (*Id.* ¶ 7.)  Dole's Mandarin Oranges are more expensive because of the higher costs associated with Dole's high quality products.  (*Id.*)  Also, Dole advertises its products, while private labels do not.  Thus, Dole spends significant money on advertising, coupons, and promotions, while private labels do not have these additional expenses.  (*Id.*)

As for the "Great Value" products, "fruit cocktail" is a different product altogether than Dole's "tropical fruit."  (*Id.* ¶ 8.)  Fruit cocktail contains cherries, grapes, peaches, pears, and pineapple, whereas tropical fruit contains more expensive fruits like red and yellow papaya.  Again, Dole's Tropical Fruit product has higher specifications, so the fruit is of better quality.  It is also packed in passion fruit juice and light syrup, so the packing medium is more expensive than the water or juiceless syrup used in the "Great Value" products.  (*Id.*)[17]

The absence of true comparables is fatal.  In *Astiana v. Ben & Jerry's*, plaintiff offered a similar vague promise to calculate a price-premium later, using sales and pricing data.  2014 U.S. Dist. LEXIS 1640, at \*30-31.  That was not enough: "plaintiff has provided no damages evidence" and no "damages model that is capable of measurement across the entire class."  *Id.*, at \*40.  Specifically, the plaintiff "has not offered any expert testimony demonstrating that the market price of Ben & Jerry's ice cream with the 'all natural' designation was higher than the market price of Ben & Jerry's without the 'all natural' designation," and the plaintiff did not demonstrate "a gap between the market price … and the price it purportedly should have sold for."  *Id.*, at \*39.

---

[17] Dr. Capps did not identify comparable products for the other eight products, but he promises he can figure this out later.  (*See* Capps Decl. ¶ 17.)  No he can't.  Dole's frozen "Wildly Nutritious Signature Blends Mixed Fruit" is unique.  There are no other frozen fruit blends with the same types of fruit.  (Spare Decl. ¶ 9.)

1    <u>Second</u>, Rule 23 cannot be satisfied if a damages expert "has done nothing to confirm that

2    his proposed approaches would be workable in [a given] case." *Weiner v. Snapple Beverages*

3    *Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *8 (S.D.N.Y. Aug. 5, 2010).  Here, Dr.

4    Capps must not have talked to Mr. Brazil.  He also cannot have examined Dole's pricing.  If he

5    had, he would know that Dole uses "line-pricing," which means that its products are priced the

6    same regardless of what the labels say.  (Spare Decl. ¶ 13.)  ███████████████████████

7    ██████████████████████████████████████    (*Id*. ¶ 14.)

8        In *Weiner*, Snapple's use of line pricing was compelling evidence of no premium:

9            Snapple's wholesale list prices for its "All Natural" beverages, diet
             beverages with artificial sweeteners, and unsweetened iced tea
10           drinks, are uniform.  Because Snapple "line prices" its beverages,
             wholesale list prices are based on the size of the bottle and the
11           number of bottles in a package, not on whether the beverage is
             labeled "All Natural."  Consistent with this practice, Snapple's
12           price lists to its distributors, and the distributors' price lists to
             retailers, indicate no price differences between Snapple's "All
13           Natural" beverages and its diet beverages of the same size and
             package.
14

15   2010 WL 3119452, at *10 n.19.  Judge Wu was even more emphatic.  He doubted whether price-

16   premium could ever be shown where a defendant uses line-pricing.  *Red v. Kraft Foods, Inc.*, No.

17   CV 10-1028-GW (AGRx), 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) ("[P]rice

18   differences at the vast array of retail establishments that sell the Products" precludes finding a

19   premium).

20       <u>Third</u>, all of this is hocus-pocus.  Dr. Capps is talking about *retail* prices.  Dole does not

21   sell retail.  (Spare Decl. ¶ 11.)  It does not set retail prices.  (*Id*. ¶ 12.)  Retailers do.  How does

22   Dr. Capps explain how a higher *retail* price—even if it could be shown—could be laid at Dole's

23   doorstep?  What damages model consistent with *Comcast* says that Dole must disgorge *retail*

24   revenue that it never received?  Dr. Capps never says.

25                     **d.      The Regression and "Average Price" Models Flunk *Comcast*.**

26       Dr. Capps also proposes using a regression analysis to isolate the many variables bearing

27   on pricing and to estimate the percentage of sales attributed to the offensive phrase.  (Capps Decl.

28   ¶¶ 18, 19.)  He claims he can use "scanner data" to capture various pricing data points for a given

1    product at a specific store and day (*id.* ¶ 10) and, from this, calculate a "weighted average price"

2    to be applied to all class members (*id.* ¶ 11) and an average premium paid.  (*Id.* ¶ 15.)  For his

3    regression analysis, he will use additional estimates of consumers' "income, [the] population, and

4    food prices in general" (*id.* ¶ 21), to arrive at an "estimated percentage" of sales attributed to the

5    offending label phrase "All Natural Fruit."  (*Id.* ¶ 23.)  Again, this suffers from several problems.

6    First, it raises inherently individual issues.  In *Kotteras*, Dr. Capps' declaration was

7    rejected, in part, because he undermined his opinion by admitting that calculating damages in this

8    manner would "require[] individualized evidence such as receipts, credit card records, and

9    scanner data capturing customer transactions."  281 F.R.D. at 25-26.  The same is true here.

10   In *Ries I*, Judge Seeborg denied certification of a monetary damages class because

11   "individualized awards of monetary restitution [] would require individualized assessments of

12   damages based on how many products the class member had bought."  *Ries I*, 287 F.R.D. at 541;

13   *see also Astiana v. Ben & Jerry's*, 2014 U.S. Dist. LEXIS 1640, at *39-40 (same).  And in *Red*,

14   the court denied certification finding that "memory issues as to what products were purchased

15   where and in what quantities, as well as price differences" require individual determinations.

16   2012 WL 8019257, at *11; *accord Hodes*, 2009 WL 2424214, at *4 (individual damages issues

17   predominate, including how much each class member spent.)

18   It is no answer to airbrush away these differences with statistics.  Establishing a higher

19   price for a comparable product would be "a difficult task" because prices "in the retail market

20   vary widely and are affected by the nature and location of the outlet in which they are sold, and

21   the availability of discounts, among many other factors."  *Weiner v. Snapple Beverage Corp.,* No.

22   07 Civ. 8742(DLC), 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011); *see also Astiana v. Ben &*

23   *Jerry's*, 2014 U.S. Dist. LEXIS 1640, at *39-40.

24   Second, *Comcast* teaches that while damages models need not be exact, the proposed

25   methodology must measure only those damages attributable to the theory of liability.  133 S. Ct.

26   at 1433.  Any remedy based on "average" retail prices "would inevitably alter defendants'

27   substantive right to pay damages reflective of their actual liability."  *Cf. McLaughlin v. Am.*

28   *Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d

770, 774-75 (7th Cir. 2013) (rejecting "representative" evidence to calculate damages and affirming decertification of class).  Even Dr. Capps agrees: "from an economic standpoint, in order to carry out restitution, there would have to be some sort of proof of purchase.  Otherwise, some consumers would be inappropriately compensated."  (Capps Dep., *Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, Dkt. No. 151-5, at 93:15-94:2.)

Any viable damages model has to ensure that Dole will not be taxed for factors having nothing to do with the label infraction.  *Comcast*, 133 S. Ct. at 1433.  Yet, Dr. Capps cannot isolate the price differences resulting from the allegedly actionable label words from non-actionable reasons such as higher costs of fruit, higher quality standards, or the differences in price between brand and private-labels.  It is far more likely that these explain any price differences, and not differences resulting solely from the words "All Natural Fruit."

Third, "[a] class cannot be certified if it contains members who lack standing." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013) (applying *Comcast* and reversing certification where plaintiff failed to identify common evidence of a class-wide injury) (citation omitted); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (a class must be "defined in such a way that anyone within it would have standing"); *accord Kotteras*, 281 F.R.D. at 23 ("a class should not be certified if it is apparent it contains a great many persons who have suffered no injury at the hands of the defendant") (citation omitted).

These are not problems for statistics.  These involve differences inherent in the individualized nature of the claim and remedy.

### 3.    The Actual Evidence Shows That No One Paid a Premium.

Dr. Capps claims to have identified a before-and-after product in which the label did not say "All Natural Fruit" but was later changed in 2008.[18]  (Capps. Decl. ¶ 22.)  In fact, while the price for that product did increase, the reason had nothing to do with the label change. ███

████████████████████████████████████████████████

---

[18] The graphics for the new label are dated September 29, 2008, but Dole considers the label the 2009 version.

1   ██████      Label changes were not factored into pricing considerations.  (Spare Decl. ¶ 18.)

2          A better example is Dole's frozen blueberries.  "All Natural" was added to the label in

3   2009.  But the price did not change.  It was the same both before and after the label change.

4   ██████████████████████████████████████████, Dole did not raise its

5   wholesale price for the product.  (*Id*. ¶ 19.)

6          **F.      The Court Should Deny Plaintiff's "Rule 23(b)(2)" Injunction Class.**

7          Plaintiff separately seeks an injunction-only class.  (Mot., 15:12-16:18.)  But to certify a

8   class under Rule 23(b)(2), Plaintiff must prove that monetary relief is merely "incidental to the

9   injunctive or declaratory relief."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).

10  Put differently, Rule 23(b)(2) "does not authorize class certification when each class member

11  would be entitled to an individualized award of monetary damages."  *Id.*; *accord Brazil v. Dell*

12  *Inc.*, No. C-07-01700-RMW, 2010 WL 8816312, at *4 (N.D. Cal. Mar. 29, 2010) (monetary

13  damages claim was not secondary to injunctive relief claim); *Ewert v. eBay, Inc.*, No. C-07-02198

14  RMW, 2010 WL 4269259, at *5 (N.D. Cal. Oct. 25, 2010) (same).

15         Here, if Plaintiff prevails, "each class member would be entitled to an individualized

16  award of monetary damages."  Plaintiff cannot escape this; it is the task to which Dr. Capps'

17  energies have been committed.  (Mot., 19:9-21:15.)  Thus, monetary relief is not "merely

18  incidental" to injunction; it dominates.  (SAC, 57:1-13.)

19         Plaintiff never cites *Wal-Mart*.  Instead, he cites *Ries I*, 287 F.R.D. 523.  (*See* Mot., 15:23-

20  16:2.)  But in *Ries I*, Judge Seeborg certified a "(b)(2)" class only after *rejecting* plaintiffs' claims

21  for monetary relief.  Then, five months later, he decertified even the "(b)(2)" class—an awkward

22  fact that Plaintiff fails to mention.  *Cf. Ries v. Ariz. Beverages USA LLC*, No. 10-01139 RS, 2013

23  U.S. Dist. LEXIS 46013, at *24-27 (N.D. Cal. Mar. 28, 2013).

24         There is another problem.  Mr. Brazil stopped buying Dole products six months ago.

25  (Vetesi Decl. Ex. A, 143:8-23.)  In *Schulken v. Washington Mutual Bank*, No. 09-CV-02708

26  LHK, 2012 WL 28099, at *5 (N.D. Cal. Jan. 5, 2012), this Court held that former bank borrowers

27  were not adequate to sue for injunction and declaratory relief because they "indicated that they

28  have no plans and no desire to return to [Bank] as HELOC customers."

1

### G.     The Court Should Deny Plaintiff's Request for a Nationwide Class.

2   Mr. Brazil wants to sue on behalf of a nationwide class of consumers.  That would violate

3   *Mazza v. American Honda Motor Co.* 666 F.3d 581, 581 (9th Cir. 2012).  Both Mr. Brazil and

4   Dole are California residents. (SAC ¶¶ 15, 17.)  He seeks to export his claims under California's

5   consumer protection statutes (UCL, CLRA, and FAL) to a nationwide class of consumers.  (Mot.,

6   i:10-12.)  Under *Mazza*, however, "each class member's consumer protection claim should be

7   governed by the consumer protection laws of the jurisdiction in which the transaction took place."

8   666 F.3d at 594.

9   In *Kowalsky v. Hewlett-Packard Co*., No. 5:10–cv–02176–LHK, 2012 WL 892427 (N.D.

10   Cal. Mar. 14, 2012), plaintiff sought to certify a nationwide class against Hewlett-Packard, a

11   California company, arising from its "8500" printers. This Court held that *Mazza* "precludes the

12   certification of a nationwide class asserting claims under the UCL and CLRA."  *Id.*, at *7.

13   *Mazza* is controlling and *Kowalsky* is indistinguishable.  Numerous other cases are to the

14   same effect.[19]  The Court should deny Mr. Brazil's nationwide class.

15   ## IV.     CONCLUSION

16   For all these reasons, the Court should deny Plaintiff's motion for class certification.

17   Dated:  March 6, 2014               WILLIAM L. STERN
                                         CLAUDIA M. VETESI

18                                       KATHLEEN B. RONEY
                                         LISA A. WONGCHENKO

19                                       MORRISON & FOERSTER LLP

20                                       By:   */s/ William L. Stern*
                                              WILLIAM L. STERN

21
                                         Attorneys for Defendant
22                                       DOLE PACKAGED FOODS, LLC

23   _____

24   [19] *See, e.g., Banks v. Nissan N. Am., Inc*., No. C 11-2022-PJH, 2012 U.S. Dist. LEXIS
      37754, at *3 (N.D. Cal. Mar. 20, 2012) (dismissing nationwide class asserting claims under
25   California consumer protection statutes based on *Mazza*); *Frezza v. Google Inc*., No. 5:12-cv-
      00237-RMW, 2013 WL 1736788, at *5-8 (N.D. Cal. Apr. 22, 2013) (same);  *Littlehale v. Hain
26   Celestial Grp., Inc*., No. C 11-6342 PJH, 2012 WL 5458400, at *2 (N.D. Cal. July 2, 2012)
      (same); *Koehler v. Litehouse, Inc*., No. CV 12-04055 SI, 2012 WL 6217635, at *7 (N.D. Cal.
27   Dec. 13, 2012) (same); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F.
      Supp. 2d 942, 965 (S.D. Cal. 2012) (same); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW,
28   2012 WL 2847575 at *3-4 (N.D. Cal. July 11, 2012) (same).