1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  Telephone:  (408) 429-6506
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com

5  Charles Barrett
   CHARLES BARRETT, P.C.
6  6518 Highway 100
   Suite 210
7  Nashville, TN 37205
   (615) 515-3393
8  charles@cfbfirm.com

9  *Attorneys for Plaintiff*

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14

15  CHAD BRAZIL, individually and on behalf of        Case No. 12-cv-01831 (LHK)
    all others similarly situated,
16                                                    **PLAINTIFF'S OPPOSITION TO**
                        Plaintiff,                    **DEFENDANT'S MOTION TO STRIKE**
17                                                    **DECLARATION OF DR. JULIE**
    v.                                                **CASWELL**
18
    DOLE PACKAGED FOODS, LLC,                          Hearing Date:   April 17, 2014
19                                                     Time:           9:00 am
                        Defendant.                     Judge:          Hon. Lucy H. Koh
20                                                     Action Filed:   April 11, 2012

21

22          Plaintiff Chad Brazil, by and through counsel, hereby files his opposition to Defendant's

    motion to strike the expert declaration of Dr. Julie Caswell.
23
                                     **INTRODUCTION**
24
            Dr. Julie Caswell is a well-renowned and credentialed expert in economics, particularly
25
    focusing her research and expertise on fields concerning the economics of labeling domestic food
26
    systems. In the instant cause, Plaintiff submitted with his motion for class certification Dr.
27
    Caswell's declaration opining—based on her vast expertise—that Dole Packaged Foods, LLC's
28

("Dole" or "Defendant") misbranding statement "All Natural Fruit" is material to consumers.

Defendant's motion to strike Dr. Caswell's declaration provides a cursory request seeking to trivialize Dr. Caswell's vast expertise. Albeit, Dr. Caswell's analysis is fully developed and based on her vast economic research and analysis of food systems and labeling of products, and Defendant's motion, thus, is left to speak in mere hyperbole referencing inapposite bullet points of expert opinion case law, without explanation of how it applies here. Further, Defendant's untenable position would also require this Court to ignore well-settled Ninth Circuit law holding 1) that a full *Daubert* analysis is improper at the class certification stage and 2) that regulated label statements are material.

Even assuming *arguendo Daubert* applied at this stage, Dr. Caswell's opinion is *Daubert* proof and provides a reliable mechanism through which this Court and future fact-finders can analyze Dole's improper labeling conduct. Dole's attempt to discredit Dr. Caswell's opinion falls well short and the motion must be denied.

## DR. CASWELL'S BACKGROUND AND EXPERTISE

Dole references Dr. Caswell's opinion as if it was that of a food novice opining on the economics and impacts of labeling conduct on domestic food systems. To the contrary, the Court here is assured that the opinions proffered are of a renowned expert analyzing the impacts upon consumers of label statements made by Dole, and the reasons Dole makes those statements.

Dr. Caswell received her Ph.D. in the field of Agricultural Economics and Economics from the University of Wisconsin in 1984. (Dkt. 101 at *curriculum vitae*). Throughout her career, Dr. Caswell has been routinely acknowledged as a preeminent scholar in her field of analysis of food systems and labeling, and her *curriculum vitae* is replete with professional positions, awards, national academy positions and peer reviewed scholarly articles focusing on the field of food system economical analysis, which is the field in which she is here proffered as an expert. (Dkt. 101-5 at ¶ 2 and at C.V. 1-3 and 8-34).

Dr. Caswell's research focuses on how markets for quality attributes such as nutrition operate. The operation of markets for quality includes several elements. (Dkt. 101-5). First is the supply side of the market: the choices of companies to supply products, their choice of the levels

of quality attributes (e.g., food safety, nutrition, process) included in the product, and their choices of communication on quality (including package labeling). (*Id.*). Second is the information environment for consumer choice, including whether quality attributes can be effectively judged by consumers (i.e., whether they are search, experience, or credence attributes) and how communication, including labeling, affects the information environment. (*Id.*). Third is how consumers perceive and use information on quality to make purchase decisions. (*Id.*).

Dr. Caswell's research focuses on the first two elements. She is an expert in the supply side of the market for nutritional quality—in particular the use of nutritional labeling by companies—and the role of information in markets for quality.

Dr. Caswell has completed numerous studies and peer reviewed articles pertinent to the issues at hand.

Dr. Caswell's expertise on the market for nutritional quality includes extensive analysis of change in product offerings as a result of the implementation of the Nutrition Labeling and Education Act such as:

- Caswell, Julie A., Yumei Ning, Fang Liu, and Eliza M. Mojduszka. 2003. The Impact of New Labeling Regulations on the Use of Voluntary Nutrient Content and Health Claims by Food Processors. *Journal of Public Policy and Marketing* 22(2):147-158.

- Mojduszka, Eliza M., Julie A. Caswell, and J. Michael Harris. 2001. Consumer Choice of Food Products and the Implications for Price Competition and Government Policy. *Agribusiness* 17(1):81-104.

- Mojduszka, Eliza M. and Julie A. Caswell. 2000. A Test of Nutritional Quality Signaling in Food Markets Prior to Implementation of Mandatory Labeling. *American Journal of Agricultural Economics* 82(May):298-309.

- Caswell, Julie A. and Eliza M. Mojduszka. 1996. Using Informational Labeling to Influence the Market for Quality in Food Products. *American Journal of Agricultural Economics* 78(December):1248-1253.

- Caswell, Julie A. 1992. Current Information Levels on Food Labels. *American Journal of Agricultural Economics* 74(5):1196-1201.

The following work by Dr. Caswell is particularly pertinent to her knowledge of the analysis of the role of information on other quality attributes on food markets:

- Joseph, Siny, Nathalie Lavoie, and Julie A. Caswell. 2014. Implementing COOL: Comparative Welfare Effects of Different Labeling Schemes. *Food Policy* 44:14-25.

- Caswell, Julie A. and Sven Anders. 2011. Private vs. Third Party vs. Government Labeling. In *The Handbook of the Economics of Food Consumption and Policy*, ed. Jayson Lusk, Jutta Rosen, and Jason Shogren, pp. 472-498. Oxford, United Kingdom: Oxford University Press.

- Johnecheck, Wendy A., Parke E. Wilde, and Julie A. Caswell. 2010. Market and Welfare Impacts of COOL on the US-Mexican Tomato Trade. *Journal of Agricultural and Resource Economics* 35 (3):503-521.

- Grolleau, Gilles and Julie A. Caswell. 2007. Interaction Between Food Attributes in Markets: The Case of Environmental Labeling. *Journal of Agricultural and Resource Economics*. 31 (3): 471-484.

- Fetter, T. Robert and Julie A. Caswell. 2002. Variation in Organic Standards Prior to the National Organic Program. *American Journal of Alternative Agriculture* 17(2):55-74.

- Caswell, Julie A. and Daniel I. Padberg. 1992. Toward a More Comprehensive Theory of Food Labels. *American Journal of Agricultural Economics* 74(2):460-468.

Dr. Caswell's work with the National Academies on the role of information in food markets includes:

| 2005-06 | Member of the National Academy of Sciences, Institute of Medicine, Committee on *Nutrient Relationships in Seafood: Selections to Balance Benefits and Risks*. Report *Seafood Choices: Balancing Benefits and Risks*, National Academies Press, 2007. http://books.nap.edu/catalog/11762.html |

| 2005-06 | Member of the National Academy of Sciences, Institute of Medicine, Committee on *Nutrient Relationships in Seafood: Selections to Balance Benefits and Risks*. Report *Seafood Choices: Balancing Benefits and Risks*, National Academies Press, 2007. http://books.nap.edu/catalog/11762.html |

## DR. CASWELL'S OPINIONS

Dr. Caswell's opinion is that:

[Dole's] statements [complained of by Plaintiff of "All Natural Fruit"] would be material to a reasonable consumer…because reasonable consumers would rely on [the] label to identify products that are natural and in comparison shopping between food products. Because the label statements are material, it is particularly important that the statements be accurate and understandable to the reasonable consumer. (Dkt. 101-5 at ¶ 27).

Dr. Caswell's declaration provides a thoroughly detailed analysis of the basis for her opinion, which is based on her extensive research and expert background. (*See generally* Dkt. 101-5). To formulate her opinion, Dr. Caswell "relied on [her] education and experience as well as the FDA labeling regulations, the Seconded Amended Complaint and pictures of the labels on the product Plaintiff purchased." (*Id.* at ¶ 5).

Dr. Caswell explains that "[f]rom an economic perspective, a good consumer decision is one where the consumer can effectively select the product with the quality characteristics desired," and, given this necessity, false or misleading label statements deprive consumers of this ability and thereby harm consumers (*Id*. at ¶¶ 6, 10-14). Such is because consumers rely on food attribute label statements. (*Id*. at ¶14).

Through her knowledge of economic and labeling practices and effects, Dr. Caswell's opinion explains why food manufacturers—here Dole—engage in unlawful food labeling. Dr. Caswell's opinion explains the answer to the otherwise perplexing question, "Why would food manufacturers break the law by mislabeling their products?" The answer is that those food manufacturers use false or misleading labeling to modify consumers' purchasing decisions, thereby gaining a competitive advantage over others, increasing sales volumes and revenues, and often resulting in the manufacturer's ability to charge a premium for its product. (*Id*. at ¶¶ 7 and 11).

Government regulation of food labeling is intended to curb food manufacturer's ability to gain that improper benefit at consumer's expense. (*Id*. at ¶ 7-9). Legislatures recognize this harm to consumers caused by misbranding, and it particularly provides great benefits for consumers concerning food attribute claims a consumer is not otherwise able to discern as truthful or not (e.g., is the product natural or not). (*Id*. at ¶¶ 22-24).

Dr. Caswell's declaration takes those well-accepted economic principles and applies them to the specific unlawful statements Dole makes. First, Dr. Caswell explains that while consumers rely on statements concerning attributes of food, food attributes are not one in the same. Rather, there are three categories of food attributes, "search," "experience" and "credence" attributes, with the distinction among those attributes focusing on the ability of the consumer to recognize the availability, quality or truth of the purported attribute before, during and/or after purchase and use. (*Id*. at ¶¶17-20).

Dr. Caswell's opinion fully explains that as concerns "credence attributes" (those of which a consumer cannot tell, even after use, whether or not the attribute exists as stated on the label), consumers who buy the product based on incorrect or misleading information are harmed, and

1  they are also not able to correct their purchasing practice (e.g., they will continue to be misled

2  into the purchase) because of their inability to discern the truth or not of the label attribute claim.

3  (*Id*. at ¶¶ 23-24).

4        Dr. Caswell explains that Dole's "natural" label statements are such "credence

5  statements," upon which consumers rely and through which consumers are harmed. (*Id*. at ¶¶ 25-

6  26). The veracity of those label statements is not discernible to consumers, and government

7  regulation is aimed at assuring consumers have reliable information to make their decisions. (*Id*.).

8                                    **ARGUMENT**

9        **A.   Summary of the Argument**

10       *Daubert* does not apply to declarations submitted in support of class certification, and

11  Defendant's motion is thus improper on its face. Dr. Caswell's opinion is probative to this cause

12  and should be allowed.

13       To the extent the Court deems *Daubert* analysis proper, Dr. Caswell's opinion is one from

14  a reliable expert in the field of economics applying her knowledge of food labeling and related

15  consumer conduct. It survives such a *Daubert* scrutiny. It also follows and is consistent with well-

16  settled California legal principles.

17       **B.   *Daubert* is Inapplicable.**

18       Expert declarations are not subject to a rigorous *Daubert*-type analysis at the class

19  certification stage. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (holding

20  that the district court had correctly applied the evidentiary analysis for class certification). On that

21  appeal, the Ninth Circuit upheld the district court's class certification analysis, which merely

22  asked if the expert declarations submitted were "useful" or probative to the class certification

23  issue, and the district court did not apply a *Daubert* analysis. *Ellis v. Costco Wholesale Corp.*

24  ("*Ellis I*"), 240 F.R.D. 627, 635-36 (N.D. Cal. 2007) (at the early class certification stage, the

25  gatekeeping function of the court is not required, but the court should simply ask if the evidence

26  is "useful in evaluating whether class certification requirements have been met.").

27       Dr. Caswell's declaration is clearly useful to the Court's analysis of whether the

28  procedural requirements for class certification are met. Dr. Caswell's declaration assists the Court

1   in two important aspects concerning materiality of the label statements. It is well-settled that

2   reliance on such a material statement is imputed to the class such as to satisfy certification

3   criteria.

4          The California Supreme Court resolved in *In regards to Tobacco II* the then lingering

5   question of "who" need have relied on a label statement for class certification purposes (e.g., just

6   the named plaintiff or her and the class). *In re: Tobacco II Cases*, 46 Cal. 4th 298, 306, 313

7   (2009). That Court held that only the named plaintiff, and not the absent class members, need

8   show reliance where the statement at issue is material. *Id.*

9          Accordingly, Dr. Caswell's declaration meets the required standard of being useful to the

10  Court to resolve this class certification issues.

11         First, Dr. Caswell—through her application of her well-credentialed studies—

12  demonstrates that Dole's label statements at issue are material because they are material to Dole.

13  Dr. Caswell details that food manufacturers utilize labels to advertise purported food attributes to

14  gain competitive advantages over competitors and to increase demand among consumers for its

15  products. The label statements are, thus, material to Dole, since the economically advantageous

16  label statements derive monetary benefits to Dole through increased market share and demand.

17  Such is why Dole—and companies like it—take the calculated risk of placing unlawful

18  statements on their products; they do it for the money.

19         California law mirrors Dr. Caswell's opinion that a label statement can be deemed

20  material by showing it was material to Defendant. *Kwikset Corp. v. The Superior Court of*

21  *Orange County*, 51 Cal. 4th 310, 332-333 (2011) (stating "A misrepresentation is judged to be

22  'material' if 'a reasonable man would attach importance to its existence or nonexistence in

23  determining his choice of action in the transaction in question'...." ***In the alternative***, it may also

24  be material if "the maker of the representation knows or has reason to know that its recipient

25  regards or is likely to regard the matter as important in determining his choice of action, although

26  a reasonable man would not so regard it." *Id.* at 333 (quoting Rest.2d Torts, § 538, subd. (2)(b)).

27  Dr. Caswell's declaration provides that evidence of materiality of the statements to Dole, here,

28  and it is thus probative and thus evidential for the purpose of class certification.

Second, Dr. Caswell explains that consumers rely on those label statements claiming the existence of positive attributes in foods. That economically drives consumers to purchase more of products with statements like Dole's natural claims. Dr. Caswell explains that Dole's statements (of natural products) are both material to consumers and constitute "credence attributes," because consumers cannot tell, even after using the product, whether the "natural" claim was true. Accordingly the reliance and resulting injury to those consumers continues.

The import of that opinion from Dr. Caswell aids this Court. California law is well-settled that the reliance on such material label statements is imputed from the named plaintiff to the absent class members, thus supporting the predominance, typicality and commonality of the claims. Thus, Dr. Caswell's opinion aids the Court's class certification analysis and should be considered.

Dole's reliance on *Daubert* standards in its attempt to strike Dr. Caswell's opinion is misplaced, as that standard is here inapplicable. The motion should be denied.

**C.**    **Dr. Caswell's Declaration Survives *Daubert* Analysis.**

Even assuming *arguendo* a full *Daubert* was now proper, Dr. Caswell's opinion survives that analysis.

Dole argues that Dr. Caswell fails to present a reliable opinion, presents *ipse dixit* statements, and fails because she did not collect "data" like "consumers surveys" or the like. Dole hopes and asks this Court to ignore Dr. Caswell's credentials, profound study in her field of food studies and labeling analysis, and caste her opinion aside. Dole would have the Court believe that only through consumer surveys and "data" can materiality be determined, and that Dr. Caswell's thirty-five (35) page of CV describing her study of and accomplishments in the food industry and labeling are a meaningless nullity. Dole's motion cannot be sustained.

While the test of *Daubert* provides a guidepost, the court retains discretion to evaluate the reliability of a proffered expert opinion. *Ellis I*, 240 F.R.D. at 635-36 *affirmed on this point by Ellis II*, 657 F.3d at 982 (holding the district court "correctly applied the evidentiary standard set forth in *Daubert*"). The court has wide latitude in that analysis to allow expert witnesses, and that test is flexible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also U.S. v. Two*

1   *Elk*, 536 F.3d 890, 903 (8th Cir. 2008). Under *Daubert*, courts may consider expert testimony if

2   "[1] the testimony is based upon sufficient facts or data, [2] the testimony is the product of

3   reliable principles and methods, and [3] the expert has reliably applied the principles and methods

4   to the facts of the case." Fed. R. Evid. 702. Dr. Caswell's opinion satisfies that criteria.

5       As an initial matter, *Daubert* provides the well-settled proposition that the best means by

6   which a party should oppose an expert designation is through thorough cross-examination.

7   *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594-97 (1993).

8       Here, with Defendant recognizing the extensive qualifications of Dr. Caswell, they chose

9   not to depose Dr. Caswell during discovery, but rather hide behind hyperbolic references to case

10  law in their attempt to strike her opinion. If Defendant wanted to question Dr. Caswell's motives,

11  methodologies and opinion, it should have done so through cross-examination. *See Daubert*, 509

12  U.S. at 594-597. They forewent that opportunity.

13      Further, as detailed in her declaration and *supra*, Dr. Caswell explains in her opinion that

14  Dole's label statements are material—both to consumers and to Dole—and she explains how her

15  opinion is derived from her economic background. Dr. Caswell's opinion is consistent with well-

16  settled California law that regulated label statements are material as a matter of law.

17      Toward this point, in *Kwikset*, the Court held the "Legislature has recognized the

18  materiality of this representation by specifically outlawing deceptive and fraudulent 'Made in

19  America' representations." *Kwikset*, 51 Cal. App. 4th at 329. The Court noted that the

20  Legislature's intent was to "protect consumers from being misled when purchasing products in

21  the belief that they [were] advancing the interests of the United States and its industries and

22  workers." *Id.* Dole's label statements are regulated by California law and are therefore

23  undeniably recognized as material as a matter of law. *See also Hinojos v. Kohl's Corp.*, 718 F.3d

24  1098, 1106-07 (9th Cir. 2013).

25      Thus, Dole's argument that a materiality analysis would require "consumer surveys" is

26  curious given the statements are material *per se*. Dr. Caswell's opinion falls in line with that well-

27  settled law; Dole's position is the one that is inexplicable.

28      Dr. Caswell explains that in her field of economics, the study of consumer reactions to

1  positive food attribute label claims increase demand from consumers (indicating their reasonable

2  reliance) and increased market share and earning capacity for the distributers (demonstrating the

3  label statements are material to them). Dr. Caswell's opinion is reliable, her opinions and

4  expertise are published and have been subjected to peer review, and it has otherwise been tested.

5  Accordingly, the opinion meets the requisite tests of *Daubert* and its progeny. (*See, e.g. Oddi v.*

6  *Ford Motor Co.*, 234 F.3d 136, 160 [3d Cir. 2000] [stating the expert need not have performed

7  extensive tests if his concepts are valid]; *Glaser v. Thompson Med. Co.*, 32 F.3d 969, 972 [6th

8  Cir. 1994] [allowing expert that presents articles to support the theory and basis of knowledge]).

9  There is plainly the adequate "link" here between Dr. Caswell's reasoning and opinion to

10  ultimately assist the trier of fact. *Stilwell v Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir.

11  2007) (holding the district court cannot exclude expert opinion if there is "a link between the

12  expert's testimony and the matter to be proved.").

13      The government acknowledges the materiality of Dole's statements, and regulates against

14  it to protect consumers. Dole's statements are such material statements, and, further, contain

15  statements of the existence of "credence attributes," which consumers cannot verify the existence

16  of (or not). Dr. Caswell's opinion is well-detailed and is based on her profound expertise. She is

17  an expert in her field, having received numerous awards and having authored many peer reviewed

18  articles on the subject at hand.

19      Dole argues that Dr. Caswell's opinion lacks consumer data and that her opinion is

20  otherwise an *ipse dixit* conclusion. It is a false premise Dole asserts, being that if one does not do

21  research directly on how consumers perceive labeling that one does not have expertise in the

22  materiality of nutritional labeling because consumer perception of labeling is only one element of

23  how these markets operate. The choice of the use of the labeling and the regulatory environment

24  of labeling affect the materiality.

25      Contrary to Dole's assertions, Dr. Caswell's opinions are based on both "facts and data,"

26  as allowed under Rule 702, with her opinion based on the type of label statement ("natural"

27  statements) Dole makes, coupled with her thoroughly credentialed analysis of how consumers

28  react to such positive attribute statements and the reasons manufacturers make those statements.

1    Her opinion logically follows her studies that consumers are more attracted to products

2    representing positive attributes, and food distributers (here Dole) find making those label

3    statements economically prudent given prospects of increased market share, demand and return.

4    Here, there exists no logical "leap" to proscribe the consideration of Dr. Caswell's report. Her

5    report is based on her research of consumers, her research of food manufacturers and systems,

6    and is analyzed considering the label statements Dole makes.

7        Lastly, Dole argues that Dr. Caswell's opinion is an inadmissible legal conclusion. Dr.

8    Caswell's opinion, however, is not a legal conclusion, but rather an analysis of Dole's label

9    statements, consumer reactions to such label statements and application of the economics behind

10   food manufacturers' basis for making such statements, particularly when they are illegal (as is the

11   case here). Dr. Caswell simply opines based on her research on what is material to those parties,

12   and she provides an explanation of how those parties react.

13       Dr. Caswell's opinions are based on her abounding knowledge in the field of food system

14   studies, as well as consumer and marketer actions, reactions and conduct. Those opinions are

15   reliable, detailed and will assist this Court. They should be allowed.

16                                     **CONCLUSION**

17       Dr. Caswell's opinion is not subject to *Daubert* review at this stage, mandating rejection

18   of Dole's motion. Even if *Daubert* is applied, Dr. Caswell's opinion survives that analysis and

19   should be allowed.

20       Dated:  March 20, 2014.
                                        Respectfully submitted,
21

22                                        /s/ *Charles Barrett*
                                        Charles Barrett
23                                      CHARLES BARRETT, P.C.
                                        6518 Highway 100
24                                      Suite 210
                                        Nashville, TN 37205
25                                      (615) 515-3393
                                        charles@cfbfirm.com
26
                                        Ben F. Pierce Gore (SBN 128515)
27                                      PRATT & ASSOCIATES
                                        1871 The Alameda, Suite 425
28                                      San Jose, CA 95126

1    (408) 429-6506
2    pgore@prattattorneys.com

3    Brian Herrington
     BARRETT LAW GROUP, P.A.
     P.O. Box 927
4    404 Court Square N.
     Lexington, MS 39095
5    (662) 834-2488
     bherrington@barrettlawgroup.com
6
7    *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Charles Barrett, hereby certify that a true and complete copy of the foregoing was served to all counsel of record via the ECF filing system on March 20, 2014.


_/s/  Charles Barrett_____
Charles Barrett