Ben. F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506
pgore@prattattorneys.com

Charles Barrett
CHARLES BARRETT, P.C.
6518 Highway 100
Suite 210
Nashville, TN 37205
(615) 515-3393
charles@cfbfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAD BRAZIL, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DOLE PACKAGED FOODS, LLC,<br><br>　　　　　Defendant. | Case No. CV12-01831 (LHK)<br><br>**PLAINTIFF'S REPLY TO DOLE'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:　April 17, 2014<br>Time:　　　　1:30 p.m.<br>Judge:　　　 Hon. Lucy H. Koh |

REDACTED VERSION

1

# TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ........................................................................................ II

3    STATEMENT OF THE ISSUES TO BE DECIDED ........................................... VI

4    EXHIBIT LIST ....................................................................................................... VII

5    MEMORANDUM OF POINTS AND AUTHORITIES...................................... 1

6    INTRODUCTION...................................................................................................... 1

7    ARGUMENT ............................................................................................................. 2

8          A.    The Class Is Ascertainable Because Defendant Uses Only Synthetic Ascorbic
               And Citric Acid In Its Products ........................................................................ 2

9          B.    *Carrerra* Is Not The Law In This Circuit............................................................ 5

10         C.    Plaintiff's UCL Unlawful Claim Does Not Raise Individual Issues ............... 7

11               1.    FDA's Natural Policy Is Binding.............................................................. 7

12               2.    "All Natural Fruit" Has A Common Meaning...................................... 8

13         D.    Plaintiff's FAL, UCL (Unfair/Fraudulent) and CLRA Claims Do Not Raise
               Individual Issues.................................................................................................. 9

14               1.    Defendant's Reliance On Its "Survey" Purchased For Its Defense
                     Should Be Given No Consideration .................................................... 9

15               2.    Plaintiff Has Shown Materiality Under *Amgen* And The Two Part
                     *Hinojos Test*............................................................................................. 10

17               3.    Plaintiff's Reliance Is Imputed To The Class ................................... 11

18         E.    Restitution and Damages Can Be Calculated On A Class-Wide Basis.......... 12

19         F.    A Nationwide Or, Alternatively, A California Class Is Appropriate .............. 15

20    CONCLUSION ........................................................................................................ 15

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Astiana v. Ben & Jerry's Homemade, Inc.,*
    2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ....................................................................... 4

4

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................... 5, 8

5

6

*Auer v. Robbins,*
    519 U.S. 452 (1997) ........................................................................................................ 7

7

*Balser v. Hain Celestial Grp., Inc.,*
    2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ............................................................... 8

8

9

*Brazil v. Dole Food Co., Inc.,*
    935 F. Supp. 2d 947 (N.D. Cal. 2013) ........................................................................... 9

10

*Carrerra v. Bayer Corp.,*
    727 F.3d 300 (3d. Cir. 2013) ..................................................................................... 5, 6

11

12

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................. 6, 15

13

*Chavez v. Blue Sky Natural Beverage Co.,*
    340 F. App'x 359 (9th Cir. 2009) ................................................................................ 14

14

15

*Delarosa v. Boiron, Inc.,*
    275 F.R.D. 582 (C.D. Cal. 2011) ................................................................................... 6

16

*Falk v. Gen. Motors Corp.,*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................................... 12

17

18

*Fletcher v. Sec. Pac. Nat'l Bank,*
    23 Cal. 3d 442, 591 P.2d 51 (1979) ............................................................................ 13

19

*Galvan v. KDI Distrib.,*
    2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ............................................................... 7

20

21

*Guido v. L'Oreal, USA, Inc.,*
    2013 WL 3353857 (C.D. Cal. July 1, 2013) .......................................................... 6, 12

22

*Herrera v. LCS Fin. Servs. Corp.,*
    274 F.R.D. 666 (N.D. Cal. 2011) ................................................................................... 5

23

24

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) ..................................................................................... 11

25

*In re Clorox Consumer Litig.,*
    894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................................................... 15

26

27

*In re Ferrero Litig.,*
    278 F.R.D. 552 (S.D. Cal. 2011) ................................................................................. 15

28

*In re Google Android Consumer Privacy Litigation,*
  2014 WL 988889 (N.D. Cal. March 10, 2014)................................................................ 14

*In re Google Inc. Gmail Litig.,*
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................................................. 1

*In re POM Wonderful, LLC Marketing and Sales Practices Litig.,*
  2012 WL 4490860 (C.D. Cal. 2012) ................................................................................ 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  267 F.R.D. 291 (N.D. Cal. 2010) ..................................................................................... 5

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) ......................................................................................... 12

*Johns v. Bayer Corp.,*
  280 F.R.D. 551 (S.D. Cal. 2012) ...................................................................................... 6

*Johnson v. Gen. Mills, Inc.,*
  276 F.R.D. 519 (C.D. Cal. 2011) ...................................................................................... 6

*Jou v. Kimberly-Clark Corp.,*
  2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ................................................................. 9

*Juarez v. Arcadia Financial, LTD.,*
  152 Cal. App. 4th 889 (2007) ......................................................................................... 13

*Kane v. Chobani, Inc.,*
  2013 WL 3703981 (N.D. Cal. July 12, 2013) ................................................................. 7

*Keilholtz v. Lennox Hearth Products Inc.,*
  268 F.R.D. 330 (N.D. Cal. 2010 .................................................................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ........................................................................................... 13, 14

*Kraft Foods Group Brands, LLC v. Cracker Barrel Old Country Store, Inc.,*
  735 F.3d 735 (7th Cir. 2013) .......................................................................................... 10

*Kwikset Corp. v. Super Ct.,*
  51 Cal. 4th 310 (2011) ................................................................................................... 11

*Lindell v. Synthes USA,*
  2014 WL 841738 (E.D. Cal. Mar. 4, 2014) .................................................................... 15

*Lockwood v. ConAgra Foods, Inc.,*
  597 F. Supp. 2d 1028 (N.D. Cal. Feb. 3, 2009) ........................................................... 7, 8

*Makaeff v. Trump Univ., LLC,*
  2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ................................................................... 15

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) .......................................................................................... 15

*McCrary v. The Elations Co., LLC,*
    2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .......................................... 6

*McManus v. Sturn Foods Inc.,*
    292 F.R.D. 606 (S.D. Ill. 2013) ..................................................................... 8

*Ogden v. Bumble Bee Foods, LLC,*
    2014 WL 27527 (N.D. Cal. Jan. 2, 2014).......................................................... 15

*Park v. Welch Foods, Inc.,*
    Case No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.) ..................................................... 14

*Red v. Kraft Foods, Inc.,*
    2012 WL 8019257 (C.D. Cal. Apr. 12, 2012)..................................................... 6

*Ries v. Arizona Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) .................................................................... 6

*Ries v. Arizona Beverages USA, LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) .................................................................... 6

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
    2008 WL 4906433 (C.D. Cal. 2008) ............................................................... 6

*Sanbrook v. Office Depot, Inc.,*
    2009 WL 840020 (N.D. Cal. Mar. 30, 2009) ...................................................... 14

*Sethavanish v. ZonePerfect Nutrition Co.,*
    2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014)........................................ 6

*Steroid Hormone Product Cases,*
    181 Cal. App. 4th 145 (2010) ....................................................................... 11

*Thurston v. Bear Naked, Inc.,*
    2013 WL 5664985 (S.D. Cal. 2013)................................................................ 5

*Trazo v. Nestle USA, Inc.,*
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)...................................................... 15

*United States v. Gonzalez-Alvarez,*
    277 F.3d 73 (1st Cir. 2002) .......................................................................... 14

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010) ...................................................................... 15

*Ziesel v. Diamond Foods, Inc.,*
    2011 WL 2221113 (N. D. Cal. June 07, 2011) ................................................... 14

**Statutes**

21 U.S.C. § 343(a)(1) ..................................................................................... 7

7 U.S.C. § 6502(21).......................................................................................... 4

**Regulations**

21 C.F.R. § 101.22(a)(3) ........................................................................................................ 8

21 C.F.R. § 173.280 ............................................................................................................... 8

21 C.F.R. § 182.3013 ............................................................................................................. 4

56 Fed. Reg. 60421-01 (1991) ............................................................................................ 7, 8

58 Fed. Reg. 2302-01 (1993) ................................................................................................. 7

7 C.F.R. § 205.605 ................................................................................................................. 3

**Treatises**

Rest. Restitution, § 1 ........................................................................................................... 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

# EXHIBIT LIST

| Exhibit No.[1] | Description | Defendant's Bates No. for Production |
|---|---|---|
| U | Supplemental Declaration of Dr. Oral Capps | n/a |
| V | Supplemental Declaration of Dr. Edward Scarbrough | n/a |
| W | 12/11/13 Depo. Trans. – Hany Farag | n/a |
| X | 2/6/1995 NOSB File Checklist | n/a |
| Y | 10/6/2010 FDA Warning Letter | n/a |
| Z | 11/16/2011 FDA Warning Letter | n/a |
| AA | 3/11/2011 FDA Warning Letter | n/a |
| BB | 8/16/2001 FDA Warning Letter | n/a |
| CC | 8/29/2001 FDA Warning Letter | n/a |
| DD | 12/16/13 Depo. Trans. – Chad Brazil | n/a |
| EE | ███████████████████████████ | DPF00015388-418 |
| FF | ███████████████████████████ | DPF00004464-4520 |
| GG | █████████████████████████████████ | DPF00009167-226 |

---

[1] These exhibit numbers continue from the exhibits in Plaintiff's memorandum supporting class certification which ended at Exhibit T.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendant Dole Packaged Foods, Inc.'s ("Defendant") primary contention against class certification is the class is not ascertainable.  It argues "which citric and ascorbic acid?" Defendant attaches "certifications" from three of its various citric and ascorbic acid suppliers stating the fermentation manufacturing process and ingredients they use are indeed "natural."  Def's Br. at 4.[2] Defendant argues that is the end of the inquiry because certain class members would have bought a non-synthetic ingredient as opposed to other class members that bought synthetic versions of the two ingredients.  As described below, this argument is a red herring.  Plaintiff has produced evidence showing that: (1) all of the ascorbic acid and citric acid used by Dole in the relevant products is the same – there are not various versions of each and (2) both ingredients are chemical preservatives manufactured via the same highly industrialized process that goes well beyond simple fermentation that indeed renders both ingredients ultimately used in Dole's products *synthetic* and violative of the FDA's rule on the use of the word "natural" on food labels.

Defendant claims its label statement "all natural fruit" is not material to consumers and relies heavily upon a consumer survey conducted after this case began by Dr. Kent Van Liere.  Not surprisingly, Defendant got the answers it wanted in the survey.  The consumer survey is composed of unsubstantiated hearsay and unproven methodology and it should not be considered by this Court.  Even though Defendant's witnesses have disingenuously claimed in testimony that the "all natural fruit" claim is not at all material to consumers it continues to keep this language front and center of its products and has produced documents that suggest, correctly, that natural claims are indeed material to consumers.

Defendant also devotes a large part of its brief to an attack on Plaintiff's restitution theory and damages expert, Dr. Oral Capps.  Both arguments fail.  Restitution is a fluid remedy by design and can be asserted class-wide.  Moreover, Dr. Capps has presented a rebuttal declaration

---

[2] These unauthenticated certifications are nothing more than self-serving and inadmissible hearsay because they are out of court statements offered only to prove the truth of the matters asserted, namely the "naturalness" of the ingredients.  *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *17 n. 12 (N.D. Cal. Mar. 18, 2014).  Also, on face value they are clearly biased because their customer, Dole, is involved in litigation over an ingredient they helped supply.  *Of course* they will give Defendant the "natural" answer it seeks.

1  demonstrating that his methodology is sound and sufficient to measure damages on a class-wide basis

2  if this case is certified.[3]

3      Defendant's other arguments fail.  This proposed class is simple and should be certified.

4                                  **ARGUMENT**

5    **A.    The Class Is Ascertainable Because Defendant Uses Only Synthetic
            Ascorbic And Citric Acid In Its Products**

6      There is no ascertainability problem in this case.  All proposed class members bought a

7  product bearing the "all natural fruit" label statement containing the same two synthetic ingredients.

8  There is no hypothetical subgroup of class members that purchased any of the ten products at issue

9  with non-synthetic versions of ascorbic acid and citric acid.  All of the ascorbic acid and citric acid

10  used by Defendant is manufactured in the same highly industrial process that renders the two

11  ingredients synthetic.

12      Here are the facts.  According to Defendant's own expert, there are two ways to make citric

13  acid and ascorbic acid, chemical synthesis and fermentation.[4]  Between 90%-99% of the world's citric

14  acid is made by fermentation. *Id.*  Defendant has stated that all of its citric acid and ascorbic acid that

15  went into the products in this case were made using this same fermentation process.  Dr. Hany

16  Farag, Dole's Vice President of Quality & Regulatory Affairs stated in his recent declaration:

17

18      I am familiar with the methods of making citric acid, and the processes for each
        ingredient generally do not differ.  After reviewing the many documents detailing the
19      manufacturing processes for these ingredients, *I am confident that all of the citric and
        ascorbic acid used by Dole is made in a similar way*.  Thus, all of Dole's citric acid and
20      ascorbic acid could be considered "natural" because it is made from non-synthetic
        ingredients.[5]

21  This confirms Dr. Farag's deposition testimony when he stated that the citric acid used in all of

22  Dole's products "could be from different suppliers, but it is still chemically the same."[6]  This

23  fermentation process has been utilized for decades.  It is not, however, as simple or clean as Dr.

24

25  [3] *See* Exhibit U - Supplemental Declaration of Dr. Oral Capps.

26  [4] Montville Declaration ¶¶ 5, fn. 5, 9.  Defendant cannot contest the fact that the chemical synthesis
    process would render such ingredients synthetic.  The only other method of production,
    fermentation, is the issue here.

27  [5] Farag Declaration ¶ 11 (emphasis added).  *See also*, Exhibit V - Supplemental Declaration of Dr. Ed
    Scarbrough ¶¶ 7, 9 ("In my opinion, all of Dole's suppliers would use very similar processes.")

28  [6] Exhibit W - 12/11/13 Depo. Transcript of VP of Quality & Regulatory Affairs, Dr. Hany Farag,
    Tr. 176:14-22.

Montville describes.  Dr. Farag even freely admitted in his December deposition that the ascorbic acid and citric acid used by Defendant is *all* "highly processed."[7]  Dr. Edward Scarbrough, with a Ph.D. in Chemistry from Harvard and years at the FDA, says in his supplemental declaration that natural fermentation is only the first step:  it is the process *after* fermentation that renders the ingredients used by Dole synthetic.  This step is glossed over by Defendant and its expert, Dr. Montville.

Dr. Scarbrough points out that Dr. Montville is correct that beer, cheese, and yogurt are products of fermentation, but *after* that fermentation process there is a large scale industrial process required to produce both citric acid and ascorbic acid for use as food additives and this process requires additional steps involving non-food chemicals.[8]  The flow charts provided by Dole in discovery confirm this.  The citric acid produced through fermentation must be recovered from the fermentation vat through precipitation. In the flow charts provided by (1) RZBC Import and Export Company, LTD; (2) Yixing-Union Biochemical Company, LTD and (3) Shihezi City Changyun Biochemical Company, LTD this is achieved by the addition of the chemical calcium carbonate which is then filtered and solubilized through the addition of sulfuric acid.[9]  The same is true for ascorbic acid.  Although ascorbic acid occurs naturally in foods, the flow charts of Shandong Tianli Pharmaceutical Company, LTD and Hebei Welcome Pharmaceutical Company, LTD produced by Defendant indicates that corn is used as the source of glucose.  Ascorbic acid is synthesized from the glucose through a two-step fermentation process, during which the glucose goes through a number of chemical transformations before the final product can be isolated. This process is described in the flow charts provided by the two suppliers mentioned above, as well as in the flow chart provided by the Aland Neutraceutical Company, LTD.[10]

The USDA agrees with Dr. Scarbrough that this process renders ascorbic acid synthetic.  7 C.F.R. § 205.605 specifically lists ascorbic acid as a "synthetic" in the organic foods regulations.  In

---

[7] Exhibit W - 12/11/13 Depo. Transcript of VP of Quality & Regulatory Affairs, Dr. Hany Farag, Tr. 148:19-149:17; 164:7-12; 189:9-13.

[8] Exhibit V – Supplemental Declaration of Dr. Ed Scarbrough ¶¶ 7, 9.

[9] *Id.  See also*, DPF000017640-17702.

[10] *Id.*

reaching this conclusion, three reviewers from the National Organic Standards Board reviewed the glucose to sorbitol process described by Dr. Montville and all concluded it rendered the ascorbic acid used as a food additive synthetic.[11]

Additionally, the FDA has repeatedly refused to allow use of "natural" when ascorbic acid and citric acid are added ingredients in food. The FDA considers both to be chemical preservatives and when such synthetic chemical preservatives are added to food the policy is clear: a food manufacturer may not use "natural" on the label because these preservatives "would not normally be there.[12] [13]

Defendant brought this argument following defense counsel's victory in *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014). That case is readily distinguishable, however. There, the court denied class certification because there were two kinds of chemicals in the class of products, potassium carbonate (synthetic) and sodium carbonate (non-synthetic), and it was difficult to determine which class member purchased a product with a non-synthetic ingredient. *Id.* at *3. The defendant used cocoa that was sourced from as many as 15 different suppliers, but only one provided Ben & Jerry's with alkalized cocoa that was alkalized with synthetic substances. *Id.*

Here there are *only* synthetic versions of ascorbic acid and citric acid used in Dole's products (due to the manufacturing process). If the label says the ingredients are included then there are synthetic substances in the food. Both ingredients are all manufactured the same way no matter the

---

[11] Exhibit X – 2/6/1995 NOSB File Checklist. Downloaded from: http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5066968. The USDA defines synthetic as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral source…" 7 U.S.C. § 6502(21).

[12] Exhibit Y – 10/6/2010 FDA Warning Letter to Chiquita Brands (finding products misbranded if "they contain the chemical preservatives ascorbic acid and citric acid."); Exhibit Z – 11/16/2011 FDA Warning Letter to Alexia Foods (because a product contained a synthetic chemical preservative "the use of the claim 'Al Natural' on this product is false and misleading."); Exhibit AA – 3/11/2011 FDA Warning Letter to Shemshad Food Products (because a product contained a synthetic chemical preservative "the use of the term 'Natural' in association with this product is false and misleading."); Exhibit BB – 8/16/2001 FDA Warning Letter to Oak Tree Farm Dairy (use of the term "all natural" inappropriate "because it contains citric acid."); Exhibit CC – 8/29/2001 FDA Warning Letter to Hirzel Canning Co. ("Therefore, the addition of calcium chloride and citric acid to these products preclude the use of the term 'natural' to describe the product.")

[13] *See* 21 C.F.R. § 182.3013 (listing ascorbic acid as a chemical preservative). Also, Dr. Farag testified that citric acid in all the Dole products at issue in this case to lower the hydrogen iron concentration to make Dole's thermal process more effective. Exhibit W - 12/11/13 Depo. Transcript of Farag, Tr. 104:19-24. Ascorbic acid is used as either fortification (added vitamin C) and to prevent oxidation. *Id.* at 103:4 – 104:14. Contrary to Defendant's contention, these are preservatives. Exhibit V – Supplemental Declaration of Dr. Ed Scarbrough ¶¶ 8, 9.

1    supplier.  The issue is simple:  what is the end result of this process, synthetic or natural?  Defendant

2    says natural.  Plaintiff says synthetic.  This issue is tailor made for a class certification and class-wide

3    resolution at trial.

4    **B.    _Carrera_ Is Not The Law In This Circuit**

5    Defendant also cites _Carrera v. Bayer Corp.,_ 727 F.3d 300 (3d. Cir. 2013) for the proposition

6    that a class is not ascertainable and may not be certified because Dole is a wholesaler and does keep

7    records of individual purchasers.  Def.'s Br. at 6.  Defendant is saying that no consumer of its

8    products can ever certify a class against it for anything, anywhere, anyhow, for Defendant can never

9    be satisfied about the details of each purchase.  This is not the law in the Ninth Circuit and never has

10   been.  Ascertainability does not equate to the ready availability of every class member's name.  "An

11   identifiable class exists if its members can be ascertained by reference to objective criteria." _Herrera v._

12   _LCS Fin. Servs. Corp.,_ 274 F.R.D. 666, 672-73 (N.D. Cal. 2011) (quoting _In re TFT-LCD (Flat Panel)_

13   _Antitrust Litig.,_ 267 F.R.D. 291, 299 (N.D. Cal. 2010)).  The objective criterion here is whether a

14   consumer purchased one of the products at issue during the class period.

15   In _Astiana v. Kashi Co.,_ 291 F.R.D. 493, 510 (S.D. Cal. 2013) in which the court certified a

16   class of consumers who purchased defendant's products labeled "All Natural" or "Nothing

17   Artificial" the court held:

18       Defendant's concern that the Court will have difficulty identifying members of the
19       class is unavailing. Because Defendant does not have records of consumer purchases,
         and potential class members will likely lack proof of their purchases, Defendant
20       argues that the Court will have no feasible mechanism for identifying class members
         and will have to pursue proof individual to each class member. However, "[t]here is
         no requirement that 'the identity of the class members ... known at the time of
21       certification.' " _Ries v. Arizona Beverages USA LLC,_ 287 F.R.D. 523, 536
         (N.D.Cal.2012); _Wolph,_ 272 F.R.D. at 482. If class actions could be defeated because
22       membership was difficult to ascertain at the class certification stage, "there would be
         no such thing as a consumer class action." _Ries,_ 287 F.R.D. at 536. As long as the
23       class definition is sufficiently definite to identify putative class members, "[t]he
         challenges entailed in the administration of this class are not so burdensome as to
24       defeat certification."

25   _Id._ at 500;[14] _see also Thurston v. Bear Naked, Inc.,_ 2013 WL 5664985, at *3 (S.D. Cal. 2013) (rejecting

26   _____
     [14] Defendant insinuates on page 9 its brief that the court in _Astiana_ completely denied class
27   certification.  This misstates _Astiana's_ holding.  The court held certified the following "All Natural"
     class:  "All California residents who purchased Kashi Company's food products on or after August
     24, 2007 in the State of California that were labeled "All Natural" but which contained one or more
28   of the following ingredients: Pyridoxine Hydrochloride, Calcium Pantothenate and/or Hexane–
     Processed Soy ingredients." _Astiana,_ 291 F.R.D. at 510.

1    same argument). Here, Plaintiff's proposed class definition is sufficiently definite to identify putative

2    class members. Only those consumers who purchased Dole products whose label bore the statement

3    "All Natural Fruit" and which contain both ascorbic acid and citric acid are included. Refusing to

4    certify a class because a defendant does not keep sales records of its end consumers would effectively

5    eviscerate consumer class actions in which the defendant does not sell directly to class members. *Ries*

6    *v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012).

7           Defendant's reliance *Carrera* is simply misplaced. In *Carrera*, the plaintiff confused his

8    purchases with products that were not part of the litigation. Thus, the court concluded that affidavits

9    from class members would not be reliable. *Id.* at 309. Here, Plaintiff, who has produced actual labels

10   from the purchased products, presents no such problem. Further, no other circuit has followed

11   *Carrera*'s logic that ascertainability is an issue because a defendant does not keep sales records of its

12   end consumers.

13          Recently, Judge Jesus Bernal of the Central District of California analyzed *Carrera* and rejected

14   its holding:

15              *Carrera* eviscerates low purchase price consumer class actions in the Third
                Circuit…While this may now be the law in the Third Circuit, it is not currently the
16              law in the Ninth Circuit. In this Circuit, it is enough that the class definition
                describes a set of common characteristics sufficient to allow a prospective plaintiff to
17              identify himself or herself as having a right to recover based on the description.

18   *McCrary v. The Elations Co., LLC,* 2014 U.S. Dist. LEXIS 8443, at *24, 25 (C.D. Cal. Jan. 13, 2014).[15][16]

19          Finally, "[a] lack of ascertainability alone will generally not scuttle class certification." *Red v.*

20   *Kraft Foods, Inc.,* 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12, 2012) (citing *Galvan v. KDI Distrib.,* 2011

21   _____

22   [15] Contrary to the Third Circuit's reasoning in *Carrera,* courts in this Circuit routinely certify classes of
     purchasers of over-the-counter products where it would be impossible to identify and notice every
     member of the class. *See, e.g., Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal.
23   2010)(beverages); *In re POM Wonderful, LLC Marketing and Sales Practices Litig.,* 2012 WL 4490860
     (C.D. Cal. 2012)(juice products); *Guido v. L'Oreal, USA, Inc.,* 2013 WL 3353857 (C.D. Cal. July 1,
24   2013) (hair products); *Johns v. Bayer Corp.,* 280 F.R.D. 551, 560 (S.D. Cal. 2012)(multivitamins); *Ries v.
     Arizona Beverages USA, LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012)(tea products); *Delarosa v. Boiron,
     Inc.,* 275 F.R.D. 582, 595 (C.D. Cal. 2011)(homeopathic products); *Johnson v. Gen. Mills, Inc.,* 276
25   F.R.D. 519, 524 (C.D. Cal. 2011)(yogurt products); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
     2008 WL 4906433 (C.D. Cal. 2008)(nutritional supplements).

26   [16] Judge Samuel Conti recently found *Carrera* to be persuasive authority and refused to certify a class
     on ascertainability grounds in *Sethavanish v. ZonePerfect Nutrition Co.,* 2014 U.S. Dist. LEXIS 18600
27   (N.D. Cal. Feb. 13, 2014). Plaintiff respectfully submits that Judge Conti's opinion is against the
     weight of authority in the Ninth Circuit. The better course is to allow certification where the class
28   definition describes objective criteria that allow a class member to identify himself or herself as a
     member of the class. In this case, the membership criteria are simple and clear, which makes the
     class ascertainable.

1  WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011)). Plaintiff's motion for class certification should be

2  granted, and if the Court finds there are ascertainability issues, those issues may be addressed later in

3  the litigation. *See Galvan*, 2011 WL 5116585, at *5.

### C.    Plaintiff's UCL Unlawful Claim Does Not Raise Individual Issues

#### 1.    FDA's Natural Policy Is Binding[17]

6      Acknowledging that it is raising a merits issue (Def. Br. at 8, n. 4), Defendant argues that its

7  use of "all natural" involves no violation of federal or California law.  Defendant attempts to recast

8  this merits issue as related to "ascertainability" but the link is faulty.  Whether the label statement

9  violates California law is an issue for the court on a motion for summary judgment or perhaps a

10  motion for peremptory instruction, but the argument is nevertheless premature.

11      Even if it were part of the analysis here, FDA's position on "all natural" has the force of law.

12  The FDA has promulgated regulations that prohibit labeling that is "false or misleading in any

13  particular." 21 U.S.C. § 343(a)(1).  The FDA's definition of natural is that "nothing artificial or

14  synthetic (including colors regardless of source is included in, or has been added to, the product that

15  would not normally be there." 56 Fed. Reg. 60421-01 (1991); *see also Lockwood v. ConAgra Foods, Inc.*,

16  597 F. Supp. 2d 1028, 1034 (N.D. Cal. Feb. 3, 2009).  Defendant agrees.  *See* Def. Br. at 7.

17      FDA acknowledges that consumers are being misled by the term "all natural." *See* 58 Fed.

18  Reg. 2302-01 (1993). The FDA has consistently viewed the addition of synthetic and unnatural

19  compounds as unnatural (and therefore false and misleading) in warning letters.[18]  This interpretation

20  of agency policy has the force of law. *See Kane v. Chobani, Inc.,* 2013 WL 3703981, at *16 (N.D. Cal.

21  July 12, 2013) ("[a]s set forth by the Supreme Court in *Auer v. Robbins*, an agency's interpretation of

22  its own regulation, even if set forth in an informal document, is controlling unless plainly erroneous

23  or inconsistent with the regulation." (citing *Auer v. Robbins,* 519 U.S. 452, 461 (1997)).

24      Defendant argues that the FDA's regulation of natural flavorings permits fermentation for

25  producing "natural flavors."  Plaintiff agrees.  However Defendant fails to acknowledge that 21

---

[17] Defendant repeats the merits-based argument that use of the fermentation process renders ascorbic and citric acid natural.  For the reasons stated above, Defendant is wrong.  Regardless, that is a trial issue.  Defendant can, and will, present its case to the jury that its two ingredients are natural and Plaintiff will take the opposite position, but that is a decision for later, not class certification.

[18] *See* footnote 12, *supra.*

C.F.R. § 101.22(a)(3) is for  "natural flavor" or "natural flavoring," not an "all natural" label statement.[19]  There is a clear common question for the court and perhaps the jury (if not peremptorily instructed) on whether Defendant's use of "all natural fruit" on its products which contain artificial and synthetic ingredients is misleading and a violation of 21 U.S.C. § 343(a)(1) and California law.

### 2.    "All Natural Fruit" Has A Common Meaning

Defendant next argues because the merits of its conduct, claiming its labels were lawful and not misleading because there is no common meaning of the term "All Natural Fruit." Def. Br. at 9. This is nothing more than a misplaced argument of the merits.  Nevertheless, Defendant's argument will fail as FDA has defined "natural" in the context of the allegations here:  nothing artificial or synthetic has been added to the product that would not naturally be there. *See* 56 Fed. Reg. 60421-01 (1991); *see also Lockwood*, 597 F. Supp. 2d at 1034.[20]

Defendant relies heavily on *Kashi*, where the plaintiff's class was not certified, in part, because the plaintiffs failed to provide an objective or subjective definition of "all natural." 291 F.R.D. at 508.  In *Kashi*, none of the named plaintiffs agreed about the definition of "All Natural" or, more importantly, the *ingredients* they believed were not natural. Here, however, Plaintiff has given a consistent definition of all natural and the non-natural ingredients that a reasonable consumer would share.  *Kashi* involved over 90 different products labeled "All Natural," with different ingredients and different ad campaigns.  *Id.*[21]  Plaintiff's motion for certification involves only ten similar products and the same two ingredients.

Defendant also claims Plaintiff cannot explain what Defendant meant by "all natural" or that all consumers would have a different definition for "all natural."  Plaintiff testified clearly about what

---

[19] Furthermore, even under current good manufacturing practice the fermentation process of citric acid that is provided for in 21 C.F.R. § 101.22(a)(3)  results in remaining residue of compounds like synthetic is oparaffinic petroleum hydrocarbons, a non-natural substance. *See* 21 C.F.R. § 173.280.

[20] Defendant claims that Plaintiff cannot explain what Defendant intended by characterizing its products as "All Natural Fruit" or what other consumers might understand the phrase to mean.  This is nothing more than the plausibility argument the court has rejected.

[21] Defendant also cites *Balser v. Hain Celestial Grp., Inc.*, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) and *McManus v. Sturn Foods Inc.*, 292 F.R.D. 606, 618 (S.D. Ill. 2013). *Balser* is distinguishable because the plaintiff in that case failed to allege what "all natural" meant or how they relied and were harmed by that misrepresentation. Plaintiff here has alleged what he believed "all natural" to mean and how he was injured by it. In *McManus*, which is similar to *Kashi*, the plaintiffs in did not have the same understanding of what "'soluble'" and "'microground'"meant.  Here, Plaintiff has stated a definition for "all natural fruit" that would be shared by a reasonable consumer.

"all natural" meant to him:

> Q.   Okay. So you understand "all natural fruit" to mean that this product only contains fruit?
> A.   That's what I would - - that's what - - that would be the conclusion I would draw from that statement, "all natural fruit."
> Q.   Okay. And what does "all natural" mean to you?
> A.   It came off the tree and went into the package, after being washed.
> Q.   Ok.
> A.   Nothing was added. That's what that means.[22]

Defendant intentionally mischaracterizes Plaintiff's deposition testimony to be inconsistent. Plaintiff's definition of "all natural fruit" remained the same throughout his deposition, despite multiple challenges from defense counsel:

> Q.   Okay. So you are contending - - I understand your testimony that you believe all natural fruit means that the fruit is all natural.
>       Are you contending that the entire product is all natural as well?
> A.   Am I contending that the entire product is all natural?
> Q.   Correct.
> A.   Yes. I would assume that the entire contents of that package would be all natural fruit.[23]

Ultimately, however, the question of whether a reasonable consumer would agree with Plaintiff's definition of "all natural" and be misled by Defendant's products' labels is a question for the jury, not for class certification. As stated by this Court in its Order on Defendant's motion to dismiss: "'the Court is not inclined to assume the role of fact-finder in the guise of determining plausibility.'" *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013).[24]

### D.   Plaintiff's FAL, UCL (Unfair/Fraudulent) and CLRA Claims Do Not Raise Individual Issues

#### 1.   Defendant's Reliance On Its "Survey" Purchased For Its Defense Should Be Given No Consideration

Defendant offers a lengthy survey to argue there is no common evidence to show materiality, reliance or causation.  In a recent Seventh Circuit Opinion, Judge Posner observed as follows

---

[22] Exhibit DD - Brazil Dep. 29:24-30:9.

[23] Exhibit DD - Brazil Dep. at 31:22-32:6; 49:11-14; 52:7-20; 54:21-25; 56:4-9; 71:17-72:1; 159:4-8; 160:12-20.

[24] Defendant's plausibility argument has been rejected by this Court and other courts in this District. In fact, *Pelayo v. Nestle*, cited by Defendant, has been expressly rejected by Courts in this District. *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at * 8 (N.D. Cal. Dec. 10, 2013). As stated by the *Jou* Court, the *Pelayo* "conclusion is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit." *Id.*  Notable, Defendant fails to acknowledge *Jou*.

regarding consumer surveys:

> [W]e want to say something about the consumer survey Kraft presented in support of its claim of confusion. Consumer surveys conducted by party-hired expert witnesses are prone to bias. There is *such* a wide choice of survey designs, none foolproof, involving such issues as sample selection and size, presentation of the allegedly confusing products to the consumers involved in the survey, and phrasing of questions in a way that is intended to elicit the surveyor's desired response – confusion or lack thereof – from the survey respondents. Among the problems identified by the academic literature are the following: when a consumer is a survey respondent, this changes the normal environment in which he or she encounters, compares, and reacts to trademarks; a survey that produces results contrary to the interest of the party that sponsored the survey may be suppressed and thus never become a part of the trial record; and the expert witnesses who conduct surveys in aid of litigation are likely to be biased in favor of the party that hired and is paying them, usually generously. All too often experts abandon objectivity and become advocates for the side that hires them.

*Kraft Foods Group Brands, LLC v. Cracker Barrel Old Country Store, Inc.,* 735 F.3d 735, 741 (7th Cir. 2013)(emphasis in original)(internal citations omitted).

Judge Posner is right. All of his concerns regarding consumer surveys apply to Defendant's presentation of its post-litigation consumer survey in this case. The Court is given very little information on the phrasing of the survey questions, the composition of the data sample, and the data which Dr. Van Liere may have discarded which did not cohere with the client's desired result. This is especially important because the Defendant is asking this Court to accept the consumer survey to prove a dispositive issue: whether or not Defendant's "All Natural Fruit" label statement is material to the reasonable consumer and has a common meaning. Dr. Van Liere's unreliable and biased submission should not be considered by the Court in making this determination.[25]

### 2. Plaintiff Has Shown Materiality Under *Amgen* And The Two Part *Hinojos Test*

Defendant's argument on Plaintiff's false advertising claims boils down to this proposition: Plaintiff cannot show at this point that all absent class members found the "all natural fruit" label material causing them to rely upon it. Def. Br. at 11.[26] Defendant is wrong. Materiality exists. The Supreme Court addressed materiality in *Amgen*:

Because materiality is judged according to an objective standard, the materiality of

---

[25] Dr. Capps has described the flaws in Defendant's survey in his supplemental declaration.

[26] Also, while Plaintiff certainly "must prove materiality to prevail on the merits," "such proof is not a prerequisite to class certification." *Amgen*, 133 S. Ct. at 1191. To do so "would have us put the cart before the horse." *Id.*

Amgen's alleged misrepresentations and omissions is a question common to all members of the class Connecticut Retirement would represent. The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class. As vital, the plaintiff class's inability to prove materiality would not result in individual questions predominating. Instead, a failure of proof on the issue of materiality would end the case, given that materiality is an essential element of the class members' securities-fraud claims. As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry. *Id.*

Here, the objective standard is the FDA policy on "natural" claims with food using synthetic ingredients. The Ninth Circuit agrees that materiality using on objective standards like the FDA labeling policy support class certification. In *Hinojos v. Kohl's Corp.,* 718 F.3d 1098 (9th Cir. 2013), the Court of Appeals for the Ninth Circuit – following the California Supreme Court's dictates from *Kwikset* – addressed the issue of materiality in the context of a class action based on the UCL:

A representation is "material,"…if a reasonable consumer would attach importance to it or if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Id.* at 892 (quoting Restatement (Second) of Torts, § 538, subd. (2)(b) (1977)). Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material" misrepresentation, and courts must defer to that determination.

*Hinojos,* 718 F.3d at 1107.

In this case, the legislative decision to prohibit certain types of label statements establishes that the label statements are material under *Amgen* and *Hinojo,* which itself follows California Supreme Court precedence. *See Kwikset Corp. v. Super Ct.*, 51 Cal. 4th 310, 329, 332-33 (2011). Pursuant to *Hinojos*, this legislative regulation of the "all natural fruit" statement establishes, by itself, that the statement is material. Also, Defendant has produced documents in discovery showing that it views "natural" claims as the matter as important in purchasing decisions by consumers.[27]

### 3.    Plaintiff's Reliance Is Imputed To The Class

Class-wide reliance is presumed when the misrepresentations or omissions would have been material to a "reasonable person." *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 156-57 (2010). As the court in *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010) held:

[27] ████████████████████████████████████████

> [T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment. Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. As noted above, common questions predominate even if Defendant can defeat the showing of causation as to a few individual class members. As long as Plaintiff can show that material misrepresentations were made to the class members, an inference of reliance arises as to the entire class.

*See also, Guido*, 2013 WL 3353857, at * 11 ("Moreover, under the UCL and FAL, only the named plaintiffs are required to establish reliance and causation, not each class member.").

Defendant's entire argument is based on its misconception that reliance is not imputed to the class because its "All Natural Fruit" statement is not material.[28]

Defendant suggests that "[a]ll of this is made up." Def. Br. at 12. But it is clear from Plaintiff's deposition that there is clear evidence Plaintiff relied on the "all natural fruit" statement, the statement was a substantial part of the reason for the purchase, i.e., material, and Plaintiff suffering injury that would not have happened but for the statement, i.e., causation.[29]

Further, Defendant's reliance on *In re Vioxx Class Cases* is misplaced. There, "the trial court found that the plaintiffs offered 'no evidence indicating the inquiry can be conducted on a [class-wide] basis,' and that [the defendant] had introduced 'overwhelming evidence' that it could not be. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133 (2009). In the present case, we have the exact opposite situation. Plaintiff has presented evidence about the materiality of the "all natural fruit" statement. Plaintiff has introduced the labels themselves showing the prominence of the statement. Defendant has come forward with nothing except argument. Mere argument is not enough to establish that individual issues predominate over common ones.

### E.    Restitution and Damages Can Be Calculated On A Class-Wide Basis

Defendant next argues that Plaintiff cannot show a remedy based on collective evidence because: (1) Plaintiff and the class may only recover "price premium" for restitution and (2) Plaintiff's damage models proposed by expert Dr. Oral Capps do not work and he has not already performed his complete analysis. Defendant's arguments fail.

---

[28] This position defies common sense. If Defendant did not think it was material, why would it make the decision to put the "All Natural Fruit" statement in a prominent place on its label?

[29] Defendant attacks the declarations of Plaintiff's experts, Dr. Julie Caswell and Dr. Oral Capps because they have given similar declarations in other cases. This is simply because the cases in which these experts have given opinions in are similar to the case *sub judice*. This practice is certainly not forbidden and is simply not relevant to a class certification determination.

1  Defendant first erroneously conflates restitution and damages by arguing that there is only

2  one method of measuring restitution, showing the difference between the amount paid and the actual

3  value of its products. However, restitution is a distinct remedy from damages and is available under

4  the UCL, the FAL and the CLRA. Restitution allows not only a return of what was wrongfully taken,

5  but also disgorgement of what was unlawfully obtained.  Because of the Court's broad discretion to

6  grant restitution, Plaintiff has provided the Court with three methods of quantifying restitution: (1)

7  restitutionary disgorgement, (2) price premium, and (3) refund of the entire purchase price.

8  The UCL expressly provides that restitution is proper to address the "concern that

9  wrongdoers not retain the benefits of their misconduct."  *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d

10  442, 452, 591 P.2d 51, 57 (1979). Restitution is "broader than simply the return of money that was

11  once in the possession of the person from whom it was taken . . ." *Juarez v. Arcadia Financial, LTD.*,

12  152 Cal. App. 4th 889, 915 (2007).  The narrow argument that restitution must be measured strictly

13  based on a difference in value is at odds with California law as announced in *Korea Supply Co. v.

14  Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).  The *Juarez* Court explained, "Ordinarily, the measure

15  of restitution is the amount of enrichment received ..., but as stated in Comment *e,* if the loss

16  suffered differs from the amount of benefit received, *the measure of restitution may be more or less than the*

17  *loss suffered or more or less than the enrichment.*" (internal citation omitted). *Id.*

18  As stated in the Restatement of Restitution:

19  In other situations, a benefit has been received by the defendant but the plaintiff has
   not suffered a corresponding loss or, in some cases, any loss, but nevertheless the
20  enrichment of the defendant would be unjust. In such cases, the defendant may be
   under a duty to give to the plaintiff the amount by which he has been enriched. Thus
21  where a person with knowledge of the facts wrongfully disposes of the property of
   another and makes a profit thereby, he is accountable for the profit and not merely
22  for the value of the property of the other with which he wrongfully dealt....

23  Rest. Restitution, § 1, Com. e, p. 14. Restitution is therefore not measured strictly based on the

24  difference in value or "premium" paid, but rather is a flexible remedy befitting equity. Defendant's

25  argument violates public policy. Food manufacturers who unlawfully label their products, but price

26  those products the same as the competition, would be unjustly enriched with greater market share,

27  but actually escape liability.  Restitutionary disgorgement will restore to Plaintiff and disgorge from

28  Defendant any unlawfully received profits.

1   Restitutionary disgorgement can be awarded based on common evidence available from

2   Defendant's own records of its sales, profits, and pricing data. *See Ziesel v. Diamond Foods, Inc.*, 2011

3   WL 2221113, at *10 (N. D. Cal. June 07, 2011). Plaintiff's claim for restitutionary disgorgement

4   would not provide a windfall. Plaintiff's proffered method would result in a sum to the class that

5   would be partial restitution instead of full restitution, since class members would have paid retail

6   prices for Defendant's products rather than the wholesale prices charged by Defendant.[30]  Defendant

7   focuses entirely on the first component of restitution and ignores the second, its profits on the

8   mislabeled products. Plaintiff's claim for restitution allows the court to not only make the class

9   whole, but also disgorge Defendant of amounts by which it was unjustly enriched. This approach is

10  proper. *See Korea Supply Co.* 29 Cal. 4th at 1152 (restitutionary disgorgement of profits made by

11  wrongdoer on the transactions at issue is permitted, whereas nonrestitutionary disgorgement of

12  profits at large prohibited); *In re Google Android Consumer Privacy Litigation*, 2014 WL 988889, at *7

13  (N.D. Cal. March 10, 2014) (citing *Korea Supply Co.* and holding "the Court cannot conclude that

14  Plaintiffs might not be able to show an ownership interest in at least some of Google's profits.").

15  Defendant's profits can be readily calculated, but again Defendant has consistently refused to

16  produce the data, claiming that they are not relevant and discoverable prior to class certification.[31]

17  Defendant is playing an impermissible game of catch-22 – Plaintiff cannot discover information

18  related to restitution and damages because no class has been certified, but Plaintiff cannot certify a

19  class because Plaintiff has not presented common evidence for his restitution and damages claims.

20   Plaintiff has also demonstrated a viable price premium restitution approach. Using

21  information regarding competitor products, Plaintiff can calculate a "price premium" for the class

22  _____

[30] If the Court determined that the class should be awarded full restitution (the retail prices paid by
the class), because, *inter alia*, the product is illegal to sell or hold this would also be a common
calculation using average retail prices.  This is also a proper measure of damages easily calculated on a
class-wide basis.  *See Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) ("In
summary, Chavez asserts that he purchased beverages that he otherwise would not have purchased in
absence of the alleged misrepresentations. As a result, Chavez personally lost the purchase price, or
part thereof, that he paid for those beverages."); *Sanbrook v. Office Depot, Inc.*, 2009 WL 840020, at *5
(N.D. Cal. Mar. 30, 2009) ("Furthermore, the injury suffered by each class member is likely
equivalent as well: the purchase price of the Plan."); *United States v. Gonzalez-Alvarez*, 277 F.3d 73, 78
(1st Cir. 2002)("where a product cannot be sold lawfully it has a value of zero..."); *Park v. Welch Foods,
Inc.*, Case No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.)(J. Grewal) ("The fact remains, however, that in
California, '[i]t is unlawful for any person to . . . hold or offer for sale any food that is misbranded,'
and the statute establishing that is subject to the punishments described above.").

[31] The parties filed Discovery Dispute Joint Report No. 1 (Dkt. No. 113) on this subject.  Magistrate
Judge Lloyd has not ruled on the matter.

products if the Court chooses this measure of restitution. Defendant complains that the calculations have not been completed, but at this stage nothing more is required than demonstrating viable methods of recovery. "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez*, 268 F.R.D. at 379. Again, Defendant has *repeatedly* refused to provide the financial data Plaintiff seeks in discovery all along the way saying it would be irrelevant until the Court decides to certify a class. Defendant cannot now bellow that a full analysis has not been completed.[32][33]

## F.    A Nationwide Or, Alternatively, A California Class Is Appropriate

Defendant, the proponent of the other forum's law, bears the burden of establishing that the other forum's law differs materially from California, and demonstrate how applying that law will further the interest of that jurisdiction. *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Clorox has failed to meet its burden."). Here, Defendant has not tried to establish that a conflict of laws exists. Alternatively, Plaintiff asks that this court grant certification to a California class.[34][35] *See In re Ferrero Litig.*, 278 F.R.D. 552, 562 (S.D. Cal. 2011)(certifying California class).[36]

## CONCLUSION

Plaintiff respectfully requests that the motion for class certification be granted.

---

[32] Defendant's attacks on Dr. Capps' damages models does not defeat class certification. When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate. *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *16 (S.D. Cal. Feb. 21, 2014). *See also, Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification."); *Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) ("The *Comcast* ruling reiterated a fundamental focus of the Rule 23 analysis: The damages must be capable of determination by tracing the damages to the plaintiff's theory of liability. However, so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification.").

[33] Defendant claims Dr. Capps' declaration was rejected in *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014). That case was a summary judgment ruling however. There, the discovery period had closed before Dr. Capps was given the needed information. Of course he did not submit an adequate merits based report.

[34] Certification under Rule 23(b)(2) is entirely appropriate. Plaintiff seeks an injunction to stop Defendant from continuing to sell its unlawful products. Defendant has chosen to mislabel its product in exactly the same manner, which affects all class members in exactly the same way.

[35] Plaintiff is a member of this class of products. "Sufficient similarity is satisfied when a combination of these factors are satisfied: the challenged products are of the same kind, they are comprised of largely the same ingredients, and they bear the same alleged mislabeling." *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *12 (N.D. Cal. Aug. 9, 2013). Here, the fruit products are similar and the label representation "all natural fruit" and ingredients are identical. Also, Plaintiff has not abandoned any part of its case. Contrary to Defendant's characterization, Plaintiff simply chose to move for certification for a smaller class than was pleaded in the Second Amended Complaint.

[36] The misconduct alleged in this case originated out of Defendants Westlake Village, California headquarters.

1  Dated:  March 27, 2014.

2                                       Respectfully submitted,

3                                        /s/ *Charles Barrett*
                                        Charles Barrett
4                                       CHARLES BARRETT, P.C.
                                        6518 Hwy. 100, Suite 210
5                                       Nashville, TN 37205
                                        (615) 515-3393
6                                       charles@cfbfirm.com

7                                       Ben F. Pierce Gore (SBN 128515)
                                        PRATT & ASSOCIATES
8                                       1871 The Alameda, Suite 425
                                        San Jose, CA 95126
9                                       (408) 429-6506
                                        pgore@prattattorneys.com
10
                                        Brian Herrington
11                                      BARRETT LAW GROUP, P.A.
                                        P.O. Box 927
12                                      404 Court Square N.
                                        Lexington, MS 39095
13                                      (662) 834-2488
                                        bherrington@barrettlawgroup.com
14
                                        *Attorneys for Plaintiff*
15
                    **CERTIFICATE OF SERVICE**
16
17         I, Charles Barrett, hereby certify that a true and complete copy of the foregoing was served to

all counsel of record via the ECF filing system on March 27, 2014.
18

19                                       /s/  *Charles Barrett*
                                        Charles Barrett
20

21

22

23

24

25

26

27

28