1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   CHAD BRAZIL, individually and on behalf of    )   Case No.: 12-CV-01831-LHK
     all others similarly situated,                )
12                                                 )   ORDER GRANTING IN PART AND
                          Plaintiff,               )   DENYING IN PART BRAZIL'S
13           v.                                    )   MOTION FOR CLASS
                                                   )   CERTIFICATION
14   DOLE PACKAGED FOODS, LLC,                     )
                                                   )
15                        Defendant.               )
                                                   )
16   _____ )

17

18        Before the Court is Plaintiff Chad Brazil's ("Brazil") Motion for Class Certification. ECF

19   No. 96 ("Mot."). Dole Packaged Foods, LLC's ("Dole") opposes the Motion, ECF No. 104-4

20   ("Opp."), and Brazil replied, ECF No. 117 ("Reply"). Having considered the submissions of the

21   parties, the relevant law, the record in this case, and the arguments at the May 29, 2014 hearing, the

22   Court hereby GRANTS IN PART and DENIES IN PART Brazil's Motion for Class Certification.[1]

23   _____
     [1] The Court also GRANTS the parties' respective motions to seal. *See* ECF Nos. 104 (Dole's
24   Administrative Motion to Seal its Opposition to Motion for Class Certification), 116 (Brazil's
     Administrative Motion to Seal its Reply in Support of its Motion for Class Certification). The
25   sealing requests are narrowly tailored to confidential business information, and are thus sealable
     under Civ. L. R. 79-5 and *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178
26   (9th Cir. 2006). *See also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,
     1210-11 (9th Cir. 2002) (requiring a "particularized showing," such that "specific prejudice or
27   harm will result" if the information is disclosed); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d
     470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples of
28   articulated reasoning" will not suffice).

                                              1

## I.     BACKGROUND

### A.  Factual Background

Defendants are "leading producers of retail food products" who sell their products "through grocery and other retail stores throughout the United States." ECF No. 60, Second Amended Complaint ("SAC") ¶ 18. Defendant Dole Packaged Foods, LLC, is a California limited liability corporation with its principal place of business in Westlake Village, California. SAC ¶¶ 16-17. Brazil alleges that "[a]ll of the misconduct alleged [in the SAC] was contrived in, implemented in, and has a shared nexus with California." SAC ¶ 19. Brazil is a California consumer who "cares about the nutritional content of food and seeks to maintain a healthy diet." SAC ¶¶ 15, 193. From April 2008 to the present, Brazil has spent over $25.00 on Defendant's food products, which he contends are "misbranded" in violation of federal and state law. SAC ¶¶ 5, 193. Specifically, Brazil alleges that he purchased the following eight food products: (1) Dole Frozen Wildly Nutritious Signature Blends—Mixed Berries (12 oz. Bag); (2) Dole Frozen Wildly Nutritious Signature Blends—Mixed Fruit (12 oz. bag); (3) Dole Frozen Blueberries (12 oz. bag); (4) Dole Frozen Blueberries (3 oz. plastic cups); (5) Dole Mixed Fruit in 100% Fruit Juice (4 oz. cups); (6) Dole Fruit Smoothie Shakers—Strawberry Banana (4 oz.); (7) Dole Mixed Fruit in Cherry Gel (4.3 oz. plastic cups); (8) Dole Tropical Fruit in Light Syrup & Passion Fruit Juice (15.25 oz. can). SAC ¶ 2. Brazil refers to these products collectively as the "Purchased Products." *Id.* The SAC also alleges claims based on thirty additional products that Brazil did not purchase, but which are, Brazil claims, substantially similar to those that he did, in that they "(i) make the same label representations . . . as the Purchased Products and (ii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.*" SAC ¶¶ 3-4. Brazil refers to this group of products as the "Substantially Similar Products." SAC ¶ 3.

Brazil alleges that Defendants make numerous representations concerning their products on the products' labels that are unlawful, as well as false and misleading, under federal and California law. SAC ¶¶ 8-14. Specifically, Brazil challenges Defendants' claims that certain of their products are "all natural." SAC ¶ 30 (identifying which of the Purchased Products make All Natural

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

Claims); ¶ 201 (identifying which of the Substantially Similar Products make All Natural Claims). According to Brazil, regulations issued by the Food and Drug Administration (FDA) dictate that Defendants may not claim that a product is "all natural," if it contains "unnatural ingredients such as added color, [or] synthetic and artificial substances." SAC ¶ 31; *see also* 21 C.F.R. § 101.22 (setting forth the circumstances under which added colors and artificial flavors must be disclosed on a package's label). Defendants' products are mislabeled, Brazil alleges, because they contain ingredients that preclude the use of the term "natural." SAC ¶ 37-39; *see also* ¶ 125 (label on Dole Frozen Wildly Nutritious Signature Blends—Mixed Fruit unlawfully "uses the phrase 'All Natural Fruit' even though this product contains the following artificial ingredients: ascorbic acid, citric acid, malic acid and added flavors").

Brazil now seeks class certification as to only ten products asserted in the SAC (referred to herein as the "identified products"): (1) Tropical Fruit (can), (2) Mixed Fruit (cup), (3) Diced Peaches, (4) Diced Apples, (5) Diced Pears, (6) Mandarin Oranges, (7) Pineapple Tidbits, (8) Red Grapefruit Sunrise, (9) Tropical Fruit (cup), (10) Mixed Fruit (bag). Brazil contends that all ten of these products contain the label statement "All Natural Fruit," which Brazil alleges is misleading because all ten products contain both ascorbic acid (commonly known as Vitamin C) and citric acid, allegedly synthetic ingredients.

**B. Procedural Background**

Brazil filed an Original Complaint against Defendants on April 11, 2012. ECF No. 1. Defendants filed a Motion to Dismiss on July 2, 2012. ECF No. 16. Rather than responding to Defendants' Motion to Dismiss, Brazil filed a First Amended Complaint on July 23, 2012. ECF No. 25. The Court then denied Defendants' Motion to Dismiss the Original Complaint as moot. ECF No. 28.

On August 13, 2012, Defendants filed a Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion to Strike, ECF No. 29, which the Court granted in part and denied in part on March 25, 2013, ECF No. 59. The Court granted leave to amend, and, accordingly, Brazil filed the SAC on April 12, 2013. ECF No. 60. In response to the SAC, Defendants filed a Motion

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1  to Dismiss and Motion to Strike on April 29, 2013. ECF No. 62. The Court granted in part and

2  denied in part Dole's Motion to Dismiss the SAC on September 23, 2013. The parties also

3  stipulated to the dismissal of the Dole Frozen Blueberries (3 oz. plastic cups) product and all

4  Smoothie Shakers products (Mixed Berry, Peach Mango, Strawberry, or Strawberry Banana

5  flavors) after Brazil testified at his deposition that he had never purchased any of those products.

6  ECF No. 88. In addition, the stipulation dismissed Defendant Dole Food Company, Inc. from the

7  case. *Id.* Brazil filed the instant motion for class certification on January 31, 2014, ECF No. 96

8  ("Mot."), Dole filed its opposition on March 6, 2014, ECF No. 104-4 ("Opp'n"), and Brazil filed a

9  reply on March 27, 2014, ECF No. 117 ("Reply"). Dole also filed separate motions to strike the

10  Declarations of Julie Caswell and Edward Scarbrough. ECF Nos. 111-112.[2]

11  **II.      LEGAL STANDARD**

12  Federal Rule of Civil Procedure 23, which governs class certification, has two sets of

13  distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must

14  meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

15  Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous

16  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

17  class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

18  the class; and (4) the representative parties will fairly and adequately protect the interests of the

19  class." Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to

20  maintain a class action, as "numerosity, commonality, typicality and adequacy of representation."

21  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Further, courts have implied an

22  additional requirement under Rule 23(a): that the class to be certified be ascertainable. *See Marcus*

23  *v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs.*

24  *Corp.*, 274 F.R.D. 666, 671–72 (N.D. Cal. 2011).

---

[2] The court does not rely in this order on the declarations of Julie Caswell or Edward Scarbrough, so Dole's motions to strike those declarations are DENIED AS MOOT. *See* ECF No. 111 (Motion to Strike Caswell Decl.); Dkt. No. 112 (Motion to Strike Scarbrough Decl.).

4

1   In addition to meeting the requirements of Rule 23(a), the Court must also find that

2   Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b).

3   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(1)

4   class when Plaintiffs make a showing that there would be a risk of substantial prejudice or

5   inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court

6   can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on

7   grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

8   relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court

9   can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class

10  members predominate over any questions affecting only individual members, and that a class

11  action is superior to other available methods for fairly and efficiently adjudicating the

12  controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

13   "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

14  with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust

15  Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

16  2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must

17  conduct a 'rigorous analysis' to determine whether the party seeking certification has met the

18  prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186,

19  amended by 273 F.3d 1266 (9th Cir. 2001)). Nevertheless, "Rule 23 grants courts no license to

20  engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95.

21  "Merits questions may be considered to the extent—but only to the extent—that they are relevant

22  to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

23  Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify

24  a class. *Zinser*, 253 F.3d at 1186.

25  **III.    DISCUSSION**

26   Having originally alleged claims with respect to 38 products and 7 label statements in the

27  SAC, Brazil now seeks class certification only as to 10 products and only the "All Natural Fruit"

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

1   label statement. SAC ¶¶ 4, 14; Mot. at i:9-12. Dole claims that Brazil has abandoned his claims as

2   to the other products and label statements identified in the SAC for which Brazil does not move for

3   class certification. Dole thus asks the Court to dismiss these claims with prejudice. Brazil does not

4   respond to Dole's request to dismiss these claims with prejudice. Brazil could have moved to

5   certify a broader class that includes all the Dole products and label statements identified in the

6   SAC, but chose not to. The Court therefore finds that Brazil has abandoned the claims for which he

7   did not seek class certification. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th

8   Cir. 2005) (plaintiff abandoned two claims by not raising them in opposition to the County's

9   motion for summary judgment).

10          Moreover, Brazil previously asked the Court to sever the case, a request the Court denied

11   on September 26, 2013. ECF No. 84 at 5:3-7. Dismissal without prejudice as advocated by Brazil

12   would effectively moot the Court's previous denial of Brazil's request to sever the case. If the

13   Court dismissed without prejudice, Brazil could file another case alleging the dismissed causes of

14   action. Therefore, the Court dismisses all claims for which Brazil does not seek class certification

15   with prejudice. *Jenkins*, 398 F.3d at 1095 n. 4; *see also McCarthy v. Kleindienst*, 741 F.2d 1406,

16   1412 (D.C. Cir. 1984) (holding that "[f]undamental fairness, as well as the orderly administration

17   of justice requires that defendants haled into court not remain indefinitely uncertain as to the

18   bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held

19   liable for money damages" and that Rule 23(c)(1) "foster[s] the interests of judicial efficiency, as

20   well as the interests of the parties, by encouraging courts to proceed to the merits of a controversy

21   as soon as practicable").

22          Dole attacks Brazil's ability to satisfy several of the elements required for class

23   certification. Consequently, the Court will address each element required for class certification in

24   turn.

25          **A. Ascertainability**

26          "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

27   seeking class certification must demonstrate that an identifiable and ascertainable class exists."

                                            6

United States District Court
For the Northern District of California

1  *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13,

2  2014). A class is ascertainable if the class is defined with "objective criteria" and if it is

3  "administratively feasible to determine whether a particular individual is a member of the class."

4  *See Wolph v. Acer America Corp.*, No. 09-1314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23,

5  2012) (certifying a class where "the identity and contact information for a significant portion of

6  these individuals can be obtained from the warranty registration information and through Acer's

7  customer service databases"); *see also Hofstetter v. Chase Home Finance, LLC*, No. 10-01313,

8  2011 WL 1225900, at *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants' business

9  records should be sufficient to determine the class membership status of any given individual.");

10  *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying the

11  ascertainability of a class that smoked cigarettes for "at least twenty years"); *Tietsworth v. Sears,*

12  *Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3–4 (N.D. Cal. Mar. 28, 2013) (denying

13  certification where "ascertaining class membership would require unmanageable individualized

14  inquiry").

15      Brazil has precisely defined the class based on objective criteria: purchase of the identified

16  Dole fruit products within the class period. The class definition "simply identifies purchasers of

17  Defendant's products that included the allegedly material misrepresentations." *Astiana v. Kashi*

18  *Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (finding a class of customers who purchased Kashi

19  products labeled as containing "Nothing Artificial" during the class period to be ascertainable and

20  rejecting argument that because "Defendant does not have records of consumer purchases, and

21  potential class members will likely lack proof of their purchases, . . . the Court will have no

22  feasible mechanism for identifying class members"). Likewise, "[b]ecause the alleged

23  misrepresentations appeared on the actual packages of the products purchased, there is no concern

24  that the class includes individuals who were not exposed to the misrepresentation." *Id*. In the Ninth

25  Circuit, "this is enough to satisfy Rule 23(a)'s implied ascertainability requirement." *Forcellati v.*

26  *Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014) (certifying class of

27  consumers who purchased "Defendants' children's cold or flu products within a prescribed time

28

7

**United States District Court**
For the Northern District of California

1    frame"); *see also McCrary v. The Elations Co., LLC*, No. 13-242, 2014 WL 1779243, at *7-9 (C.D.

2    Cal. Jan. 13, 2014) (class ascertainable where "the class definition clearly define[d] the

3    characteristics of a class member by providing a description of the allegedly offending product and

4    the eligible dates of purchase"); *Guido v. L'Oreal, USA, Inc*., No. 11-1067, 2013 WL 3353857, at

5    *18 (C.D. Cal. July 1, 2013) (finding class ascertainable where "the requirement for membership in

6    the class [was] whether a consumer purchased a product after a particular date").

7         Dole makes two arguments that the proposed class is not ascertainable. First, Dole argues

8    that all of Dole's ingredient suppliers use only natural processes to obtain ascorbic acid and citric

9    acid. The parties agree that there are two ways to make ascorbic acid and citric acid: chemical

10   synthesis and fermentation. ECF No. 104-18, Montville Decl. ¶¶ 5, 9. Because Dole's labels do not

11   identify which method was used to create the ascorbic acid and citric acid in its products, Dole

12   contends that ascertainability is lacking.

13        The class does not lack ascertainability just because ascorbic acid and citric acid can be

14   made using two different processes. Rather, it is clear from Dole's own evidence that Dole uses

15   similar processes to produce all of its ascorbic acid and citric acid. Dr. Hany Farag, Dole's Vice

16   President of Quality & Regulatory Affairs, states in his declaration that he is "confident that all of

17   the citric and ascorbic acid used by Dole is made in a similar way." ECF No. 104-13, Farag Decl.

18   ¶ 11. Moreover, Dole submits certifications from two of Dole's suppliers stating that they use only

19   fermentation to produce their ascorbic and citric acid. *See* ECF No. 104-14-104-15, Farag Decl.

20   Ex. A-B. Dole also submits a certification from a third supplier, which states in full: "We hereby

21   certify that our product citric acid anhydrous is natural." ECF No. 104-16. While this third

22   certification is admittedly ambiguous, Dole's own explanation that all of the citric and ascorbic

23   acid used by Dole is made in a similar way is sufficient to defeat Dole's ascertainability argument.

24   Thus, all of Dole's customers received ascorbic acid and citric acid that was made in a similar way,

25   and no ascertainability problem exists.[3]

26   _____

27   [3] Dole's citation to *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7,
     2014), is unavailing. In *Astiana*, the defendant sourced its accused cocoa from as many as 15
     different suppliers. Evidence indicated that the suppliers used different ingredients in their
28   manufacturing processes, with some using synthetic ingredients and others using non-synthetic

8

**United States District Court**
For the Northern District of California

1    Second, Dole contends that the proposed class is not ascertainable because no company

2 records exist to identify purchasers or which products they bought. Opp'n at 6. Dole's concern is

3 that class members will not have actual proof that they belong in the class. Dole bases its argument

4 largely on *Sethavanish*, 2014 WL 580696, at *5, which found persuasive the Third Circuit's

5 reasoning in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). In *Carrera*, the Third Circuit

6 found that a putative class of purchasers of the defendant's diet supplement was not ascertainable

7 because there was insufficient evidence to show that retailer records could be used to identify class

8 members. *Carrera*, 727 F.3d at 308-09. The Third Circuit rejected plaintiff's proposal to use

9 affidavits submitted by putative class members because this process deprived the defendant of the

10 opportunity to challenge class membership. *Id.* at 309. Additionally, the Third Circuit held that

11 "there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims,"

12 and that absent class members could then argue that they are not bound by a judgment because the

13 named plaintiff did not adequately represent them. *Id.* at 310.

14    "While [*Carerra*] may now be the law in the Third Circuit, it is not currently the law in the

15 Ninth Circuit." *McCrary*, 2014 WL 1779243, at *8. "In this Circuit, it is enough that the class

16 definition describes a set of common characteristics sufficient to allow a prospective plaintiff to

17 identify himself or herself as having a right to recover based on the description." *Id.* (internal

18 quotation marks omitted); *see also Astiana*, 291 F.R.D. at 500 ("As long as the class definition is

19 sufficiently definite to identify putative class members, the challenges entailed in the

20 administration of this class are not so burdensome as to defeat certification." (internal quotation

21 marks and alteration omitted)).

22    Where courts have denied class certification because the proposed class was not

23 ascertainable, identification of class members posed far greater difficulties than it is likely to pose

24 in this case. *See, e.g.*, *Xavier*, 787 F. Supp. 2d at 1090 (proposed class unascertainable where class

25 definition included persons who had smoked a certain number of Marlboro cigarettes potentially

26 over a period of decades because (1) manufacturer lacked data on individual smokers, (2) plaintiffs

27

28

ingredients. *Id.* at *3. Here, Dole affirmatively asserts that all of its suppliers use only the
fermentation process for obtaining ascorbic acid and citric acid.

9

merely offered broad demographic data on smoking, (3) smoking habits were likely to change over such a long time period, and (4) asking individual class members to submit affidavits attesting to their belief that they had smoked 146,000 Marlboro cigarettes asked too much of potential class members' memories). In *Astiana v. Ben & Jerry's Homemade, Inc.*, Judge Hamilton found unascertainable a plaintiff's proposed class of those who had purchased Ben & Jerry's ice cream that contained alkalized cocoa processed with a synthetic ingredient. No. 10-4387, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014). In *Ben & Jerry's*, however, only one of the defendant's fifteen suppliers had used a synthetic ingredient, and the plaintiff could provide no method of identifying which consumers had purchased ice cream from that supplier. *Id*. The proposed class in this case is distinguishable. Unlike in *Ben & Jerry's*, here all purchasers of the identified Dole products are included in the class definition, and all identified Dole products bore the same alleged misstatements. The class period here is also far shorter than in *Xavier*, and inviting plaintiffs to submit affidavits attesting to their belief that they have purchased one of a list of Dole fruit products in the past several years is much likelier to elicit reliable affidavits than asking potential class members to recall whether they had smoked 146,000 of a certain cigarette over the course of several decades. *See Xavier*, 787 F. Supp. 2d at 1090 ("Swearing 'I smoked 146,000 Marlboro cigarettes' is categorically different from swearing 'I have been to Paris, France,' or 'I am Jewish,' or even 'I was within ten miles of the toxic explosion on the day it happened.'").

Put simply, in the Ninth Circuit "[t]here is no requirement that the identity of the class members . . . be known at the time of certification." *Ries*, 287 F.R.D. at 535 (alteration in original). Rather, "parameters for membership in the class [must be] set by objective criteria," such that it is "administratively feasible to determine whether a particular individual is a member of the class." *Wolph*, 2012 WL 993531, at *1-2.[4] Because Brazil's proposed class is sufficiently definite to identify putative class members, the Court finds the proposed class sufficiently ascertainable.

---

[4] Four judges dissented from the Third Circuit's denial of rehearing en banc in *Carrera*. That dissent agrees with this lower burden of ascertainability, particularly in light of the fact that the ascertainability requirement is rooted in common law and is not compelled by the text of Rule 23.

10

**United States District Court**
For the Northern District of California

### B.  Rule 23(a) Requirements

Dole challenges Brazil's ability to satisfy the four requirements for class certification under Rule 23(a), and the Court addresses each in turn

#### 1.  Numerosity

Dole does not contest numerosity. Because Dole has sold, at minimum, thousands of units of each product at issue in this litigation, ECF No. 101-3, Exhibit N, 12/12/13 Spare Depo. Tr. 166:2-14, joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

#### 2.  Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). All questions of fact and law need not be common to satisfy the rule. *Id*. Rather, in deciding whether plaintiffs share a common question with the prospective class, the named plaintiffs must share at least one question of fact or law with the prospective class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted); *see Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

Dole contends that Brazil's class claims fail the commonality requirement under Rule 23(a)(2). Dole first argues that materiality varies from consumer to consumer, and thus is not a common question. The law is to the contrary. Brazil's UCL, FAL, and CLRA claims depend on whether the labels at issue are unlawful, unfair, deceptive, or misleading to *reasonable* consumers.

11

United States District Court
For the Northern District of California

1  *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (noting

2  that the UCL prohibits conduct that is unfair, deceptive, or unlawful). A plaintiff can establish that

3  a misrepresentation is material and thus violative of the consumer protection laws at issue in this

4  case by showing that "a reasonable man would attach importance to its existence or nonexistence

5  in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod.*

6  *Cases*, 181 Cal. App. 4th 145, 157 (2010) (noting also that "materiality is generally a question of

7  fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably

8  find that a reasonable man would have been influenced by it"). Whether Dole's label statements

9  constitute material misrepresentations does not depend on the subjective motivations of individual

10 purchasers, and the particular mix of motivations that compelled each class member to purchase

11 the products in the first place is irrelevant. *See Ries*, 287 F.R.D. at 537 ("[V]ariation among class

12 members in their motivation for purchasing the product, the factual circumstances behind their

13 purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to

14 establish commonality."); *see also Mazza*, 666 F.3d at 589 (noting plaintiff bears "limited burden"

15 to demonstrate single common question of law or fact); *Hanlon*, 150 F.3d at 1019-22; *In re Ferrero*

16 *Litigation*, 278 F.R.D. 552, 558 (S.D. Cal. 2011) (finding commonality where claims were based

17 on "common advertising campaign"). Materiality is therefore a question common to the class, the

18 resolution of which "will resolve an issue that is central to the validity of each of the claims in one

19 stroke." *Dukes*, 131 S. Ct. at 2545.  Because "an inference of reliance arises if a material false

20 representation was made to persons whose acts thereafter were consistent with reliance upon the

21 representation," should Brazil prevail in proving that Dole's label misstatements were material, he

22 will have established a presumption of reliance as to the entire class as well. *Occidental Land, Inc.*

23 *v. Super. Ct.*, 18 Cal. 3d. 355, 363 (1976); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28

24 (2009).

25       Second, and relatedly, Dole argues that the allegedly deceptive labeling statements are not

26 specifically regulated and, therefore, are not material under *Kwikset*. 51 Cal. 4th at 329.

27 Specifically, Defendant contends that the only prohibitions that might bear on the label statements

28

12

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1   at issue are "non-binding FDA policy statements." Opp'n at 8. At this stage, the Court need not

2   decide whether the label statements at issue are material as a matter of law. Rather, the Court only

3   need find that materiality of the label statements is a question common to the class.

4           Finally, Dole argues that the "All Natural" label statements are not susceptible to common

5   proof because "All Natural" has no common definition. Dole relies on *Astiana*, 291 F.R.D. at 507-

6   09, in which the court denied class certification of a broad class in favor of certifying a narrower

7   class because the court found that "All Natural" had no common meaning as to the broad class.

8   *Astiana* itself relies on *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). In *Vioxx*, the

9   court found that "if the issue of materiality or reliance is a matter that would vary from consumer to

10  consumer, the issue is not subject to common proof, and the action is properly not certified as a

11  class action." *Vioxx*, 180 Cal. App. 4th at 129; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d

12  1013, 1022-23 (9th Cir. 2011) ("If the misrepresentation or omission is not material as to all class

13  members, the issue of reliance 'would vary from consumer to consumer' and the class should not

14  be certified."). In *Vioxx*, which was based on alleged misrepresentations regarding the pain relief

15  drug Vioxx, the court determined that "the decision to prescribe Vioxx is an individual decision

16  made by a physician in reliance on many different factors, which vary from patient to patient." *Id*.

17  at 133. Additionally, there was evidence that "some patients would rather assume the known risk of

18  taking Vioxx in exchange for pain relief, thereby mandating an individual inquiry into patient

19  desires." *Id.* (internal quotation marks omitted). In that context, even though materiality is an

20  objective standard, the individualized nature of prescribing a drug precluded materiality from being

21  a question common to the class.

22          Similarly, cases consistent with *Vioxx* generally concern representations that differ for each

23  proposed class member. For example, in *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App.

24  4th 830, 846-47 (2009), the court denied class certification because the defendant, which sold

25  insurance policies, made different statements and presentations to each customer. As such, no set

26  of statements was common to the class. *See also Fairbanks v. Farmers New World Life Ins. Co.*,

27  197 Cal. App. 4th 544, 562-65 (2011) (discussing and following *Kaldenbach*). Another example is

28

13

1   *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, No. 09-2100,

2   2012 WL 865041, at *20 (S.D. Ill. Mar. 13, 2012), which followed *Vioxx* and held that "[b]ecause

3   YAZ is a prescription medication, the question of uniformity must consider representations made

4   to each putative class member and her prescribing physician." *Id.*

5   Unlike *Vioxx*, this case presents specific alleged misrepresentations common to the class:

6   Dole's "All Natural" label statements. Dole did not make individualized representations to

7   proposed class members, nor did proposed class members likely rely on the advice of a doctor or

8   any other professional. Therefore, the objective inquiry into whether "a reasonable consumer

9   would attach importance" to Dole's label statements is a question common to the class. *Hinojos v.*

10  *Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

11  Likewise, *Astiana* itself, upon which Dole explicitly relies, is distinguishable. The plaintiffs

12  in *Astiana* sought certification of a much broader class than Brazil seeks here. In *Astiana*,

13  "Plaintiffs challenge[d] over 90 different products labeled 'All Natural,' with different ingredients

14  and different advertising campaigns, and which consequently inspire[d] different calculations in the

15  minds of prospective customers." *Astiana*, 291 F.R.D. at 508. No such problem exists here. Brazil

16  only challenges 10 products labeled "All Natural Fruit" based only on their inclusion of ascorbic

17  acid and citric acid.  Dole does not assert that differences in its products' labels cause prospective

18  consumers to understand the representations differently. The court in *Astiana* was also concerned

19  that proposed class members' understanding of "All Natural" may differ based on the ingredient

20  alleged to be unnatural. *Id.* Here, Dole does not contend that proposed class members'

21  interpretation of "All Natural Fruit" differs between ascorbic acid and citric acid. In the end, the

22  *Astiana* court granted class certification of a narrower class of "Kashi products containing calcium

23  pantothenate, pyridoxine hydrochloride, and/or hexane-processed soy ingredients but labeled 'All

24  Natural.'" *Id.* at 509. The definition of "All Natural" was sufficiently common for those three

25  ingredients such that the narrower class definition raised questions sufficiently common to the class

26  to pass Rule 23(a)(2)'s commonality requirement. Similarly here, Brazil's proposed class

27  challenges 10 products based on only two ingredients. Whether the label statement "All Natural

14

1    Fruit" is material is a question common to the class.[5]

2              **3.  Typicality**

3         Under Rule 23(a)(3) the representative party must have claims or defenses that are "typical

4    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

5    class member's claim arises from the same course of events, and each class member makes similar

6    legal arguments to prove the defendants' liability." *Rodriguez*, 591 F.3d at 1124 (citations omitted).

7    This requirement is "permissive and requires only that the representative's claims are reasonably

8    co-extensive with those of the absent class members; they need not be substantially identical."

9    *Hanlon*, 150 F.3d at 1020. Reasonably coextensive claims with absent class members will satisfy

10   the typicality requirement, but the class must be limited to "those fairly encompassed by the named

11   plaintiff's claims." *Dukes* at 131 S. Ct. at 2550. "[C]lass certification is inappropriate where a

12   putative class representative is subject to unique defenses which threaten to become the focus of

13   the litigation." *Hanlon*, 976 F.2d at 508 (citations omitted). "The purpose of the typicality

14   requirement is to assure that the interest of the named representative aligns with the interests of the

15   class." *Id.*

16        Dole argues that Brazil's claims are atypical because the class includes buyers of seven

17   products he did not purchase. The Court is not persuaded. Brazil alleges that he purchased three of

18   the ten products for which Brazil seeks to certify a class: Tropical Fruit – can, Mixed Fruit – cups,

19   and Mixed Fruit – bag. *See* SAC ¶¶ 125, 153, 176. All products included in the proposed class

20   definition have "All Natural Fruit" label statements and contain ascorbic acid and citric acid.

21   Brazil's legal theory is identical for all claims: Brazil alleges that Dole's placement of its "All

22   Natural Fruit" statement on the identified products was unlawful or misleading because the

23   identified products contain ascorbic acid and citric acid. *See* Mot. at 1. Therefore, "other members

24   have the same or similar injury, . . . the action is based on conduct which is not unique to the

25

26   _____

27   [5] Dole makes the same argument that individual class members may interpret "All Natural Fruit"
     differently under the Rule 23(b)(3) predominance inquiry. For the same reasons as stated above,
     the Court finds that common questions predominate despite the possibility that class members may
28   have varying definitions of "All Natural Fruit."

                                        15

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    named plaintiffs, and . . . other class members have been injured by the same course of conduct."

2    *Hanon*, 976 F.2d at 508.

3          Furthermore, the Court has already addressed at length the issue of whether Brazil has "the

4    same or similar injury" as class members that bought other products in the context of standing on

5    Dole's Motion to Dismiss the SAC. *See* ECF No. 76, at 12-14. In its order on Dole's motion to

6    dismiss, the Court held that when "a plaintiff claims that he was misled by the improper use of the

7    term 'all natural' on Dole Mixed Fruit in Cherry Gel, SAC ¶ 162, the injury he suffers as a result of

8    that misrepresentation is not meaningfully distinguishable from the injury suffered by an individual

9    who is misled by the use of the term 'all natural' on Dole Mixed Fruit in Black Cherry or Peach

10   Gel, SAC ¶ 201." *Id.* at 13. Although both of the products the Court used as examples are excluded

11   from the proposed class definition, the point remains the same. The injury Brazil allegedly suffered

12   from Dole's allegedly unlawful or deceptive label statements on the three products Brazil

13   purchased is not meaningfully distinguishable from the injury other class members suffered from

14   purchasing the other three identified products, which have identical label statements and identical

15   allegedly unnatural ingredients.

16         Dole bases its typicality challenge on Judge Davila's decision in *Major v. Ocean Spray*

17   *Cranberries, Inc.*, 5:12-CV-03067 EJD, 2013 WL 2558125, at *4 (N.D. Cal. June 10, 2013).

18   However, the *Major* case involved unique facts that justified the court's finding that typicality was

19   lacking in that case. In *Major*, the proposed class was "broad and indefinite," as it "would [have]

20   include[d] any of Defendant's products represented to contain no artificial colors, flavors or

21   preservatives but which contained artificial colors, flavors or preservatives." *Id*. The plaintiff in

22   *Major* attempted to include entire product lines based on a single purchase, and the plaintiff

23   "fail[ed] to link any of those products to any alleged misbranding issue" related to the plaintiff's

24   purchase. *Id*. Furthermore, the *Major* court observed "that the labels and nutrition claims on each

25   of Defendant's products may be unique to that product itself." *Id*. The plaintiff purchased a

26   pomegranate blueberry drink and alleged misrepresentations based on label language making

27   specific claims about blueberries. Yet the plaintiff sought to certify a class that would include

28

16

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1   products having label statements making no claims about blueberries. As the *Major* court

2   explained, "[t]he evidence needed to prove Plaintiff's claim that the Diet Sparkling Pomegranate

3   Blueberry drink contained false or misleading labeling is not probative of the claims of unnamed

4   class members who purchased products within the 'Sparkling' line that did not contain

5   blueberries." *Id.*

6       In the instant case, all products included in the proposed class definition, including the

7   product Brazil purchased, have "All Natural Fruit" label statements and contain ascorbic acid and

8   citric acid. Therefore, rather than raising the problems encountered in *Major*, this case is much

9   more similar to the multiple cases in this Circuit in which courts have found the typicality

10   requirement met, even when the representative plaintiff did not purchase every identified product.

11   *See, e.g.*, *Astiana*, 291 F.R.D. at 502-03; *Ries*, 287 F.R.D. at 539-40; *Chavez v. Blue Sky Natural*

12   *Beverage Co.*, 268 F.R.D. 365, 377-78 (N.D. Cal. 2010). The Court thus finds that Brazil's claims

13   are typical of the proposed class.

14       **4.   Adequacy of Representation**

15       Rule 23(a)(4) permits class certification only if the "representative parties will fairly and

16   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, to test

17   the adequacy of a class representative, courts ask two questions: "(1) do the named plaintiffs and

18   their counsel have any conflicts of interest with other class members; and (2) will the named

19   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327

20   F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

21       Dole does not dispute that Brazil and his counsel will fairly and adequately protect the

22   interests of the class. The Court finds that Brazil has no conflicts of interest with other class

23   members. In addition, the Court holds that Brazil will vigorously prosecute this action, as he has

24   previously served as a class representative for another class that was certified. *See Brazil v. Dell*

25   *Inc.*, No. 07-01700 RMW, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010). Finally, the Court agrees

26   with Brazil that plaintiff's counsel are well qualified for appointment as class counsel by virtue of

27   their experience with other similar cases. The adequacy requirement is satisfied.

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

### C. Rule 23(b)(2) Requirements

2  To certify a (b)(2) class, the Court must find that "the party opposing the class has acted or

3 refused to act on grounds that apply generally to the class, so that final injunctive relief or

4 corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

5 23(b)(2). Ordinarily, it follows that there is no need "to undertake a case-specific inquiry into

6 whether class issues must predominate or whether class action is the superior method of

7 adjudicating the dispute" under the other subsections of Rule 23(b). *Dukes*, 131 S. Ct. at 2558.

8 Rather, "[p]redominance and superiority are self-evident." *Id.* "Class certification under Rule

9 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657

10 F.3d at 986 (quoting *Zinser v. Accufix Res. Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir.2001)). This

11 case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at

12 least insofar as Brazil requests injunctive relief prohibiting defendants from engaging in their

13 allegedly unlawful or deceptive labeling practices. *See Dukes*, 603 F.3d at 571. Those requests can

14 be satisfied with "indivisible" equitable relief that benefits all class members at once, as the Rule

15 suggests.

16  Dole argues that the Court should not certify a Rule 23(b)(2) class because Brazil's

17 monetary damages are not "incidental to the injunctive or declaratory relief," as required by *Dukes*.

18 *Dukes*, 131 S. Ct. at 2557. However, *Dukes* dealt with a proposed class that sought equitable

19 monetary relief under Rule 23(b)(2) in addition to an injunction. *Id*. The Supreme Court in *Dukes*

20 held that the proposed Rule 23(b)(2) class could not be certified because the plaintiffs' large claims

21 for equitable monetary relief under the Rule 23(b)(2) class were not incidental to the injunctive

22 relief sought. *Id*. In contrast, here Brazil's monetary class claims will proceed under Rule 23(b)(3),

23 which includes strict predominance and superiority requirements for class certification, and which

24 has notice and opt-out requirements designed to facilitate the award of monetary damages to

25 individual class members. *See id*. at 2559. Therefore, certification of the Rule 23(b)(2) class is

26 granted for the purposes of declaratory and injunctive relief, but denied to the extent Brazil seeks

27 monetary damages, which are more properly brought under Rule 23(b)(3). *See Ries*, 287 F.R.D. at

28

540-42, *later decertified on adequacy grounds*, *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *8 (N.D. Cal. Mar. 28, 2013) (certifying a Rule 23(b)(2) class in a similar case only for the purposes of declaratory and injunctive relief).

Dole also asserts that Brazil no longer has standing because he "stopped buying Dole products six months ago." Opp'n at 24. As this Court recently addressed, "[s]everal courts in this district have held in similar cases that to establish standing, a plaintiff must allege that he intends to purchase the products at issue in the future." *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014) (quotations and citations omitted). In *Werdebaugh*, the Court declined to certify an injunctive class because the Plaintiff did not supply any testimony that he would purchase any of the identified products in the future. Here, however, Brazil has testified that, while he "certainly would be more skeptical of what is stated on packaged items," he would still be willing to buy a Dole product now. ECF No. 106-1, Vetesi Decl. Ex. 1, at 174:17-175:6. Brazil also acknowledged in his deposition that he continues to have brand loyalty to Dole. *Id.* ("Q. Okay. So now would you still have brand loyalty to Dole? A. I would say that probably, yeah."). The Court therefore finds that Brazil continues to have standing to assert his 23(b)(2) class claims. Accordingly, the Court certifies an injunctive class under 23(b)(2).

### D.  Rule 23(b)(3) Requirements

For a class action to be certified under Rule 23(b)(3), the class representative must show that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphases added). The Court first addresses predominance before turning to superiority.

#### 1.  Predominance

Brazil seeks to certify a nationwide class alleging California state law claims. Under Rule 23(b)(3), Brazil must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

19

"The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based on Rule 23(b)(3), the district court must conduct a rigorous analysis to determine whether the class representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253 F.3d at 1186.

Dole raises three types of predominance arguments. The first—that the term "All Natural" has no common meaning—is identical to Dole's commonality argument regarding the same term. This argument fails to defeat Brazil's showing that common questions predominate, as required by Rule 23(b)(3), for the same reasons set forth above regarding commonality under Rule 23(a)(2). Therefore, for the reasons stated in the commonality section above, the Court concludes that common questions will predominate on all liability questions, including issues of materiality and reliance. The Court need not decide whether the misrepresentations were in fact material. The Court merely concludes that these liability questions are common to all class members.

The Court focuses its discussion in this section on Dole's remaining predominance contentions. The Court first discusses choice-of-law issues involved in certifying a nationwide class before turning to Dole's predominance challenges to Brazil's proposed damages models.

### a.  Nationwide Class Allegations

Dole argues that were the Court to certify the proposed class under Rule 23(b)(3), individual issues would predominate as the Court would be obliged to apply the laws of 50 different states. Opp'n at 25. The Court agrees, and concludes that because the proposed nationwide class fails the predominance requirement under Rule 23(b)(3), certification of such a class would be improper.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    In a CAFA diversity action, this Court applies California's choice of law rules. *See Klaxon*

2  *Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bruno*, 280 F.R.D. at 538 n.7. "Under

3  California's choice of law rules, the class action proponent bears the initial burden to show that

4  California has significant contact or significant aggregation of contacts to the claims of each class

5  member." *Mazza*, 666 F.3d at 589. "Once the class action proponent makes this showing, the

6  burden shifts to the other side to demonstrate that foreign law, rather than California law, should

7  apply to class claims." *Id.* at 590.

8    "[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and is

9  not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests.'"

10  *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) (citations

11  omitted). Dole does not dispute that California has sufficient contacts, and the Court in its latest

12  motion to dismiss order assumed that Brazil had met this basic constitutional requirement.

13  Moreover, California has a constitutionally sufficient aggregation of contacts to the claims of each

14  putative class member in this case because Dole's corporate headquarters and a significant portion

15  of the proposed class members are located in California. *See Mazza*, 666 F.3d at 590. Accordingly,

16  the Court finds that Brazil has met his initial burden. "California has a constitutionally significant

17  aggregation of contacts to the claims of each putative class member in this case," and application

18  of California law here poses no constitutional concerns. *Mazza*, 666 F.3d at 591; *see also*

19  *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987) (concluding application of

20  California law was constitutionally permissible where defendant's principal offices were in

21  California and the allegedly fraudulent misrepresentations emanated from California); *In re*

22  *Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (location of the

23  defendant's headquarters is also a relevant factor in significant contact or aggregation of contacts

24  analyses).

25    Because the Court is satisfied that California has sufficient contacts with the proposed class

26  claims, the burden is on Dole to show "that foreign law, rather than California law, should apply."

27  *Mazza*, 666 F.3d at 590. California law may be applied on a class wide basis only if "the interests

28

21

1   of other states are not found to outweigh California's interest in having its law applied." *Id.*

2   (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). To determine

3   whether the interests of other states outweigh California's interest, courts administer the following

4   three-step government interest test. The court must first determine whether the law of the other

5   states is materially different from California law. *Mazza*, 666 F.3d at 590. Second, if there are

6   differences, the court determines whether the other state has an interest in having its law applied.

7   *Id.* at 591-92. Third, if another state has an interest, the court determines which state's interest

8   would be most impaired if its policy were subordinated to the law of another state. *Id.* at 593. In

9   *Mazza*, the Ninth Circuit vacated a district court's certification of a nationwide class based on the

10   same California consumer protection laws at issue here—the UCL, FAL, and CLRA. *Id.* at 594.

11   The facts and claims here closely parallel those in *Mazza*, and consequently so does the Court's

12   analysis.

13   Dole has met its burden on the first step of California's choice-of-law analysis, as Brazil

14   brings claims under the same California consumer protection statutes as the plaintiffs in *Mazza*: the

15   UCL, FAL, and CLRA. This case presents the same material differences between California's

16   consumer protection regime and that of other states that dissuaded the Ninth Circuit from applying

17   California law to other states, *see Mazza*, 666 F.3d at 591, including: (1) injury requirements, (2)

18   deception requirements, (3) scienter, (4) reliance, (5) pre-filing notice requirements, (6) statutes of

19   limitation, (7) restrictions on consumer protection class actions, and (8) remedies.

20   As for the second step, the Court finds that the other 49 states each have an interest in

21   applying their own law. As the Ninth Circuit explained in *Mazza*, "each foreign state has an interest

22   in applying its law to transactions within its borders," which means that "if California law were

23   applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability

24   to foster commerce." 666 F.3d at 593. This reflects the "principle of federalism that each State may

25   make its own reasoned judgment about what conduct is permitted or proscribed within its borders."

26   *Id.* at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)).

27

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1    Here, the purported nationwide class here consists of members from 50 states: Brazil

2    alleges that consumers from each of the 50 states were subjected to misleading and unlawful

3    representations on which they relied in purchasing Dole fruit products. Dole denies that its

4    products are misleading or unlawful. Given the parties' respective positions, all 50 states have an

5    interest in having their own laws applied to the consumer transactions that took place within their

6    borders. *Gianino v. Alacer*, 846 F. Supp. 2d. 1096, 1102 (C.D. Cal. 2012). Each state has "an

7    interest in being able to delineate the appropriate standard of liability and the scope of recovery

8    based on its understanding of the balance between the interests of individuals and corporate entities

9    operating within its territory." *Frezza v. Google Inc.*, No. 12-237, 2013 WL 1736788, at *7 (N.D.

10   Cal. Apr. 22, 2013).

11   At the final step, where the states have conflicting policies, the Court must determine which

12   state's interest would be more impaired if its policy was subordinated to the policy of the other

13   state. *See Mazza*, 666 F.3d at 593-94. This last step of the analysis does not permit the Court to

14   weigh the conflicting state interests to determine which conflicting state law manifests the "better"

15   or "worthier" social policy. *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 97 (2010)).

16   Rather, "the Court must recognize the importance of federalism and every state's right to protect its

17   consumers and promote those businesses within its borders." *Gianino*, 846 F. Supp. 2d. at 1103.

18   Here, for the reasons stated below, for purchases made outside California, the Court finds that other

19   states' interests would be more impaired by applying California law than would California's

20   interests by applying other states' laws.

21   California undoubtedly has a significant interest in applying its own consumer protection

22   laws to transactions within California. Dole is headquartered in Westlake Village, California, sells

23   many products in this state, and likely made the corporate decisions regarding packaging, labeling,

24   and marketing of Dole products in California. However, California's interest in applying its law to

25   nonresidents who purchased Dole products in other states is more attenuated. *See Edgar v. MITE*

26   *Corp.*, 457 U.S. 624, 644 (1982).

27

28

23

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1    California courts recognize that the predominant interest in "regulating or affecting conduct

2    within its borders" lies with the state which is "the place of the wrong." *Hernandez v. Burger*, 102

3    Cal. App. 3d 795, 801–02 (1980). The place of the wrong is the geographic location where the

4    misrepresentations were communicated to the consumer. *See McCann*, 48 Cal. 4th at 94 n.12. For

5    nonresident consumers of Dole products, the place of the wrong is not California, but rather the

6    state in which each consumer resides. *See Mazza*, 666 F.3d at 593-94 ("[T]he last events necessary

7    for liability as to the foreign class members—communication of the advertisements to the

8    claimants and their reliance thereon in purchasing vehicles—took place in the various foreign

9    states, not in California.").

10    Dole's liability accrued when Brazil and class members purchased Dole fruit products

11    containing the allegedly deceptive and misleading label statements. Thus "the place of the wrong"

12    in this case is the point of purchase by each class member—in other words, in each of the 50 states.

13    Each state has an interest in "protecting their consumers from in-state injuries caused by a

14    California corporation doing business within their borders and in delineating the scope of recovery

15    for the consumers under their own laws." *Gianino*, 846 F. Supp. 2d at 1103. Plaintiff has identified

16    no countervailing California interest that outweighs the other states' interest in effecting their

17    policy choices, and the Ninth Circuit has held that under such circumstances, "California's interest

18    in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594.

19    Accordingly, the Court concludes that each other state would be impaired in its ability to

20    protect consumers within its borders if California law were to be applied to all claims of the

21    nationwide class. Each nonresident class member's claims should be governed by and decided

22    under the consumer protection laws of the states in which the various class members reside and in

23    which the transactions took place. Because adjudication of the nationwide claims will require

24    application of the laws of 50 states, common questions of law would not predominate for the

25    proposed nationwide class, as is required by Rule 23(b)(3). Significantly different legal issues will

26    arise out of the claims of class members from the various states, and these different legal issues

27

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**United States District Court**
For the Northern District of California

eclipse any common issues of law that exist. Certification of the nationwide class under California law therefore would be improper.

In his reply, Brazil alternatively requests certification of a California-only class. Reply at 15. If the class is comprised entirely of California consumers, only California law need be applied. For such a class, common issues would predominate over individual ones. Certification would be proper if all other requirements for class certification are met. Accordingly, the Court narrows the proposed class to exclusively California consumers.

### b.  Damages under the UCL, FAL, and CLRA

A Plaintiff that seeks certification under Rule 23(b)(3) must present a damages model that is consistent with its liability case. *See Comcast*, 133 S. Ct. at 1433 (rejecting class certification where damages model accounted for four possible theories of antitrust injury when district court had limited case to single theory of antitrust impact). Plaintiff's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* (internal citations and quotations omitted).

*Comcast* has been interpreted as "reiterat[ing] a fundamental focus of the Rule 23 analysis: The damages must be capable of determination by tracing the damages to the plaintiff's theory of liability. So long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification." *Lindell v. Synthes USA*, No. 11-02053, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014). According to the Ninth Circuit, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Here, the Court first considers what damages are recoverable as a result of Dole's alleged mislabeling and then assesses whether Brazil has presented a damages model capable of isolating those damages.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1    The UCL, FAL and CLRA authorize a trial court to grant restitution to private litigants

2    asserting claims under those statutes. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663,

3    694 (2006). Restitutionary relief is an equitable remedy, and its purpose is "to restore the status quo

4    by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co.*

5    *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air*

6    *Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000).

7    The proper measure of restitution in a mislabeling case is the amount necessary to

8    compensate the purchaser for the difference between a product as labeled and the product as

9    received. *Colgan*, 135 Cal. App. 4th at 700 (rejecting restitutionary award for products "Made in

10   U.S.A." where expert "did not attempt to quantify either the dollar value of the consumer impact or

11   the advantage realized by [the defendant]"). This calculation contemplates the production of

12   evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful

13   business practices. *Id*. Restitution can then be determined by taking the difference between the

14   market price actually paid by consumers and the true market price that reflects the impact of the

15   unlawful, unfair, or fraudulent business practices. *See, e.g.*, *Ben & Jerry's Homemade*, 2014 WL

16   60097, at *12–13 (rejecting class certification for "all natural" ice cream labels based in part on

17   insufficient proof of damages). Accordingly, Brazil must present a damages methodology that can

18   determine the price premium attributable to Dole's use of the "All Natural Fruit" label statements.

19   Brazil's damages expert, Dr. Oral Capps, presents three damages models: (1) a Full Refund

20   Model, (2) a Price Premium Model, and (3) a Regression Model. The Court addresses each in turn.

21                          **i.    Full Refund Model**

22   Dr. Capps first proposes refunding the entire purchase or "register" price of the challenged

23   product. Declaration of Oral Capps ("Capps Decl."), ECF No. 101-9, ¶¶ 10-12. This is not the

24   proper measure of damages. As discussed above, "[t]he difference between what the plaintiff paid

25   and the value of what the plaintiff received is a proper measure of restitution." *Vioxx*, 180 Cal.

26   App. 4th at 131; *see also Werdebaugh*, 2014 WL 2191901, at *22; *Ogden v. Bumble Bee Foods,*

27   *LLC*, No. 12-01828, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014) ("[A] claim for restitution

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    requires that Ogden also present evidence of the difference in value between what she spent and

2    what she received."). Dr. Capps's full refund model is deficient because it is based on the

3    assumption that consumers receive no benefit whatsoever from purchasing the identified products.

4    This cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins,

5    and minerals. *See In re POM Wonderful LLC*, No. 10-2199, 2014 WL 1225184, at *3 (C.D. Cal.

6    Mar. 25, 2014) (rejecting a full refund model because consumers benefited from consumption of

7    the defendant's products). Class members may not "retain some unexpected boon, yet obtain the

8    windfall of a full refund and profit from a restitutionary award." *Id*. Because the California

9    consumer protection statutes upon which Brazil brought this case authorize the recovery only of

10    whatever price premium is attributable to Dole's use of the allegedly misleading label statements,

11    Dr. Capps' Full Refund Model is inconsistent with Plaintiff's liability case and must be rejected.[6]

### ii.     Price Premium Model

13       Dr. Capps next proposes a Price Premium Model. Capps Decl. ¶¶ 13-17. Under this

14    approach, Dr. Capps compares the price of the identified Dole products to the price of allegedly

15    comparable products that do not have the "All Natural" label statements and calculates the entire

16    price difference as restitution for Dole's alleged misrepresentations. *Id.* ¶ 14.

17       However, the Price Premium Model runs afoul of *Comcast*. Dr. Capps has no way of

18    linking the price difference, if any, to the allegedly unlawful or deceptive label statements or

19    controlling for other reasons why allegedly comparable products may have different prices.

20    "Rather than answer the critical question why that price difference exist[s], or to what extent it [is]

21    the result of [Dole's] actions, [Dr. Capps] instead assumed that 100% of that price difference [is]

22    attributable to [Dole's] alleged misrepresentations." *POM*, 2014 WL 1225184, at *5.

23       Brazil's deposition testimony also casts doubt on the Price Premium Model. Brazil himself

24    attributes factors other than the allegedly deceptive label statements, such as brand name, to the

25    allegedly higher prices of the identified Dole products. ECF No. 106-1, Vetesi Decl. Ex. A, Brazil

---

[6] Dr. Capps also proposes an identical disgorgement model. This is rejected for the same reasons as the Full Refund Model. *See Ogden*, 2014 WL 27527, at *13; *Werdebaugh*, 2014 WL 2191901, at *22, n.9.

27

United States District Court
For the Northern District of California

1  Dep. at 218:6-10 ("Q. Okay. So you don't believe that you paid a premium based on the language

2  that you circled earlier today? A. Do I think they charged me more because it was all natural, I

3  don't believe that that was the case."); *id*. at 217:12-218:6 ("it is my expectation that I would pay

4  more for a named brand . . . than I would for a generic brand."). Brazil also acknowledges that he

5  has brand loyalty to Dole, that he still may buy Dole products even after discovering the alleged

6  misrepresentations, and that, for him, price was not an important factor. *Id*. at 174:17-175:6; *id*. at

7  216:16-23.

8          Furthermore, there is additional evidence in the record that, to the extent that there is any

9  price difference between the identified Dole products and allegedly comparable products, the price

10  difference can be explained by factors other than the alleged label misrepresentations. For example,

11  Dole's Vice President of Marketing, David Spare, testifies that "[w]hile private label products are

12  competitors, Dole does not consider them to be comparable products because Dole uses top quality

13  fruit and has high specifications for fruit attributes, such as the number of broken fruit pieces, the

14  fruit texture, and the color of the fruit. The private label products, by contrast, emphasize low price

15  over quality." ECF No. 104-6, Spare Decl. ¶ 5. In addition, comparing a specific Dole product to

16  an allegedly comparable Safeway Kitchen product, Mr. Spare states that "the Safeway Kitchen

17  Mandarin Oranges product is packed in water, while Dole's Mandarin Oranges are packed in 100%

18  juice." *Id*. ¶ 6. This difference is significant because "[i]t is more expensive . . . to use juice instead

19  of water or syrup." *Id*. ¶ 7.

20          The Price Premium Model's inability to account for any differences between the identified

21  Dole products and Dr. Capps' chosen comparable products, or for any factors that may cause

22  consumers to prefer the identified Dole products over other identical products—such as brand

23  loyalty or quality differences between brand and generic products—renders the Price Premium

24  Model insufficient under *Comcast*. As Judge Dean Pregerson summarized in the *POM* case, "the

25  Price Premium model simply calculates what the price difference [is]. This damages 'model' does

26  not comport with *Comcast*'s requirement that class-wide damages be tied to a legal theory, nor can

27  this court conduct the required 'rigorous analysis' where there is nothing of substance to analyze."

28

28

*POM*, 2014 WL 1225184, at *5. Therefore, because the Price Premium Model does not offer a class-wide measure of damages that is tied to the proper legal theory, the Price Premium Model does not comply with the predominance requirement of Rule 23(b)(3). *Comcast*, 133 S. Ct. at 1430.

### iii.      Regression Model

Dr. Capps' final proposed damages model is an "econometric or regression analysis," ("the Regression Model"). Capps Decl. ¶ 18. "Regression analysis involves the relationship between a variable to be explained, known as the 'dependent variable,' such as the quantity demanded of a particular good or the price of a particular good, and additional variables that are thought to produce or to be associated with the dependent variable, known as the 'explanatory' or 'independent' variables. . . . Regression analysis may be useful in determining whether a particular effect is present as well as in measuring the magnitude of a particular effect." *Id.* ¶ 19. Dr. Capps explains: "It is well documented in the economics literature that commonly recognized factors are associated with sales, the dependent variable in the regression analyses, namely price of the product, prices of competing and complementary products, income, advertising, seasonality, and regional differences. . . . By controlling for these factors and considering differences in sales of Dole fruit products before and after the labeling of the language 'All Natural Fruit,' a quantitative measure of damages in this litigation may be provided." *Id.* ¶ 20. In other words, Dr. Capps proposes to determine Dole's gains from its alleged misrepresentations by examining sales of the identified products before and after Dole placed the alleged misrepresentations on its product labels, using regression analysis to control for other variables that could otherwise explain changes in Dole's sales.

As outlined above, *Comcast* requires that "any model supporting a plaintiff's damages case must be consistent with its liability case." <u>Comcast</u>, 133 S. Ct. at 1433 (quotation omitted). More specifically, *Comcast* states that the plaintiff's damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct]." *Id.* "Calculations need not be exact," *id.*, and courts within this district have interpreted *Comcast* as "not articulat[ing] any requirement that a damage calculation be performed at the class

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

certification stage," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2013 WL 5429718, at *22 (N.D. Cal. June 20, 2013), *report and recommendation adopted*, MDL No. 1917, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013). Nevertheless, the plaintiff must provide enough detail for the court to determine that the plaintiff's damages model is "consistent with its liability case," *Comcast*, 133 S. Ct. at 1433; *see also Chavez*, 268 F.R.D. at 379 ("At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." (internal quotation marks omitted)).

The Court finds that Dr. Capps' Regression Model sufficiently ties damages to Dole's alleged liability under *Comcast*. Dr. Capps' Regression Model isolates the effect of the alleged misrepresentation by controlling for all other factors that may affect the price of Dole's fruit cups and the volume of Dole's sales. For example, and significantly, the Regression Model compares data on identical Dole products: the product before the label statement was introduced, and the same product after its label included the alleged misrepresentation. *See* Capps Decl. ¶¶ 20, 21. This distinguishes the Regression Model from the damages model rejected in *POM*, 2014 WL 1225184, at *5, and the Price Premium Model found insufficient here, because the Regression Model ensures that factors like brand loyalty and product quality remain constant. The Regression Model also controls for variables such as Dole's advertising expenditures, the prices of competing and complementary products, the disposable income of consumers, and population. *Id.* ¶ 21. Therefore, as *Comcast* contemplates, Dr. Capps' Regression Model traces damages to Dole's alleged liability by accounting for several factors other than the alleged misbranding that might influence changes in price or sales.

Dole cites two previous cases in which Dr. Capps' proposed methodologies were rejected. *See Ogden*, 2014 WL 27527, at *13; *Kottaras v. Whole Foods Markets, Inc.*, 281 F.R.D. 16, 25 (D.D.C. 2010). However, both cases are distinguishable.

In *Ogden*, this Court found summary judgment proper with respect to plaintiffs' damages claims because rather than calculating damages, Dr. Capps had only "stated that he *could* provide such an estimate and offered a general description of several methods he might use to do so."

30

United States District Court
For the Northern District of California

1    *Ogden*, 2014 WL 27527, at *13. The Court concluded that Dr. Capps' "description of methodology

2    [was] not evidence of the proper amount of restitution in [that] case." *Id*. The Court's grant of

3    summary judgment to the defendants in *Ogden* was based on the fact that discovery had closed and

4    the plaintiff had neither "explain[ed] her failure to provide any evidence of the actual amount of

5    restitution to which she [was] entitled, nor [requested] further discovery" on the issue. *Id*.

6          Here, Dole argues that the Court should deny class certification because Dr. Capps has not

7    yet run his regressions. Opp'n at 17-19. Brazil counters that Dole has not provided the necessary

8    discovery for Dr. Capps to finish his analysis. As an initial matter, *Ogden* is distinguishable

9    because discovery has yet to close in this case. *See* ECF No. 78, at 2 (setting fact and expert

10   discovery cut-offs of July 10, 2014). Furthermore, Dole did not produce the discovery necessary

11   for Dr. Capps' analysis before class certification was briefed between January 31, 2014 and March

12   27, 2014. Dole's statements in the parties' March 7, 2014 Discovery Dispute Joint Report #1

13   ("DDJR #1") to Magistrate Judge Lloyd are revealing. As Dole stated in that filing:

14          The issue is timing. Producing sensitive financial data and documents before a class
            has been certified is premature, as this information pertains solely to damages.
15          Plaintiff effectively admits as much, because he filed his motion for class
            certification without such information, so it cannot have been relevant to class
16          issues. That motion for class certification is set for hearing on April 17, 2014.

17          That said, given the other impending dates (e.g., expert discovery cutoff), Dole
            offered to produce non-privileged financial data and documents after the April 17,
18          2014 class certification hearing. This would provide Plaintiff with adequate time to
            review and analyze the documents prior to the June 13, 2014 Opening Expert
19          Report deadline. Plaintiff declined that offer.

20   ECF No. 113, at 2.[7] *Id*. at 3. Dole cannot use damages discovery as both a sword and a shield. In its

21   DDJR #1, Dole claims that it need not produce discovery relevant to damages before class

22   certification because the discovery is not relevant to class certification. Yet, Dole opposes class

23   certification on the basis that Dr. Capps has not performed his regression analysis. According to

24   Brazil, Dr. Capps cannot perform his regression analysis without the discovery Dole refused to

25

26   ───────────────
     [7] Dole also contested the relevance of producing the 2004-2007 labels for the identified products,
27   which Brazil contends are relevant to Dr. Capps' damages calculation. Magistrate Judge Lloyd
     found that as to the labels, "even given the relatively low threshold for relevance at the discovery
28   stage, Brazil fail[ed] to make an adequate showing" because his assertions of relevance were
     "entirely conclusory." ECF No. 123, at 3.

31

1  produce. On April 1, 2014, Magistrate Judge Lloyd compelled the production of such discovery by

2  April 7, 2014, after class certification had been fully briefed. Consequently, the Court cannot credit

3  Dole's arguments that Dr. Capps' analysis is insufficient under *Comcast* when Dole itself

4  contributed to Dr. Capps' failure to complete his regression analysis. Nor can the Court accept

5  Dole's contention that *Comcast* requires Dr. Capps to complete his regression analysis when Dole

6  argued the opposite to Magistrate Judge Lloyd.

7        As to the *Kottaras* case cited by Dole, the court in *Kottaras* rejected Dr. Capps' proposed

8  method of showing "monetary loss attributable to the anti-competitive aspect of the merger

9  between" two supermarket chains. 281 F.R.D. at 22. The court initially noted that the plaintiff was

10 not required to "offer evidence as to the amount of damages at [the class certification] stage;" but

11 rather she only needed to "show that the fact of damage [could] be proven using common

12 evidence." *Id.*

13       Subjecting Dr. Capps' proposed regression analysis to "rigorous analysis," the *Kottaras*

14 court rejected the proposed model because: (1) while it may have been sufficient to calculate what

15 losses consumers suffered as a result of the merger, the model failed "to take into account any

16 benefits customers may have received thereby"; and (2) the proposed model was "not sufficiently

17 developed to meet Plaintiff's burden of showing that common questions predominate over

18 individual ones, as required by Rule 23(b)(3)." *Id.* at 24, 26. The court quoted a case from this

19 district for the proposition that courts are "increasingly skeptical of plaintiffs' experts who offer

20 only generalized and theoretical opinions that a particular methodology may serve this purpose

21 without also submitting a functioning model that is tailored to market facts in the case at hand." *Id.*

22 at 27–27 (citing *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 492 (N.D.

23 Cal. 2008)).

24       For reasons already discussed, *Kottaras* is distinguishable. Dr. Capps' regression would

25 control for other factors (such as price, seasonality, and regional differences) that could explain

26 changes in Dole's sales figures that may otherwise erroneously be attributed to Dole's label

27 statements. Moreover, the Regression Model compares data on identical Dole products—the

28

32

product before the label statement was introduced, and the same product after its label included the alleged misrepresentation. *See* Capps Decl. ¶¶ 20, 21. Dr. Capps' proposed model in *Kottaras* accounted for the adverse price impacts of a supermarket merger but completely omitted any measurement of the benefits of such a merger. *Kottaras*, 281 F.R.D. at 23-24. By contrast, the regression model here contemplates factors other than the alleged misbranding that might influence market price, including "expenditures associated with the advertising and promotion" of the products at issue, prices of complementary products, disposable personal income of consumers, and population. Capps Decl. ¶ 21.

Dole attacks the methodological rigor of the Regression Model on only one basis. Dole argues that the Regression Model raises individual issues because, according to Dole, the model will be unable to account for price differences based on the nature and location of the outlet in which they are sold, or the availability of discounts. Opp'n at 22. Because of these variations, Dole contends, different consumers allegedly suffered different amounts of damages. However, Dole does not explain how these regional price differences would impact the actual measure of damages in the Regression Model: price changes within regions that correspond to the introduction and/or removal of the allegedly misleading label statements. For example, if a Dole fruit cup costs $4.00 in San Francisco and $3.00 in Sacramento, this $1.00 unit disparity does not necessarily influence how the price would change as a result of amending the product's label to claim that the fruit cup is "All Natural." If both prices increase by $0.10, purchasers in San Francisco and Sacramento have both suffered the same amount in damages, $0.10. Even if the price increase is proportional, the price change will still result in largely similar damages to both purchasers: if prices increase by 5%, the purchaser in San Francisco will pay $0.20 more per fruit cup, and the purchaser in Sacramento $0.15. Regardless, damages can be tied to the liability theory and calculated on a classwide basis.

Furthermore, to the extent that Dole objects to regional price disparities, and not differences in price changes, Dr. Capps' Regression Model controls for any such regional differences to ensure that the resulting damages figures only cover the benefit Dole received from its label statements.

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

United States District Court
For the Northern District of California

1   Capps Decl. ¶ 21. *Comcast* establishes that "[c]alculations need not be exact, but at the class-

2   certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent

3   with its liability case." *Comcast*, 133 S. Ct. at 1433 (citation and quotation omitted). Dr. Capps'

4   Regression Model comports with this requirement. Even if there are regional differences as Dole

5   contends, the Regression Model is sufficiently precise under *Comcast* and the model's ability to

6   control for other factors that could affect Dole's sales ensures that Dr. Capps' damages figures are

7   tied only to Dole's liability. Therefore, because Brazil has advanced a damages methodology that is

8   capable of "tracing the damages to the plaintiff's theory of liability," Brazil has successfully shown

9   that questions common to the class predominate. *Lindell*, 2014 WL 841738, at *14.

10      Accordingly, because Brazil's proposed damages model provides a means of showing

11   damages on a classwide basis through common proof, the Court concludes that Brazil has satisfied

12   the Rule 23(b)(3) requirement that common issues predominate over individual ones.

13          **2.   Superiority**

14      A class action brought under Rule 23(b)(3) must be "superior to other available methods for

15   fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this

16   determination the Court considers: (1) the class members' interests in individually controlling the

17   prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the

18   controversy already begun by or against class members; (3) the desirability or undesirability of

19   concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in

20   managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

21      The superiority requirement tests whether "classwide litigation of common issues will

22   reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

23   1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate

24   issues to establish his or her right to recover individually a class action is not superior." *Zinser*, 253

25   F.3d at 1192.

26      Dole does not dispute that a class action is superior to other available methods for the fair

27   and efficient adjudication of this controversy. Here, the value of each individual claim is likely

28

34

United States District Court
For the Northern District of California

1  small, such that the only practical way for this case to proceed is as a class action. Moreover,

2  neither party has raised any issues related to efficiency, and the Court finds that this dispute is more

3  efficiently resolved as a class action. Accordingly, the superiority requirement to certify a Rule

4  23(b)(3) class is met.

5  **IV.   CONCLUSION**

6       For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Class Certification.

7  Brazil has satisfied the requirements of Rules 23(a), 23(b)(2), and 23(b)(3).

8       The Court therefore CERTIFIES the following class under Rule 23(b)(2): "All persons in

9  the United States who, from April 11, 2008, until the date of notice, purchased a Dole fruit product

10  bearing the front panel label statement 'All Natural Fruit' but which contained citric acid and

11  ascorbic acid. Excluded from the class are (1) Dole and its subsidiaries and affiliates, (2)

12  governmental entities, and (3) the Court to which this case is assigned and its staff."

13       The Court also CERTIFIES the following class under Rule 23(b)(3): "All persons in

14  California who, from April 11, 2008, until the date of notice, purchased a Dole fruit product

15  bearing the front panel label statement 'All Natural Fruit' but which contained citric acid and

16  ascorbic acid. Excluded from the class are (1) Dole and its subsidiaries and affiliates, (2)

17  governmental entities, (3) the Court to which this case is assigned and its staff, and (4) All persons

18  who make a timely election to be excluded from the Class." The Court DENIES Plaintiff's Motion

19  for Class Certification of a nationwide 23(b)(3) class.

20       The Court APPOINTS Plaintiff Chad Brazil as the class representative, and Pratt &

21  Associates, Charles Barrett, P.C., and Barrett Law Group, P.A. as class counsel.

22       The Court DISMISSES with prejudice the Dole products and label statements identified in

23  the SAC for which Brazil did not move for class certification.

24       Within 14 days of the date of this Order, Brazil shall file an amended complaint that

25  amends the class definitions to comport with the Court's certified class definitions, and deletes the

26  dismissed Dole products and label statements. Plaintiffs may not make any other substantive

27  change to the complaint, unless Defendant stipulates to the change.

28

Case No.: 12-CV-01831-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**IT IS SO ORDERED.**

Dated: May 30, 2014

_____
LUCY H. KOH
United States District Judge